IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIE J. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CV-1019-WKW |
| | ) | [WO] |
| BUREAUS INVESTMENT | ) | |
| GROUP #1, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Allie Stewart claims that she was the victim of unlawful debt collection practices. When she defended against a debt collection action in state court brought by Bureaus Investment Group #1, LLC, she discovered that Bureaus Investment Group #1, LLC lacked authority to sue her in Alabama. Ms. Stewart subsequently learned that no such business entity ever existed. She alleges that the real owner of her debt, Bureaus Investment Group Portfolio No. 1, LLC, and the other business entities that manage Bureaus Investment Group Portfolio No. 1, LLC and its sister companies with similar names and which likewise failed to register with the State, have sued numerous other debtors in Alabama under the names of non-existent business entities. Ms. Stewart anticipates filing a motion for class certification.

Before the court are Defendants' motion to dismiss certain defendants for lack of subject-matter jurisdiction (Doc. # 140) and Ms. Stewart's motion for leave to amend the complaint and add parties (Doc. # 142).  Each motion has been fully briefed.  (*See* Docs. # 140, 150, 151 (motion to dismiss); 142, 144, 147, 152 (motion to amend).)  Upon consideration of the parties' arguments, the evidence, and relevant law, the court concludes that both motions are due to be denied.

## I.  JURISDICTION AND VENUE

The court has subject-matter jurisdiction over Ms. Stewart's claims pursuant to 28 U.S.C. §§ 1331 and 1367.  Personal jurisdiction and venue are uncontested.

## II.  STANDARDS OF REVIEW

### A.  <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

Defendants assert that Plaintiff lacks standing to sue all but one of them, and the court "must dismiss the action" if it determines "at any time that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3).  A challenge to subject-matter jurisdiction takes two forms:  a "facial attack" or a "factual attack."  *Gilmore v. Day*, 125 F. Supp. 2d 468, 471 (M.D. Ala. 2000).  A "facial attack" requires assessment of the allegations in the complaint, while a "factual attack" challenges the existence of subject-matter jurisdiction based on matters outside the pleadings.  *Lawrence v. Dunbar*, 909 F.2d 1525, 1529 (11th Cir. 1990).  No presumption of truth exists in a factual attack, so the court may hear conflicting

evidence, weigh it, and ultimately decide the existence of subject-matter jurisdiction. *Gilmore*, 125 F. Supp. 2d at 470–71 (citing *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)).

**B.     Motion to Amend the Complaint**

Rule 15 of the Federal Rules of Civil Procedure governs the allowance of amendments to the pleadings.  As a matter of course, a party may amend a pleading to which a responsive pleading is required once within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party wishing to amend its pleadings before trial must seek the opposing party's written consent or leave of court.  Fed. R. Civ. P. 15(a)(2).  Though "[t]he court should freely give leave when justice so requires," *id.*, the court may deny a motion to amend "on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment," *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing the same grounds and adding "bad faith or dilatory motive on the part of the movant" and "repeated failure to cure deficiencies by amendments previously allowed").  "The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on

the part of the plaintiff[ ], does not justify denying the plaintiff[ ] the opportunity to amend [her] complaint." *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001).

An amendment is futile "when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). "[D]ismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred" and "if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013) (internal quotation marks omitted). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## III. BACKGROUND

This case involves claims arising under the federal Fair Debt Collection Practices Act ("FDCPA") and state law. In May 2008, Bureaus Investment Group #1, LLC sued Plaintiff Allie Stewart in Macon County Circuit Court to collect a sum that accounted for an unpaid principal balance that she owed on a credit card,

plus pre-judgment interest and attorney's fees.  Attorney Mark N. Chambless of Chambless Math & Carr, P.C., represented Bureaus Investment Group #1, LLC. The parties entered into a consent judgment in the amount of $19,496.09 on November 19, 2008.  When Ms. Stewart entered the agreement, she was representing herself.  In November 2009, however, Attorney Charles Lorant appeared in her case and moved to vacate the consent judgment on grounds that Bureaus Investment Group #1, LLC was not licensed or registered to do business in Alabama at the time that it filed its complaint or entered the consent judgment with Ms. Stewart.  The Macon County Circuit Court granted the requested relief pursuant to Alabama Rule of Civil Procedure 60(b)(6).

Ms. Stewart then answered the complaint and filed a counterclaim against Bureaus Investment Group #1, LLC for violation of the FDCPA and various state law torts.  Bureaus Investment Group #1, LLC voluntarily dismissed its original complaint and moved for realignment of the parties.  (*See* Doc. # 1-2, at 46.)  The state court allowed realignment and designated Ms. Stewart as plaintiff and Bureaus Investment Group #1, LLC as defendant.  In its new capacity as defendant, Bureaus Investment Group #1, LLC (through new counsel) removed the case to this district in December 2010.  As it turns out, not only was Bureaus Investment Group #1, LLC not a registered entity in Alabama, but it does not legally exist.  But that is a factual leap too far this early in the opinion.

Realigned as a plaintiff, Ms. Stewart has amended her complaint twice since removal, and the second amended complaint is presently the operative pleading. (*See* Doc. # 103.)  She sues not only Bureaus Investment Group #1, LLC, but a host of other similarly named business entities (some which actually exist, and others which have never been organized or incorporated) and an individual, Michael Slotky, who is CEO and 50% shareholder of The Bureaus, Inc.[1] and a 40% owner-member of Bureaus Investment Group LLC.[2]  Ms. Stewart alleges that various "Bureaus Investment Group" entities filed and maintained debt collection lawsuits in Alabama against Alabama consumers without qualifying and registering to do business in Alabama.  In many instances, these entities, including Bureaus Investment Group #1, LLC, were (and still are) legally non-existent.  Ms. Stewart sues the Bureaus entities and Michael Slotky on behalf of herself and other potential class members who have been sued wrongfully for debts in Alabama state courts.  She estimates that her class includes over two hundred people.  The court has not yet entertained a motion for class certification, and the deadline for filing a motion for class certification has been stayed pending resolution of the motion to dismiss and motion for leave to amend.

---

[1] Burton Slotky owns the other 50%.  The Bureaus, Inc. was dismissed as a defendant without prejudice when Ms. Stewart failed to serve it with process, but Ms. Stewart moves to add The Bureaus, Inc. again in a third amended complaint.

[2] The Bureaus, Inc. is an Illinois corporation, and Bureaus Investment Group LLC is an Illinois limited liability company.

A previous order has accounted for one reason (but there are many) that this case is nearly four years old yet still in the discovery and amended pleadings phase of litigation.  (*See* Doc. # 125.)  Numerous Defendants who were not timely served pursuant to Rule 4(m) were dismissed without prejudice after Ms. Stewart failed to show good cause.  (*See* Doc. # 125, at n.3.)[3]

But since September 2013, this case has resumed the normal course of progress under a uniform scheduling order, and the parties have engaged in discovery.  (*See* Doc. # 128.)[4]  With leave of the court, the deadline for amending the pleadings was extended to March 14, 2014.  Plaintiff filed her motion for leave to amend the complaint on the deadline.  (Doc. # 142.)  Plaintiff's proposed Third Amended Complaint includes several changes:  (1) adding three new Plaintiffs; (2) adding five new Defendants (including Attorney Mark Chambless and his law firm, Aristotle Sangalang, and Burton Slotky);[5]  (3) rejoining fourteen Bureaus entities, including The Bureaus, Inc., who were dismissed by the court's September 26, 2013 Order; (4) dropping four Bureaus entities to be dismissed by stipulation

---

[3] The docket sheet reflects that once Ms. Stewart filed her second amended complaint, an ultimately unsuccessful effort was made to serve only four of the newly added defendants.  (*See* Doc. # 106.)

[4] Prior to the current Uniform Scheduling Order, this case proceeded under an earlier scheduling order (*see* Doc. # 16) from July 11, 2011, until March 1, 2012, when the original complaint was the operative pleading.  The only Defendant at that time was the non-existent Bureaus Investment Group #1, LLC.

[5] Burton Slotky is a member of Bureaus Investment Group LLC (20% owner) and is a 50% shareholder of The Bureaus, Inc.  Aristotle Sangalang is a past vice president and current president of The Bureaus, Inc.

of dismissal;[6] and (5) adding new claims and theories of liability.   The new theories of liability include "promoter" liability (Counts VI and VII), and central figure liability and alter ego liability (Counts IX and X) for The Bureaus, Inc.  The new theories also target Michael Slotky, Burton Slotky, and Mr. Sangalang, who are allegedly personally responsible for the wrongful actions of the variously named Bureaus entities.   The court has temporarily stayed discovery and the motion for class certification deadline while reviewing the motion to dismiss and motion to amend.

To Ms. Stewart's credit, the proposed Third Amended Complaint is more clearly organized than her prior amended complaints.  It categorizes the Bureaus entities into three classes:  (1) those entities which have never been organized or incorporated by law, and therefore, have never existed, but which have appeared in Alabama state courts as plaintiff-creditors in debt collection actions; (2) those entities which actually exist and which have appeared in Alabama state courts, but which have not registered to do business in Alabama; and (3) those entities which are named "registered portfolios" that actually exist, are registered to do business in Alabama, and which own the consumer debts like Ms. Stewart's, but which proceeded to use Alabama courts to collect those debts prior to registering with the

_____

[6] The parties are free to stipulate to dismissal of any claims pursuant to Rule 41, and the Defendants omitted from the proposed Third Amended Complaint are not discussed in this opinion and order.

State.   The registered portfolios are all owned solely by Bureaus Investment Group, LLC; Bureaus Investment Group, LLC is owned in part by Michael and Burton Slotky.   Behind all the Bureaus entities, which total 39 in the proposed Third Amended Complaint, is the Bureaus, Inc., the alleged "master servicer" of the debts and the only business entity that actually has employees.   It is owned by the Slotkys.   Thus, Ms. Stewart has shed more light upon the way the Bureaus entities are owned and allegedly operated.

Positioning for obscurity over clarity, Defendants oppose entirely Plaintiffs' request to amend her complaint and argue that any amendment is untimely, prejudicial, and futile.   (Doc. # 144.)   Two days prior to the filing of the motion to amend the complaint, Defendants moved to dismiss all but one of themselves – Bureaus Investment Group Portfolio No. 1, LLC – arguing that Ms. Stewart lacks standing to sue them because only Bureaus Investment Group Portfolio No. 1, LLC sued her in state court.   Plaintiff opposes the motion to dismiss.

## IV.  DISCUSSION

Ms. Stewart has more information than she previously had to support her claims and to tie real persons and business entities to the acts of faceless Bureaus entities like the one that sued her and other debtors in state court.   Because clarity about who did what to whom is essential to the expeditious resolution of this case, a third amended complaint would be helpful.   The discussion proceeds under the

9

assumption that many of the facts alleged in the proposed Third Amended Complaint will become part of an operative pleading. However, for various reasons to be discussed, the Third Amended Complaint as proposed (Doc. # 142-1) will not be allowed as drafted, and it must be redrafted and resubmitted for approval.

Defendants' motion to dismiss for lack of standing critiques the currently operative Second Amended Complaint, (*see* Doc. # 140), but Defendants' arguments nonetheless bear upon what Ms. Stewart should be allowed to plead in a second draft of the proposed Third Amended Complaint.

The discussion begins with Defendants' objection that Ms. Stewart lacks standing to sue any Defendant other than Bureaus Investment Group Portfolio No. 1, LLC. It then proceeds to address the substantial amendments proposed in the Third Amended Complaint including rejoinder of The Bureaus, Inc., addition of both new plaintiffs and new defendants, and the addition of new theories of liability.[7]

## A.   Ms. Stewart's Standing to Sue the Various Bureaus Entities

This is not the first motion to dismiss for lack of standing. In April 2012, Bureaus Investment Group Portfolio No. 1, LLC similarly argued that it alone had

---

[7] In the briefing, Defendants have used abbreviations for Bureaus entities (*e.g.*, BIG P. No. 1" for Bureaus Investment Group Portfolio No. 1). In view of the numerous, similarly named Bureaus entities, including non-existent ones with "B.I.G." in the title, nicknames and shorthand could actually perpetrate more confusion than already exists. Hence, this practice will be avoided.

dealings with Ms. Stewart in the debt collection suit.  (*See* Doc. # 50.)  Relying on certain allegations in the second amended complaint, the court denied the motion to dismiss because it was, at that time, unclear which Defendants contacted Ms. Stewart and sued her in state court.  (*See* Doc. # 102.)

According to Defendants, discovery has eliminated any confusion about who harmed Ms. Stewart.  Defendants point to her deposition testimony and discovery responses to support their contention that Bureaus Investment Group Portfolio No. 1, LLC alone pursued Ms. Stewart's debt collection action.  She received a collection letter from The Bureaus, Inc., which was the debt collector for Bureaus Investment Group Portfolio No. 1, LLC, but The Bureaus, Inc. was dismissed in September 2013, for Ms. Stewart's failure to serve it with process.[8]  Ms. Stewart was sued by Bureaus Investment Group #1, LLC, which remains a Defendant in the case, but Defendants claim that this is simply a "misspelling" of Bureaus Investment Group Portfolio No. 1, LLC.  As for Michael Slotky, the only remaining individual Defendant under the Second Amended Complaint, Defendants point to his deposition testimony that he had no role in contacting consumers like Ms. Stewart by letter or by telephone.  (*See* Doc. # 41, at 8–9.)

---

[8] Ms. Stewart proposes, however, to rejoin The Bureaus, Inc., which was dismissed without prejudice, in the proposed Third Amended Complaint.  Discussion of rejoinder of The Bureaus, Inc. follows in Part IV.B.1.

### 1. *Dealings with Non-Existing Bureaus Entities*

Ms. Stewart emphasizes that "Bureaus Investment Group #1, LLC" is not a simple misspelling of "Bureaus Investment Group *Portfolio No. 1*, LLC."[9] Ms. Stewart contends that regardless of whether she agreed with defense counsel during her deposition that she was contacted and sued by Bureaus Investment Group Portfolio No. 1, LLC, the complaint and consent judgment from state court clearly indicated Bureaus Investment Group #1, LLC as the plaintiff seeking a judgment on her debt. She points to numerous affidavits and authorizations signed by Michael Slotky, which "directly or indirectly affirm[ ] that [various consumer's] debts were owed to" Bureaus entities that have never existed. (Doc. # 150, at 6.) She argues that Michael Slotky's "willy-nilly disregard of the debt owner [name] designated in the bill[s] of sale . . . reinforces that [she] had contact with *all* of the non-existing [D]efendants because each one is nothing more than . . . [a] Slotky d/b/a." (Doc. # 150, at 8 (emphasis added); *see also* Doc. # 150, at 12 (contending that the non-existing Bureaus entities are just "trade name[s] through which Mr. Slotky personally does business").) Ms. Stewart's argument for why she has standing to sue all the non-existent Bureaus entities, and not just Bureaus

---

[9] The use of "#" in lieu of "No." may be an innocent revision or variation of a business name, but the omission of an entire word like "Portfolio" is not a simple "misspelling." Whether, Michael Slotky or others intentionally varied the names of the Bureaus entities to create confusion or evade liability is a question of fact to be decided at a later stage of this litigation.

Investment Group #1, LLC, could be summed up as, "I have dealt with one non-existent Bureaus entity, so I have dealt with them all."

Ms. Stewart's stated position – particularly with respect to the "d/b/a" nature of the non-existing Bureaus entities – begs two questions that have gone unaddressed in the briefing.  First: why must the non-existing Bureaus entities be joined as defendants in this action if they are mere d/b/a's of real persons or business entities like Michael Slotky or Bureaus Investment Group Portfolio No. 1, LLC?  Earlier in this litigation, it was unclear to Ms. Stewart whether certain Bureaus entities legally existed or not.  (*See, e.g.*, 2d Am. Compl. at ¶ 3 (alleging that Bureaus Investment Group #1, LLC "is *believed to be* a foreign limited liability corporation"); ¶ 21 (alleging that Bureaus Investment Group #2, LLC's "corporate structure is unknown to Plaintiff").)  But Ms. Stewart's proposed Third Amended Complaint has clearly delineated which entities have been incorporated or organized legally, and which have not.  Michael Slotky appears to agree that entities like "Bureaus Investment Group #1, LLC" never existed.  (Dep. Michael Slotky, at 154 (Doc. # 150-25, at 15).)  And Ms. Stewart cites numerous cases that explain that a "d/b/a" entity is not a separate legal entity.  (*See* Doc. # 150, at 11–12.)

Accordingly, it would appear that a future amended complaint, if submitted and allowed, should identify as defendants only business entities and persons

actually in existence.   Plaintiff may, however, also identify those entities or persons which are "doing business as" Bureaus Investment Group #1, LLC, Bureaus Investment Group #2, LLC, and the like, but not as Defendants.

The second unanswered question is:  If Bureaus Investment Group #1, LLC is not and never has been an actual legal entity, why did defense counsel invoke this court's jurisdiction on behalf of a non-existent entity, "Bureaus Investment Group #1"?  (*See* Notice of Removal (Doc. # 1, at 1, 6).)  Defendants did not clarify upon removal of the case that Bureaus Investment Group Portfolio No. 1, LLC was the correct defendant here and the original plaintiff in the state court proceedings.  This is obviously not a case where another party was responsible for the misidentification.[10]   Bureaus Investment Group #1, LLC named itself as plaintiff in state court and continued to proceed under that name in federal court.

But at the time of removal, based on Ms. Stewart's success in vacating the consent judgment entered against her in state court, and based on her counterclaims, defense counsel knew, at a minimum, that Bureaus Investment Group #1, LLC did not have authority to do business in Alabama.  It is unclear when defense counsel learned that Bureaus Investment Group #1, LLC did not exist, but they certainly knew by April 13, 2012, when they began to refer, perhaps

---

[10] *Cf. Hughes v. Cox*, 601 So. 2d 465 (Ala. 1992) (favorably citing *Aman Collection Serv. Inc. v. Burgess*, 612 S.W.2d 405 (Mo. App. 1981)), for its proposition that "when a party defendant is personally served with process, even though in the wrong name, he is obligated to appear and call attention to the defect").

disingenuously, to "the *original* Defendant" (in the federal court removal) as "Bureaus Investment Group Portfolio No. 1, LLC." (Docs. # 50, at 1; # 51, at 1 (emphasis added).) At that time, Defendants informed the court that Bureaus Investment Group #1, LLC did not exist, (*see* Doc. # 50-1 ("The following named Defendants do not exist and have never existed: [. . .] Bureaus Investment Group #1, LLC.")), but the import of that representation, as it impacts Defendants' prior representations in the pleadings, was not realized until recently when it was placed in the context of all the facts alleged. The record is plain that Bureaus Investment Group #1 LLC – not the similarly-named, actually-existing "portfolio" entity – was the "original defendant," or more accurately, the realigned counterclaim defendant in the removal action. The issue of making knowing misrepresentations to this court implicates Federal Rule of Civil Procedure 11. If Rule 11 was violated, potential sanctions against defense counsel, Defendants, or both may be in order. That issue will be addressed in a separate order to show cause pursuant to Rule 11(c)(3).

Returning to the issue presented by the motion to dismiss and by Ms. Stewart's acknowledgement that certain Bureaus entities never existed, the non-existent Bureaus entities are not appropriate parties in this suit and should be omitted as defendants in any future proposed Third Amended Complaint.

However, Ms. Stewart may identify existing persons or entities as defendants that do business as any or all of the non-existent Bureaus entities.[11]

### 2.   *Dealings with Existing Bureaus Entities*

With respect to the Bureaus entities that actually exist,[12] Ms. Stewart alleges that Bureaus Investment Group Portfolio No. 1, LLC (and the other similarly named Portfolio-entities) are all member-managed limited liability companies whose sole member is Bureaus Investment Group, LLC.   She claims that the Portfolio-entities are "special purpose vehicles" that exist only to secure debts on behalf of the master servicer, The Bureaus, Inc.  (Doc. # 150, at 13.)  None of the Portfolios has employees.  The Bureaus, Inc. maintains all records and is the only named Defendant with employees.  Thus, Ms. Stewart claims, the existing entities serve no purpose other than to shield Michael Slotky from liability.  (Doc. # 150,

---

[11] If the Second Amended Complaint remains operative because Ms. Stewart elects not to submit another proposed amended complaint or if the court rejects the next draft, too, Defendants may renew their motion to dismiss as it pertains to non-existent Bureaus entities joined as Defendants.

[12] *I.e.*, Bureaus Investment Group, LLC, Bureaus Investment Group Portfolio No. 1, LLC, Bureaus Investment Group Portfolio No. 2 LLC, Bureaus Investment Group Portfolio No. 3 LLC, Bureaus Investment Group Portfolio No. 4 LLC, Bureaus Investment Group Portfolio No. 5 LLC, Bureaus Investment Group Portfolio No. 6 LLC, Bureaus Investment Group Portfolio No. 7 LLC, Bureaus Investment Group Portfolio No. 8 LLC, Bureaus Investment Group Portfolio No. 9 LLC, Bureaus Investment Group Portfolio No. 10 LLC, Bureaus Investment Group Portfolio No. 11 LLC, and The Bureaus, Inc.  These entities are identified in the proposed Third Amended Complaint as the "Existing Bureaus" and the "Registered Portfolios."

at 14.)[13] [14]   Ms. Stewart says that because she has dealt with one existing entity, Bureaus Investment Group Portfolio No. 1, LLC, she has dealt with all existing Bureaus entities because Michael Slotky is the actual figure at work purchasing debt and authorizing collections actions through the Portfolios.  (*See* Doc. # 150, at 17 ("Plaintiff had dealings and contact with . . . the remaining Defendants through Mr. Slotky and his agents."); Doc. # 150, at 21 ("[T]he evidence viewed in the light most favorable to the plaintiff demonstrates . . . multiple Defendants participated in maintaining the lawsuit against her."); Doc. # 150, at 23 ("The interrelation between Defendants and lack of formalities demonstrate[ ] that [the various Bureaus entities] merely operate as an extension of Mr. Slotky personally.").)

Defendants reply that Ms. Stewart dealt only with Bureaus Investment Group Portfolio No. 1, LLC.  Defendants contend that the initiation of lawsuits by the various Portfolio entities against "other putative class members . . . may confer [standing] on those class members" but not upon Ms. Stewart.  (Doc. # 151, at 2.) Defendants assert that Ms. Stewart improperly conflates all of the Bureaus entities

---

[13] Based on the allegations in her proposed Third Amended Complaint, Ms. Stewart would say that the Bureaus entities exist to shield from liability other individuals besides Michael Slotky, but Document 150 pertains only to Defendants currently joined in this action, as it is responsive to Defendants' motion to dismiss.  Under the operative Second Amended Complaint, Michael Slotky is the only remaining individual defendant.

[14] Creating a limited liability company to shield oneself from liability is, in isolation, a perfectly legitimate purpose.  But Ms. Stewart alleges sinister circumstances that overwhelm the presumption of legitimacy.

as one, when in fact "each [Portfolio] ha[s] different stakeholders pursuing different investment objectives with different risk profiles," "debt portfolios," "assets," and "liabilities." (Doc. # 151, at 11.) Defendants deny that Michael Slotky participated in the action to collect Ms. Stewart's debt and assert that there is scant evidence to support an alter ego theory of liability. Even if the alter ego theory is operative, Defendants assert that it does not sufficiently connect Ms. Stewart to every existing Bureaus entity that Ms. Stewart has joined or wishes to join as a defendant in the suit.

The Second Amended Complaint lacks allegations that the form of any LLC was used for an illegitimate purpose, but the proposed Third Amended Complaint includes allegations that Bureaus Investment Group, LLC and the Portfolio entities "are the alter egos of The Bureaus, Inc., Michael Slotky, Aristotle Sangalang, and/or Burton Slotky, rendering [those four Defendants] personally liable for all actions, omissions, and tortious misconduct of the Existing Bureaus and Registered Portfolios." (Doc. # 142-1, at ¶ 165.)[15] "Alabama law provides that a corporation may be an alter-ego of a person or another entity, and that the corporate 'veil' may be 'pierced' when evidence establishes that to be the case." *Mama's Enters., LLC v. United States*, 883 F. Supp. 2d 1128, 1134 (N.D. Ala. 2012) (citing *Forest Hill Corp. v. Latter & Blum*, 29 So. 2d 298, 302 (1947)). When the veil is pierced,

___

[15] Defendants oppose amendment of the complaint to include an alter ego liability theory. (*See* Doc. # 144.) Their position is discussed *infra* at Part IV.B.4.b.

"otherwise immune corporate officers, directors, or shareholders" may be held personally liable for the corporation's wrongful acts. Black's Law Dictionary (9th ed. 2009). Alabama law also allows veil-piercing of a limited liability company. *Filo Am., Inc. v. Olhoss Trading Co., L.L.C*., 321 F. Supp. 2d 1266, 1268–69 (M.D. Ala. 2004). "[A] fraudulent purpose in the conception or operation of an LLC [is] a valid reason for 'piercing' the LLC's veil." *Id.* at 1270.

Hence it is clear that Ms. Stewart may plead and proceed under a theory that officers, directors, shareholders, managers, or members of The Bureaus, Inc. and Bureaus Investment Group, LLC may be held liable for the wrongful acts of those entities and other Bureaus entities such as the Portfolios. But the alter ego theory does not confer standing upon Ms. Stewart to sue every entity that is under the control of The Bureaus, Inc., Michael Slotky, Aristotle Sangalang, or Burton Slotky. Ms. Stewart asserts, without citing supporting authority, that she has standing to sue every Bureaus entity because all of them are Michael Slotky's alter egos. The argument does not work. Alter ego theory would only confer the requisite standing if all of the existing Bureaus entities were alter egos of the one existing Bureaus entity that owned Ms. Stewart's debt and, according to Defendants, sued her: namely Bureaus Investment Group Portfolio No. 1, LLC. They are not.

Ms. Stewart has ample evidence that the other existing Bureaus entities acted wrongfully by collecting the debts of others who could potentially become members of the putative class.  It would seem that Ms. Stewart should be permitted to sue even the Bureaus entities with whom she did not deal personally because she intends to represent other Alabama debtors who did.  But as the Supreme Court explained in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976),

> [t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

*Id.* at 40 n.20 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also* 1 W. Rubenstein, *Newberg on Class Actions* § 2:3, p. 63 (5th ed. 2012) ("Class representatives do not gain standing through injuries to class members.").  Thus, the general rule is that the class representative herself must have Article III standing to sue each named defendant in a multi-defendant case.  Alternatively, if there are several class representative-plaintiffs, they corporately "must show that each defendant has harmed at least one of them."  1 W. Rubenstein, *Newberg on Class Actions* § 2:5, p. 73 (5th ed. 2012).  At the moment, this case fits neither of those circumstances.

There are potential exceptions to this rule that no party has briefed and which could put weight behind Ms. Stewart's standing. They arise from *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973), where, in the context of class certification pursuant to Rule 23, the court observed that

> a plaintiff who has no cause of action against the defendant cannot 'fairly and adequately protect the interests' of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect. Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*Id.* at 466. Even though the *La Mar* court did not engage in substantial analysis about the exceptions it identified, a "juridical link" doctrine has developed from *La Mar* which has been applied by state and federal courts. A juridical link is "a legal relationship which sufficiently relates all the defendants so that a single action is preferable." *Turpeau v. Fid. Fin. Servs., Inc.*, 936 F. Supp. 975, 978 (N.D. Ga. 1996) (internal quotation marks omitted). Some courts have said that the juridical link doctrine has no bearing on the issue of standing, *see, e.g.*, *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 822 (W.D. La. 2003) (applying it only in the context of Rule 23 analysis), while other courts have applied it to assist a plaintiff with otherwise deficient standing, *see, e.g.*, *Alves v. Harvard*

*Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002) *aff'd*, 316 F.3d 290 (1st Cir. 2003).

The Eleventh Circuit has discussed the juridical link doctrine only once, in a case it decided over two decades ago.  In *Moore v. Comfed Savings Bank*, 908 F.2d 834 (11th Cir. 1990), the court discussed the doctrine after a party raised it, but the court decided the issue of the propriety of joinder on other grounds.[16]   The discussion in *Moore* of juridical relation is dicta, neither favorable nor unfavorable. *See id.* at 838.

In federal courts, "[j]uridical links are most often found in cases involving a defendant class whose members are officials of a single state who are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of a state-wide application, which is alleged to be unconstitutional."

---

[16] *Moore*'s plaintiff class was comprised of Georgia residents who borrowed from Land Bank Equity Corporation.  Land Bank assigned the loans and mortgages to various other banks. The district court joined as defendants all financial institutions then holding notes on loans originally issued by Land Bank which were secured by real property in Georgia.  Several defendants challenged standing, arguing that they had never dealt with the named class representatives.

In response to the defendants' appeal, the *Moore* plaintiffs cited the juridical link doctrine.  But the Eleventh Circuit relied on an alternative argument instead, finding that the district court had authority pursuant to Rule 20(a) to permissively join the defendants.

The court has considered *Moore*'s reliance on Rule 20(a) and permissive joinder but concludes that Rule 20(a) would not confer standing upon Ms. Stewart to join and sue Bureaus entities with whom she has no connection.  Rule 20(a) requires that the plaintiff have a "right to relief . . . against" persons joined as defendants, *see* Fed. R. Civ. P. 20(a)(2)(A), and Ms. Stewart lacks a right to relief against any person or entity that has not committed an FDCPA violation or tort against her.

*Turpeau*, 936 F. Supp. at 978 (internal quotation marks and alteration omitted); *see also* 7AA Charles Alan Wright, et al., Federal Practice and Procedure § 1785.1 (3d ed. 2005) (associating "juridical link" doctrine with cases involving joinder of multiple government official-defendants).   But some courts have found the juridical link doctrine applicable to class action commercial and business cases. *See, e.g.*, *Barker v. FSC Sec. Corp.*, 133 F.R.D. 548, 553 (W.D. Ark. 1989) (finding "[p]artnership, joint enterprise, control, conspiracy, and aiding and abetting all may serve as such a [juridical] link, since [those legal relationships] denote some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member"); *Alves*, 204 F. Supp. 2d at 205 (applying doctrine in ERISA case where two health benefit plan-defendants asserted that the class representatives lacked standing because they were not members of those defendants' plans); *Bromley v. Mich. Educ. Ass'n–NEA*, 178 F.R.D. 148, 163 (E.D. Mich. 1998) (finding standing even though there was no named plaintiff to represent the class against some of the education union-defendants).

Looking to the two exceptions identified by *La Mar*, the undisputed seminal case cited by all others, Ms. Stewart and any putative class member's "injuries are [arguably] the result of a . . . concerted scheme[ ] between the defendants" named

in the proposed Third Amended Complaint.  489 F.2d at 466.  That is, according to Ms. Stewart, all of the various Bureaus Portfolios, owned by Bureaus Investment Group, LLC but under the control of Bureaus, Inc. as master servicer and/or the individual Defendants, engaged in the same allegedly intentional and deceptive scheme of suing debtors in Alabama state courts without authority to do so and under the name of non-existing Bureaus entities.  Moreover, even if there were no "concerted scheme," all of the Bureaus Portfolios "are juridically related in a manner that suggests a single resolution of the dispute would be expeditious."  *Id.* That is, the Portfolio entities are legally related to one another by virtue of their common single-member owner, Bureaus Investment Group, LLC.  Further, neither the Portfolio entities nor Bureaus Investment Group, LLC has employees, and all are likely under the control of the Bureaus, Inc. and the Individual Defendants. Because the facts in the instant case fit within the general though admittedly sparse law on the subject, the juridical link theory supplies standing for Ms. Stewart at this stage in the litigation.

Accordingly, the court concludes that Ms. Stewart has standing to join the existing Bureaus Portfolio entities as defendants in this suit, and Defendants'

motion to dismiss the existing Bureaus entities with whom Ms. Stewart did not interact is due to be denied.[17]

### 3.   *Dealings with Michael Slotky*

Based on the allegations in the proposed Third Amended Complaint, Plaintiff has standing to sue Michael Slotky, irrespective of the success of a future motion for class certification and regardless of his deposition testimony denying responsibility for the debt collection activity of the business entities he owns and allegedly controls.  Defendants' motion to dismiss Michael Slotky as a defendant is due to be denied.

## B.   <u>The Proposed Third Amended Complaint</u>

Defendants oppose amendment of the complaint in any form and claim that Ms. Stewart's motion is due to be denied as unduly delayed, unduly prejudicial, futile, and brought in bad faith.  (Docs. # 144, 152.) As for the most recent argument of bad faith in the surreply brief, Defendants condemn Plaintiff for "breach[ing] [her] duty" to disclose every one of her proposed amendments in her motion, "shirk[ing] [her] responsibility" to justify the relief she seeks in her motion, "wast[ing] the Court's and the Parties' time," and putting forward "a horde

---

[17] However, Defendants may challenge standing at any stage in the proceedings, *see* Fed. R. Civ. P. 12(h)(3), and a renewed motion to dismiss certain defendants, or better, a joint stipulation of dismissal, would be appropriate if no class is certified in this case.  The finding that Ms. Stewart has standing to sue all Bureaus entities depends upon the existence of her class allegations.

of ill-considered amendments." (Doc. # 152, at 4–5.) These generalized "bad-faith" objections to Plaintiffs' motion for leave to amend are overruled.[18]

The discussion proceeds to analyze the general categories of amendments in the proposed Third Amended Complaint and Defendants' original objections of delay, prejudice, and futility.

### 1.   *Rejoinder of Previously Dismissed Defendants*

Defendants request that the court "uphold" its order dismissing defendants for Ms. Stewart's failure to timely serve them. (Doc. # 144, at 4.) Defendants cite the court's conclusion that Mr. Lorant failed to show good cause for the failure to serve parties and complain that Ms. Stewart asks for leave to rejoin the defendants "with nary a word as to how good cause has suddenly accrued." (Doc. # 144, at 5.) Defendants assert that rejoinder should be denied because the request is untimely, prejudicial, and futile.

The majority of the Bureaus defendants which were dismissed pursuant to Rule 4(m) are identified in the Third Amended Complaint as non-existent entities.

---

[18] The court is aware of the differences between the Second Amended Complaint and the proposed Third Amended Complaint and will not penalize Ms. Stewart for not delineating the amendments in her motion with the particularity that Defendants demand.

Further, it is acknowledged that Ms. Stewart does not rebut every argument raised by Defendants in their opposition brief. At this stage of the litigation, the court will not deem any claim abandoned for Ms. Stewart's unresponsiveness to an argument lodged by Defendants. *Cf. Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007) ("[A]t the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint.") The focus here, like the focus during review of a motion to dismiss, belongs on the adequacy of the proposed pleading.

(*Compare* Doc. # 125 at n.3 *with* Doc. # 142-1.)  As previously discussed in Part IV.A., these entities should not be joined as parties in the next operative pleading. The only actually existing but previously dismissed Bureaus entity which Ms. Stewart wishes to rejoin in the Third Amended Complaint is The Bureaus, Inc.  If Ms. Stewart's most recent theory of her case is correct, The Bureaus, Inc. is an essential party.

Although Defendants make much of Ms. Stewart's lack of good cause for failing to serve The Bureaus, Inc. with the Second Amended Complaint, Defendants neglect Rule 4(m)'s provision that the court's dismissal be "without prejudice."  *See* Fed. R. Civ. P. 4(m).  Neither Rule 4(m) nor the court's order bars Ms. Stewart from moving to rejoin The Bureaus, Inc.  Defendants contend that they will be prejudiced if Ms. Stewart is permitted to rejoin any party because Defendants would need to "substantially redo or supplement completed discovery."  (Doc. # 144, at 5.)  Assuming such a burden exists, it is doubtful that the burden outweighs the prejudice that Ms. Stewart and a potential class would suffer if Ms. Stewart is denied leave to rejoin the alleged master servicer of the debts and the only Bureaus entity with any employees.[19]  In the absence of a compelling legal argument barring rejoinder, Ms. Stewart's motion for leave to

---

[19] It appears that those facts were unknown to Ms. Stewart when she filed the Second Amended Complaint.  (*See* Doc. # 103, at ¶ 32.)

amend her complaint to rejoin The Bureaus, Inc. as a defendant is due to be granted.

### 2.    *Proposed New Plaintiffs*

The proposed Third Amended Complaint adds three new plaintiffs:  Earnest Eaton, Becky Borden, and Lisa McCall (collectively "New Plaintiffs").  Non-existent Bureaus Investment Group #2, LLC retained Mark Chambless to sue Ms. Borden in February 2003 and Mr. Eaton in March 2003.  Non-existent Bureaus Investment Group #1, LLC retained Mark Chambless to sue Ms. McCall in October 2005.  The proposed Third Amended Complaint attempts to deal with the substantial delay in time (eleven years for Borden and Eaton and eight-and-a-half years for McCall) by alleging the following:

> Plaintiffs and [potential] class members could not have, by the exercise of reasonable diligence, discovered Defendants' conduct alleged herein, because of the self-concealing nature of the Defendants' conduct and the active concealment of the true names and corporate status of Defendants, including their deliberate efforts to conceal the true names and designations of the various creditors concerned, and that all but two of Bureaus Defendants have ever been registered with the Secretary of State of Alabama or licensed to do business in Alabama.

(Doc. # 142-1, at ¶ 85.)  Hence, Plaintiffs claim that any applicable statutes of limitations must be equitably tolled.  (Doc. # 142-1, at ¶ 86.)

Defendants assert that the addition of new Plaintiffs is untimely, prejudicial, and futile because of the relevant statutes of limitations.  Defendants argue that

there is no reason that New Plaintiffs could not have filed their own lawsuits or joined this one long before now.  Defendants claim that their authority to sue New Plaintiffs in state court was "readily searchable" through the State of Alabama's public records, which is how Mr. Lorant discovered the impropriety of the consent judgment Ms. Stewart entered with Bureaus Investment Group #1, LLC.  (Doc. # 144, at 7.)  Defendants claim that adding New Plaintiffs would unduly delay class certification and dispositive motion briefing and would force them to start from scratch in discovery with new parties.

Ms. Stewart replies that although Mr. Lorant knew of New Plaintiffs' claims long ago, neither she nor Mr. Lorant had a duty to contact them to seek their participation in this case.  She claims that she contacted them when searching for evidence of pre-litigation collections communication from Defendants, and at that time, New Plaintiffs themselves became aware of their potential causes of action. (Doc. # 147, at 10.)

In support of her request for equitable tolling, Ms. Stewart points to the "self-concealing nature of Defendants' pleadings," the commission of "affirmative acts" to falsify bills of sale, assignments of debt, and authorization and verification forms filed in Alabama courts, and Defendants' continued wrongful collection efforts in Alabama courts after Ms. Stewart sued Bureaus Investment Group #1,

LLC.[20]   (Doc. # 147, at 16.)   She argues that even with due diligence, New Plaintiffs "could not have known the documents they received or that were filed in Alabama courts contained false, fraudulent, and improper information."   (Doc. # 147, at 17.)

Ms. Stewart offers little law in support of her equitable tolling argument. (*See* Doc, # 147, at 17 (citing *Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 40 (S.D.N.Y. 2001); *Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 571–72 (S.D.N.Y. 2011)).)   Defendants' provision of legal argument is also scant; they only remind the court of the applicable statutes of limitations for FDCPA claims and state law torts.   (Doc. # 144, at 8 (citing 15 U.S.C. § 1692k(d); Ala. Code Ala. Code § 6-2-38).)[21]

Ordinarily, the limitation period on an FDCPA violation begins to run from the date of the violation – not the date when it is discovered by the plaintiff. "[Section] 1692k(d) does not contain a general discovery rule, that is, an exception providing that the one year limitation period begins to run when a debtor 'knows or has reason to know' of a violation of the [FDCPA]." *Cooper v. F.A. Mgmt.*

---

[20] With respect to Defendants' continuation of collection suits in Alabama's courts, Ms. Stewart claims that New Plaintiffs and other potential plaintiffs would interpret the maintenance of ongoing suits as continuing representations by the debt collectors that the suits were proper.

[21] Ms. Stewart does not dispute Defendants' assertion that any state law torts are governed by a two-year statute of limitations.  However, it appears that a claim for money had and received is six years.  *See Johnson v. Life Ins. Co. of Ala.*, 581 So. 2d 438, 443 (Ala. 1991). In this case, an additional four years would not help New Plaintiffs.

*Solutions, Inc.*, 8:06-CV-751-T-27MAP, 2007 WL 4326800, at * 4 (M.D. Fla. Dec. 7, 2007) (internal citation and footnote omitted).  "In the absence of an express general discovery rule, a judicial implication of a general discovery rule is precluded." *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 27–28 (2001)).

Yet equitable tolling is possible.  *See Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939 n.5 (9th Cir. 2009) ("The discovery rule is not the same as equitable tolling.").  Equitable tolling "differs from the [discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).  The Eleventh Circuit has not expressly dealt with the application of equitable tolling in the context of FDCPA claims, but the Supreme Court has counseled that "limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49 (2002) (internal citation and quotation marks omitted).

In federal courts, "[e]quitable tolling is appropriate when a [plaintiff] untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).  The plaintiff carries the burden of establishing that

tolling is warranted.  *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004).  Because tolling is an "extraordinary" remedy, it must be used "sparingly." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006).

"[I]t is well established that [e]quitable tolling is not warranted merely because the plaintiff was unaware of his cause of action." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 356 (D. Conn. 2012) (internal quotation marks omitted).  "The fact that [a plaintiff] was unaware that she had a potential cause of action against [a defendant] is not the type of extraordinary circumstances that would warrant the application of equitable tolling." *Id.*  Instead, there must be some sort of concealment of wrongdoing by the defendant or some effort to trick the plaintiff into not exercising his rights. *Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp. 2d 498, 504 (N.D. Ohio 2011).   A plaintiff may demonstrate concealment "by showing either that the defendant took affirmative steps to prevent the plaintiff['s] discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing."  *Derisme*, 880 F. Supp. 2d at 355 (quoting *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).   Concealment is what Ms. Stewart argues should justify tolling of the statute of limitations for the New Plaintiffs' claims.  (*See* Doc. # 147, at 16–17.) She claims that the nature of Defendants' FDCPA and state-law violations is self-concealing because debtors would have no reason to suspect that they were being

sued fraudulently by Defendants.  This argument has added attraction because the collecting plaintiff in each case was not the original creditor but an assignee of the debt which affirmatively represented its legal existence and registration in Alabama.

The court is doubtful, however, that Defendants' misrepresentations in state court pleadings and other consumer debt-related documents prevented potential FDCPA plaintiffs from timely filing their claims.  In a very similar case, *Zigdon v. LVNV Funding, LLC*, 1:09CV0050, 2010 WL 1838637 (N.D. Ohio Apr. 23, 2010), *report and recommendation adopted*, 1:09CV0050, 2010 WL 2332692 (N.D. Ohio June 9, 2010), the plaintiffs attempted to bring a class action suit against defendants who violated the FDCPA by, among other things, commencing debt collection lawsuits in state court "even though [the defendants] did not have the legal capacity to do so."  *Id*. at *2, *5.  Much like this case, a debt collector-defendant that sued the plaintiffs was not registered to do business in Ohio.  The plaintiffs did not dispute that their FDCPA complaint was not filed within the one-year limitations period, but they contended that equitable tolling saved the claims. The court's ruling turned on whether the complaint plausibly alleged that the defendants had fraudulently concealed from the plaintiffs the defendants' lack of right to sue, thereby preventing the plaintiffs from discovering their FDCPA causes of action.

The *Zigdon* court concluded that equitable tolling was not warranted because the plaintiffs had failed to plead that: (1) the defendants "took active steps, *beyond the mere filing of the state court suit*," to conceal their non-registration status in Ohio; (2) the defendants made efforts to prevent plaintiffs from learning the true nature of their non-registration status or to cause them to miss the FDCPA filing deadline; or (3) the plaintiffs had exercised due diligence in trying to learn about their cause of action. *Id.* at *10–12 (emphasis added). With respect to the "active steps" element, the court noted the "critical distinction" between "failure to reveal" and "fraudulent concealment." *Id.* at *10. The court reasoned that "silence" and "unwillingness to divulge one's allegedly wrongful activities," in the absence of a fiduciary relationship, was not the sort of active concealment for which the equitable tolling remedy was created. *Id.* Here, of course, New Plaintiffs were not much different than the *Zigdon* plaintiffs. They knew that they had been sued by entities purporting to have authority to sue them who identified themselves as Bureaus Investment Group #1, LCC and Bureaus Investment Group #2, LLC.[22]

There is a distinction, however, in that the defendants in *Zigdon* do not appear to have pleaded their legal capacity to sue in their state court complaints, whereas as the non-existent Bureaus in this case allegedly represented that they

---

[22] *Cf. Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (applying equitable tolling to FDCPA claims where plaintiffs were never properly served with process and did not even know that default judgments had been entered against them in state court collection suits).

were "corporation[s] licensed to do business in the [S]tate of Alabama."  (Doc. # 142-2, at ¶ 44.)  While it is a close call on whether Defendants took active steps to conceal their offenses, the distinction is not so substantial as to render *Zigdon* unfitting as persuasive authority.

The *Zigdon* court also found it somewhat significant that a business's registration with the State of Ohio was a matter of public record.  *See id.* at *11. Defendants have made much of the accessibility of the same information in Alabama, and Ms. Stewart does not rebut their contention that Ms. Stewart's timely claim is proof that Defendants' alleged FDCPA violations could have been ascertained within the one-year statutory period by verifying Defendants' registration with the Alabama Secretary of State and by searching for Defendants' corporate or organizational existence on other states' databases.  Thus, this does not appear to be the sort of case where a plaintiff's tardiness was "unavoidable even with diligence."  *Sandvik*, 177 F.3d at 1271.  Ms. Stewart asserts that New Plaintiffs recently became aware of their causes of action against Defendants.  But lack of awareness or ignorance "does not constitute a rare and extraordinary circumstance that would merit equitable tolling."  *Ruiz v. Poole*, 566 F. Supp. 2d 336, 341 (S.D.N.Y. 2008).

While misrepresentation and concealment are closely related concepts, the court cannot say that the misrepresentations, when viewed in the context of the

passage of many years beyond the FDCPA statute of limitations, amounted to active concealment over those many years.  Because it appears that Defendants did not actively conceal their FDCPA violations or state-law torts and that New Plaintiffs were not diligent to discover their claims, this is not the rare case that lends itself to equitable tolling under either federal law or state law.[23] Consequently, Ms. Stewart's motion for leave to amend her pleading to add New Plaintiffs is due to be denied as futile.  *See Hall*, 367 F.3d at 1263.

### 3.   *Joinder of New Defendants*

Ms. Stewart seeks to join four new parties as defendants: Aristotle Sangalang, Burton Slotky, Mark Chambless, and Chambless Math & Carr P.C. (collectively the "New Defendants").  Ms. Stewart also seeks to add B.I.G. No. 2, LLC as a defendant, but B.I.G. No. 2, LLC is non-existent and should not be joined for reasons stated *supra* in Part IV.A.

### a.   **Parties' Positions on Joinder of New Defendants**

Generally, Defendants oppose the joinder of New Defendants because the amendment has been unduly delayed, is prejudicial to Defendants' prior efforts to defend this suit and to conduct discovery, and is futile because the claims are time-barred.  The following paragraphs summarize what the parties argue with respect

---

[23] Similar to the federal-law standard, Alabama law requires a plaintiff who seeks to equitably toll a statute of limitations to establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of filing his suit. *Weaver v. Firestone*, ___ So. 3d ____, 1101403, 2013 WL 6516389, at *4 (Ala. 2013).

to the timeliness of Ms. Stewart's request to join each New Defendant and the prejudice that Defendants might suffer if joinder is allowed.

### i.  Aristotle Sangalang

Defendants argue that the "sole allegation against Mr. Sangalang," aside from any of the "believed to have participated" allegations, is that he "personally swore to Authorization and Verification forms on behalf of" non-existent Bureaus entities.  (Doc. # 144, at 10 (citing proposed Third Amended Complaint, at ¶ 43).) Defendants protest that Ms. Stewart has known about these verification forms and Mr. Sangalang's identity for years.   Ms. Stewart replies that prior to Mr. Sangalang's deposition in February 2014, she did not know of Mr. Sangalang's involvement with the Portfolios as their "appointed designee," his "ubiquitous roles" in debt collection activities on behalf of the Bureaus entities, or his role in training and supervising debt collection personnel.   (Doc. # 147, at 7–8.) Defendants claim Ms. Stewart's representations about what she learned and when are false at worst and misleading at best.  (Doc. # 152, at 7–9.)

### ii.  Burton Slotky

Defendants argue that the sole allegation against Burton Slotky is that Ms. Stewart "believes" that he "participated in the conduct" described in the proposed Third Amended Complaint.  (Doc. # 144, at 9 (citing proposed Third Amended

Compl. at ¶ 20).)[24]   Defendants posit that Ms. Stewart adds Burton Slotky only because he is a partial owner of Bureaus Investment Group, LLC and The Bureaus, Inc.  Ms. Stewart replies that she only recently learned that Burton Slotky had an ownership interest in Bureaus Investment Group, LLC, and that Bureaus Investment Group, LLC was the sole member of all the Portfolio entities. Combining that information with the fact that the Portfolio entities have no employees, Ms. Stewart deduces Burton Slotky has played a key role in the operation of Bureaus Investment Group, LLC and the Bureaus Portfolios. Defendants retort that Ms. Stewart's counsel could have learned about the Burton Slotky's ownership interests long before now by simply searching the Illinois Secretary of State's website.  (*See* Doc. # 152-1.)

### iii.    Mark Chambless and Chambless Math & Carr, P.C.

Defendants assert that Ms. Stewart has been familiar with Mr. Chambless and his law firm for several years, and thus, she has no excuse for seeking to join them as parties in 2014.  Ms. Stewart replies that she was unaware until recently that "[a]ny decision to falsely [plead in state courts] that the collection plaintiff[s] w[ere] 'licensed to do business in Alabama'" was Mr. Chambless's decision. (Doc. # 147, at 9.)  Defendants dispute neither this deflection of blame away from themselves and onto Mr. Chambless nor the substance of the allegations against

---

[24]  Actually, the proposed Third Amended Complaint also alleges that Burton Slotky, along with others, "mailed collection letters to consumers."  (Doc. # 142-1, at ¶ 25.)

him and his firm, (*see* Doc. # 142-1, at ¶¶ 144–47), but they argue that Ms. Stewart should not be allowed to later abandon her present allegation that Mr. Chambless and his firm are responsible for pleading Defendants' status as licensed to do business in Alabama.

Altogether, Defendants argue that Ms. Stewart has had actual or constructive knowledge of Mr. Sangalang, Burton Slotky, Mr. Chambless, and Chambless Math & Carr, P.C. for years, rendering her motion untimely.

### iv.    Prejudice to Defendants

Defendants assert that joinder of these Defendants will set back the progress that they have made in defending against Ms. Stewart's claims.  Ms. Stewart reminds the court that although this case has been pending for some time and was slow to get going, only four and half months of substantive discovery under a uniform scheduling order transpired before she sought leave to join New Defendants.

### b.    Analysis

### i.    Futility

The briefing focuses almost entirely on undue delay and whether Defendants will suffer undue prejudice.  Those factors are relevant and will be considered, *see Foman*, 371 U.S. at 182, but aside from Defendants' criticism of the allegations against Aristotle Sangalang and Burton Slotky as insubstantial, there is little

discussion about futility of the joinder.  Defendants simply argue that "[a]dding New Defendants is futile because . . . the claims against them are time-barred as discussed" previously in their brief with respect to the joinder of New Plaintiffs. (Doc. # 144, at 10.)  Ms. Stewart replies in a similarly conclusory manner:  "The addition of [the New Defendants] is not futile" because Ms. Stewart "lacked knowledge of factual support sufficient to either identify or understand the extent and significance of the participation of New Defendants in the Bureaus Network" and because "the claims are timely."  (Doc. # 147, at 18.)

If Ms. Stewart's claims against New Defendants are in fact futile because they are time-barred by relevant statutes of limitations, application of Rule 15(c)'s relation back doctrine is in order.  *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations.").[25]  Yet neither side offers a word for or against relation

---

[25] Rule 15(c)(1) provides that

[a]n amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

back of the amended claims.   In the absence of argument to the contrary, for purposes of this opinion, it is assumed but not decided that the amendment adding New Defendants complies with Rule 15(c)(1)(C).

As for what little has been argued about the futility of joining New Defendants, the court concludes that Ms. Stewart may add Aristotle Sangalang and Burton Slotky as Defendants, notwithstanding Ms. Stewart's allegations of belief, as opposed to knowledge, of alleged wrongdoing.   Someone – a human being, for that is the only way organized business entities transact business – is responsible for the alleged misconduct of the numerous Bureaus entities.   It is plausible that responsibility rests ultimately with the officers, directors, shareholders, managers, or members of the Bureaus, Inc., Bureaus Investment Group, LLC, or both.

---

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint,[25] the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).   Rule 15 "incorporates state law relation-back rules when state law provides the statute of limitations for the claims."   *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 960 (11th Cir. 2001).   Alabama's relation-back rule is very similar to the federal rule and differs only with respect to its provisions for fictitious party practice.   *See* Ala. R. Civ. P. 15(c).

### ii.    Undue Delay

Next, the court concludes that undue delay is not a reason to deny Ms. Stewart's motion to amend.  In *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001), the Eleventh Circuit reversed a district court's order dismissing an action without granting the plaintiffs leave to amend.  The district court "concluded that [granting leave to amend the complaint] would unfairly prejudice the defendants . . . because the litigation had been ongoing for over three years and the plaintiffs had not yet adequately pleaded their complaint."  *Id.* at 1164.  The Eleventh Circuit explained that "the lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint."  *Id.*  The court found no evidence that plaintiffs were employing dilatory tactics and noted that the litigation was protracted in part by the district court's certification of an interlocutory appeal. *Id.* at 1164–65.

Here, there is no question that these proceedings have moved slowly.  Ms. Stewart first raised her FDCPA claims in state court on March 9, 2010, a little more than four years ago.  Many months of the four year delay inevitably resulted from the several motions to dismiss and to amend the complaint.  But this is not the sort of case where the pleading is on life support.  The scope of this opinion shows that there are and have been substantial allegations.   The allegations keep

multiplying, possibly in direct proportion to the complexity of the business entities conceived and birthed solely through the intentions of one or more of the Defendants.

Defendants linger on Mr. Lorant's absence from the litigation for roughly nine months following the filing of the Second Amended Complaint. They complain repeatedly about the delay he caused, but in truth, they may have preferred his absence, and they have not suffered much prejudice by it. Further, there is no evidence that Mr. Lorant's disappearance was for a dilatory purpose, and his prosecution of Ms. Stewart's case since September 2013 indicates a desire, shared by the court, to expeditiously resolve this case. Finally, it appears that Ms. Stewart filed the instant motion to amend within a month of confirming, through discovery, that she may have actionable FDCPA and tort claims against New Defendants. *See* 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1488 (3d ed. 2005) ("[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent."). For these reasons, there is no support for Defendants' contention that leave to amend should be denied for undue delay.

### iii.    Prejudice

Finally, any prejudice that Defendants may suffer as a result of allowing Ms. Stewart to join New Defendants in a third amended complaint is outweighed by

Ms. Stewart's and any potential class member's interests in justice. Fed. R. Civ. P. 15(a)(2). Moreover, the prejudice that may occur is likely the product of prodigious planning of endless entities of limited liability, birthed by some of the Defendants.

### c.    Summary

For the foregoing reasons, Ms. Stewart will be permitted to add New Defendants, if she seeks leave to amend her complaint in accordance with this opinion and order.

### 4.    *New Claims and New Theories of Liability*

Defendants oppose Plaintiffs' amendment of her claims to assert new claims and new theories of liability. The proposed Third Amended Complaint differs from the Second Amended Complaint in its introduction of theories of "promoter liability" against Defendants for the acts of non-existing Bureaus entities (Counts VI and VII), central figure liability (Count IX), and alter ego liability (Count X). (*Compare* Doc. # 103 *with* Doc # 142-1.) The proposed Third Amended Complaint drops the abuse of process and fraud claims raised in the Second Amended Complaint, adds a separate FDCPA claim against Mark Chambless and his law firm (Count I), combines the assumpsit and account claims into one count (Count IV), adds two new claims for negligent, reckless, and wanton training, monitoring, and supervision (Count V), and adds a claim for

maintaining lawsuits prior to registration in Alabama (Count VIII).[26]   As previously argued with respect to the joinder of new parties, Defendants claim that the new claims and theories of liability are untimely, prejudicial, and futile.   For the same reasons provided *supra*, the court finds that undue delay and prejudice are insufficient grounds to deny leave to amend and to add new claims and theories of liability.

With respect to futility, Defendants contend that the new claims "cannot withstand a motion to dismiss for failure to state a claim and/or for lack of subject-matter jurisdiction."   (Doc. # 144.)   Defendants' objection to subject-matter jurisdiction has been addressed *supra* in Part IV.A., but arguments related to Rule 12(b)(6) have not.   Defendants focus those arguments solely upon the newly added central figure and alter ego theories of liability.

### a.   Central Figure Liability

Defendants posit that Ms. Stewart "seeks to extrapolate a [central figure] theory of liability under federal law into a cause of action under Alabama law."

---

[26] In Count VIII, Ms. Stewart cites Ala. Code § 10A-1-7.21(a), which provides that "[a] foreign entity transacting business in this state may not maintain any action, suit, or proceeding in any court of this state until it has registered in this state."   The statute does not appear to create a cause of action for damages.  *See id.*  The surrounding counts (VI, VII , IX and X) are theories of liability, so perhaps Ms. Stewart is including Count VIII as another theory of liability against the "Existing Bureaus."   Whatever Ms. Stewart's purpose for identifying the statute as a separate count in her proposed pleading, Defendants have not criticized it in their briefing.

(Doc. # 144, at 12.) [27]   Defendants argue that "[i]t is not enough simply to allege that . . . [Michael Slotky, Aristotle Sangalang, or The Bureaus, Inc.] participated in corporate conduct that caused an injury."   (Doc. # 144, at 12 (citing *Galactic Employer Servs., Inc. v. McDorman*, 880 So. 2d 434, 437–38 (Ala. Civ. App. 2003)).)   Defendants claim that Ms. Stewart must plead that these defendants committed an intentional tort under Alabama law in order to hold them liable as central figures.   Ms. Stewart replies that she has pleaded that Michael Slotky and Aristotle Sangalang personally committed "fraudulent acts or omissions" under federal and state law in their capacities as corporate officers or as agents, owners, or employees of the limited liability companies.   (Doc. # 147, at 19 (citing *Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999)).)

It is plausible that, in view of the allegations in the proposed Third Amended Complaint, Michael Slotky, Aristotle Sangalang, Burton Slotky, and The Bureaus, Inc. could be held liable as participants or actors on both the FDCPA and state-law claims.   The next proposed Third Amended Complaint needs to supply factual

---

[27] The proposed Third Amended Complaint cites *Citronelle-Mobile Gathering, Inc. v. O'Leary*, 499 F. Supp. 871, 881 (S.D. Ala. 1980), a federal case that involved federal claims and central figure liability.   *See id.*   ("When a corporate officer or director is a central figure in tortious conduct, or when he authorizes, participates and approves of that conduct, he is subject to liability based upon that conduct.   This doctrine does not depend upon the same grounds as piercing the corporate veil, that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with formalities of organization.   Rather, the officer or director is liable as an actor, not an owner." (internal citations omitted)).

detail about the alleged fraudulent acts or omissions of the purported central figures.

### b.    Veil Piercing / Alter Ego Liability

Although the viability of alter ego liability has been addressed *supra* in Part IV.A. in the context of Ms. Stewart's standing to sue, the viability of the theory will be readdressed briefly here in the context of the futility of an amendment.

Defendants contend that Ms. Stewart must show either that a Bureaus entity was created and exists for a fraudulent purpose, or alternatively, that an injustice will result from recognition of a fraudulent Bureaus entity's existence.  (Doc. # 144, at 13 (citing *Simmons v. Clark Equip. Credit Corp.*, 554 So. 2d 398, 400 (Ala. 1989)).)  Defendants deny that Ms. Stewart alleges any facts to support her allegations of fraud or injustice.

Paragraph 168 of the proposed Third Amended Complaint reads:

Additionally, under the circumstances, the observance of the fiction of separate existence would sanction a fraud or promote injustice. Existing Bureaus and Bureaus Investment Group LLC and Registered Portfolios act as mere instrumentalities through which The Bureaus, Inc., Michael Slotky, Aristotle Sangalang, and/or Burton Slotky act with complete impunity.  They have so manipulated the corporate form that they have promoted great injustice by collecting Debts from Alabama consumers without any regard to the accuracy of the information, the legal ability to collect the debt, proper ownership of the debt, or complying with federal and state regulations.  Instead, they manipulate the corporate structures in a manner to 'churn' debt collection activity with a conscious disregard of any requirements.

(Doc. # 142-1, at ¶ 168.)  Defendants call this paragraph "quixotic."  (Doc. # 144, at 13.)  In view of the facts alleged in the proposed Third Amended Complaint, the court calls the allegations plausible.  Whether the corporate or other limited liability form has been abused may ultimately be a question for a jury.  For now, the allegations are adequate to allow the new theories of liability, assuming the Third Amended Complaint is revised and allowed.

## V.  CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that:

(1)     Defendants' motion to dismiss (Doc. # 140) is DENIED with leave to refile under circumstances identified in this opinion;

(2)     Ms. Stewart's motion for leave to file a third amended complaint (Doc. # 142) is DENIED to the extent that Ms. Stewart may not file a third amended complaint as it is currently drafted;

(3)     Ms. Stewart is GRANTED leave to file, on or before **June 13, 2014**, another motion to amend the complaint with a proposed third amended complaint that comports with the findings in this opinion. Because of the exhaustive review of the instant motion for leave to amend and because Ms. Stewart has been given parameters for what will be allowed, the court will not entertain objections from Defendants to the next proposed amended complaint.  Any further

objections may be made in a Rule 12(b)(1) or 12(b)(6) motion to dismiss the third amended complaint.

Because the court's consideration of these motions has impacted the existing scheduling order deadlines, new scheduling order deadlines will be set by a separate, future order.  The temporary stay on discovery remains in effect until it is clear whether a third amended complaint is resubmitted and allowed.

DONE this 2nd day of June, 2014.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE