IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIE J. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CV-1019-WKW |
| | ) | [WO] |
| BUREAUS INVESTMENT | ) | |
| GROUP, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is a motion to dismiss filed by Defendants Mark Chambless and Chambless, Math & Carr, P.C., which has been fully briefed.  (Docs. # 191, 204, 216.)  Upon consideration of the motion, the court concludes that it is due to be granted in part and denied in part.

## I.  JURISIDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1367 and 15 U.S.C. § 1692k(d).  Personal jurisdiction and venue are uncontested

## II.  STANDARD OF REVIEW

A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion when the complaint shows on its face that the limitations period has run.  *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

Otherwise, when evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. BACKGROUND

**A.** **Facts**

Plaintiff Allie Stewart was sued in Macon County Circuit Court on a debt on May 22, 2008. The plaintiff in the collection suit identified itself as "Bureaus Investment Group #1, LLC." (Third Amended Compl. at ¶ 53.) Defendant Mark Chambless is an Alabama attorney and a member of Defendant Chambless Math & Carr, P.C. (hereinafter "the firm"). Mr. Chambless filed the debt collection suit against Ms. Stewart and continued to represent Bureaus Investment Group #1, LLC, in that action.

A proposed consent judgment was entered against Ms. Stewart on November 19, 2008, and she began making payments to Mr. Chambless's firm, but Ms. Stewart later learned that Bureaus Investment Group #1, LLC, was not licensed or registered in Alabama.  She thus requested that the consent judgment be vacated so that she could defend the suit.  The Macon County Circuit Court granted Ms. Stewart's Rule 60(b) motion and vacated the consent judgment in February 2010, over the plaintiff's objection. Ms. Stewart made eight payments to Mr. Chambless's firm before the judgment was vacated.  Mr. Chambless continued to represent his client through June 22, 2010, when he moved to voluntarily dismiss the suit against Ms. Stewart.

The true legal name of the owner of Ms. Stewart's debt is Bureaus Investment Group Portfolio No. 1, LLC.  Bureaus Investment Group Portfolio No. 1, LLC, and other similarly named entities (*e.g.*, No. 2, No. 3, *etc.*, hereinafter the "Portfolio Defendants") are Illinois limited liability companies whose sole member is Bureaus Investment Group, LLC.  Bureaus Investment Group, LLC, is also an Illinois limited liability company.  The Portfolio Defendants have no employees and are allegedly run by a corporation with employees, The Bureaus, Inc.  The Bureaus, Inc., is or was owned and operated by three individuals named as Defendants in this action:   Michael Slotky, Burton Slotky, and Aristotle

Sangalang.[1]  The court refers collectively to the Portfolio Defendants, Bureaus Investment Group, LLC, and The Bureaus, Inc., as "the Bureaus entities."  Ms. Stewart complains that the Bureaus entities violated the Fair Debt Collection Practices Act ("FDCPA") and state law by bringing collection suits in Alabama's state courts while fraudulently misrepresenting both their legal status as corporations and their license to do business in Alabama.  She sues on her own behalf and on behalf of others consumers similarly situated.

Ms. Stewart alleges that Mr. Chambless and his firm are liable along with the Bureaus entities.   Mr. Chambless allegedly filed and maintained between 150 and 200 collection lawsuits, including the suit against her, in Alabama's state courts on behalf of the Bureaus entitites.  Ms. Stewart claims that in every instance, Mr. Chambless used "false names and false corporate designations" and falsely represented that the businesses were "corporation[s] licensed to do business in the State of Alabama."  (Third Am. Compl. at ¶ 12.)

B.    **Procedural History**

This case originated as a counterclaim to the debt collection suit in Macon County filed by "Bureaus Investment Group #1, LLC."  Ms. Stewart filed her counterclaim on March 9, 2010.  (Doc. # 1-3.)  Once the original action against her was dismissed and the parties were realigned, Bureaus Investment Group #1, LLC,

---

[1] Burton Slotky died November 5, 2014.  (Doc. # 218 (Suggestion of Death).)  His Estate has been substituted as a party.

a nonexistent entity later correctly identified as Bureaus Investment Group Portfolio No. 1, LLC, removed this case to federal court in December 2010. (Doc. # 1.) In response to several motions to dismiss, Ms. Stewart has amended her complaint three times, and only in the most recent iteration, filed July 30, 2014, has she implicated Mr. Chambless and his firm. Ms. Stewart first mentioned Mr. Chambless and his firm as prospective defendants in her motion for leave to file a third amended complaint, filed March 14, 2014. (*See* Doc. # 142.) Ms. Stewart has represented that "[p]rior to the deposition of [Mr.] Sangalang [in February 2014], [she] was not aware" that the decision to plead that the non-existent Bureaus entities were "corporation[s] licensed to do business in Alabama" allegedly was made by Mr. Chambless rather than by the Bureaus Defendants. (Doc. # 147, at 8–9.) She also learned at that time that Mr. Chambless was responsible for preparing the "authorization and verification forms" verifying that debts were owned by non-existent Bureaus entities. (Doc. # 147, at 9.)

On June 2, 2014, Ms. Stewart's motion for leave to amend the complaint was granted in part to allow the joinder of Mr. Chambless and the firm. (*See* Doc. # 157.) In the Third Amended Complaint, Ms. Stewart sues Mr. Chambless and the firm for violating the FDCPA (Count I), for wanton and/or intentional conduct (Count III), for money had and received (Count IV), and for negligent, reckless, and/or wanton training, monitoring, and/or supervision (Count V – against the firm

only).  So far, Ms. Stewart and the Bureaus entities have engaged in very little discovery, and despite being in this court for four-and-half years, this case has made little progress beyond the pleading and motion-to-dismiss stage.

## IV.  DISCUSSION

Mr. Chambless and his firm contend that Ms. Stewart's claims against them (Counts I, III, IV, and V) are time-barred, fail to state claims upon which relief can be granted, or both.  Their arguments are discussed count by count.

## A.    FDCPA Claim (Count I)

### 1.    *FDCPA: The Statute of Limitations and Discovery Rule*

Ms. Stewart alleges that Defendants' offensive conduct in state court violated multiple provisions of the FDCPA.  The FDCPA requires that actions be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  The statute of limitations begins to run on the date the debt collector last engages in conduct offensive of the FDCPA.  *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995).

A discovery rule "protects plaintiffs who are unaware of their injury, while requiring those plaintiffs who have 'discovered' their injury to file suit within the prescribed [statutory] period."  *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1433 (11th Cir. 1997).  It therefore "allow[s] a claim to accrue when the litigant first knows or with due diligence should know facts that will

6

form the basis for an action." *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010) (internal quotation marks and citation omitted). This court has concluded, when considering a previous motion to dismiss in this case, that there is no discovery rule allowing the statute of limitations to be tolled until the debtor knows or has reason to know of an alleged FDCPA violation. *Stewart v. Bureaus Inv. Grp. No. 1, LLC*, 24 F. Supp. 3d 1142, 1159 (M.D. Ala. 2014) (citing *Cooper v. F.A. Mgmt. Solutions, Inc.*, 8:06–CV–751–T–27MA P, 2007 WL 4326800, at *4 (M.D. Fla. Dec. 7, 2007)).

Mr. Chambless and his firm contend that the offensive conduct complained of occurred on the date that the state court collection suit was filed, May 22, 2008. Alternatively, they argue that the latest possible occurrence of offensive conduct was September 30, 2008, when Mr. Chambless filed a motion for consent judgment. Ms. Stewart moved to amend her complaint to add Mr. Chambless and his firm on March 14, 2014. (Doc. # 142.) Using either date proposed by Mr. Chambless, the claims are obviously far beyond the one-year statutory limit. Mr. Chambless continued to represent Bureaus Investment Group Portfolio No. 1, LLC through 2010, but even if it assumed that he violated the FDCPA as late as 2010, Count I is still untimely.

Mr. Chambless and his firm argue further that Ms. Stewart knew of the Bureaus entities' "naming violations" no later than March 30, 2012. (Doc. # 191,

at 13–14.)[2]  Ergo, even if a discovery rule was available to Ms. Stewart, it would not save this fraction of her FDCPA claim because she waited until 2014 to amend the complaint.

Ms. Stewart does not argue expressly that a discovery rule saves her claims against Mr. Chambless and his firm, but she does argue that she was ignorant of the facts to support a claim against Mr. Chambless and his firm.  She contends, as she did when she moved for leave to amend her complaint, that she lacked awareness of Mr. Chambless or his firm's alleged culpability until she deposed Mr. Sangalang in February 2014.  (*See* Doc. # 204, at 13, 16–17.)  Ms. Stewart claims that, until that deposition, she mistakenly believed that Mr. Chambless made every allegedly false representation in the state court case pursuant to the directives of or on the basis of information supplied by the Bureaus entities.  Ms. Stewart focuses on Mr. Chambless's awareness of her "misimpression" from the outset of this suit and asserts that her amendments should relate back to the filing of her original complaint.  (Doc. # 204, at 17.)  She also excuses her untimely claim by asserting that the Bureaus entities failed to timely disclose, pursuant to Rule 26(a)(1), Mr. Chambless and his firm as parties that might have discoverable information.  (Doc. # 204, at 9.)

---

[2] Mr. Chambless and the firm cite an affidavit and email attachment submitted by the Bureaus entities' defense counsel in this litigation that shows counsel informed Ms. Stewart's counsel on March 30, 2012 that Bureaus Investment Group Portfolio No. 1, LLC was the true name of the entity that sued her.  (Doc. # 163-1, at 7.)

Ms. Stewart has always understood that Mr. Chambless and his firm represented the Bureaus entity that sued her and that they could have been potentially liable to her.  The parties disagree whether Ms. Stewart may be allowed to evade the statute of limitations defense by asserting that she was unaware of or misinformed about Mr. Chambless's actual responsibility for allegedly violating the FDCPA.  It is not clear whether Ms. Stewart contests the court's previous conclusion that a discovery rule does not apply in FDCPA actions, but, in accord with the court's ruling in July 2014, the court finds that the untimely joinder of Mr. Chambless and his firm is not saved by any discovery rule.

### 2.    *Relation Back*

Without a discovery rule, Ms. Stewart must rely on the relation-back doctrine.  Since 1966, Rule 15 has allowed the addition of new parties by amendment after the expiration of the statute of limitations if the amendment relates back to the filing of the original complaint.  Today, Rule 15(c)(1) provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> . . .
>
> (C) the amendment *changes the party or the naming of the party against whom a claim is asserted*, if Rule 15(c)(1)(B) is satisfied[3] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

---

[3] Rule 15(c)(1)(B) requires that the claim must have "ar[isen] out of the same conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading."

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1) (emphasis added).

It is undisputed that the same transaction requirement in Rule 15(c)(1)(B) is satisfied and that Mr. Chambless and his firm were aware of Ms. Stewart's original countersuit within the 120 days allowed in Federal Rule of Civil Procedure 4(m). Ms. Stewart and Mr. Chambless disagree about many substantial issues including: (1) whether Rule 15(c)(1)(C)'s reference to a "change" of party comprehends the joinder of an entirely new party, which has been a stranger to the action, as a defendant in addition to the original defendants, or whether a "change" of party encompasses only those situations when an amendment totally replaces a formerly named defendant with the newly named defendant; (2) whether there was a "mistake" regarding the proper defendant; (3) if there was a mistake, whether Mr. Chambless and his firm was aware or should have been aware within the 120-day period of service that but for the mistake, they would have been proper defendants; and (4) whether Mr. Chambless and his firm will be prejudiced by defending Ms. Stewart's claims on the merits. The court needs to address only the first two issues, and because the interpretation of the phrase "changes the party" is the most fundamental issue, the court begins there.

### a.     Amendment "Changes the Party"

In their initial and reply briefs, Mr. Chambless and the firm cite several persuasive authorities that explicitly state that the joinder of a new defendant, in addition to the original defendant, does not relate back.  For instance, in *Telesaurus VPC, LLC v. Power*, No. CV 07-01311-PHX-NVW, 2011 WL 5024239 (D. Ariz. Oct. 21, 2011), the court reasoned that the plain language of Rule 15 advises that amendments relate back only when "the plaintiff redirect[s] an existing claim toward a different party, and drop[s] the original party."  *Id.* at *3.  The court relied on Rule 15(c)(1)(C)(ii)'s description of the plaintiff's "mistake concerning the *proper* party's identity," and reasoned that "'[p]roper party' necessarily implies an 'improper party,' not simply some other party."  *Id.* (emphasis added).

Other federal district and circuit courts are in accord.  *See In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129, 129–31 (E.D.N.Y. 2014) ("Rule 15(c)(1)(C) does not encompass just any mistake.   It requires a mistake 'concerning the proper party's identity.'   As a matter of plain language, this provision would appear to include only 'wrong party' cases, and not 'additional party' cases. . . .   In an 'additional party' case like this one, there generally will be no 'mistake concerning' the proper party's 'identity.'"); *Jadco Enters., Inc. v. Fannon*, No. CIV.A. 6:12-225-DCR, 2013 WL 6055170, at *5 (E.D. Ky. Nov. 15, 2013) (citing *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir.

2010)) ("Rule 15(c) does not allow a relation back when a plaintiff learns more about a case through discovery then attempts to broaden liability to attach new parties in addition to ones already before the court."); *see also Venezia v. 12th & Div. Props., LLC*, No. 3:09-CV-430, 2010 WL 3122787, at *2 (M.D. Tenn. Aug. 6, 2010) (also citing *Asher*, 596 F.3d at 318); *Asten v. City of Boulder*, No. 08-CV-00845-PAB-MEH, 2010 WL 5464298, at *6 (D. Colo. Sept. 28, 2010) report and recommendation adopted, No. 08-CV-00845-PAB-MEH, 2010 WL 5464297 (D. Colo. Dec. 29, 2010).[4]

Some of these courts have relied not only on Rule 15's plain language but also upon the language of the advisory committee notes to Rule 15(c) as the Rule has been amended over time. *See, e.g.*, *In re Vitamin* C, 995 F. Supp. 2d at 129 n.2 (citing the 1991 advisory committee's note and observing that the note only addresses situations involving "wrong parties" – not "additional parties" who were misnamed or misidentified in the original complaint); *Telesaurus*, 2011 WL 5024239, at *3 (discussing the 1966 advisory committee's "specific[] characteriz[ation of] the [1966] amendment [to Rule 15(c)] as the defendant-

---

[4] Independent research has revealed other courts which have interpreted Rule 15(c)'s language in the same fashion. *See Miracle of Life, L.L.C. v. N. Am. Van Lines, Inc.*, 368 F. Supp. 2d 499, 502 (D.S.C. 2005) (citing *Onan v. Cnty. of Roanoke, Va.*, 52 F.3d 321 (4th Cir. 1995)); *Wilson v. U.S. Gov't*, 23 F.3d 559, 563 (1st Cir. 1994); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993); *Schieszler v. Ferrum Coll.*, 233 F. Supp. 2d 796, 801 (W.D. Va. 2002). These precedents all comport with the Supreme Court's instruction that the Federal Rules of Civil Procedure be given their plain meaning. *See Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989).

oriented analog to [Rule] 17(a)'s plaintiff-oriented real party in interest rules" and the 1966 advisory committee's express connection of "what is now Rule 15(c)(1)(C) . . . with the policy of the statute of limitations" to "let[ ] stale claims die," except where "the plaintiff mistakenly believed that some other party caused the alleged injury").[5]

Ms. Stewart argues that the Supreme Court held in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010), that "relation back under Rule 15(c)(1)(C) depends on what the party *to be added* knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." (emphasis added).  (*See* Doc. # 204, at 14.)  Ms. Stewart stresses that *Krupski* used the more open-ended word "added" as opposed to the more restrictive word "substituted," yet she neglects to note that the courts in *Telesaurus*, *In re Vitamin C, Jadco*, *Venezia*, and *Asten* all interpreted Rule 15(c) after and in light of *Krupski* and arrived at conclusions in stark contrast to her position.   Further, *Krupski* was a "wrong party" case and involved the less controversial substitution of one defendant for another defendant, rather than the addition of a new party.  *See id.*, 560 U.S. at 544 (stating that the originally named defendant was dismissed by stipulation after plaintiff amended her complaint).

---

[5] "Although not binding, the interpretations in the Advisory Committee [n]otes are nearly universally accorded great weight in interpreting federal rules."  *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (internal quotation and citation omitted).

Ms. Stewart also relies upon an opinion from this district, *Chumney v. U.S. Repeating Arms Co.*, 196 F.R.D. 419 (M.D. Ala. 2000) (DeMent, J.), interpreting Eleventh Circuit precedent on relation-back doctrine.  (*See* Doc. # 204, at 14).  In *Chumney*, a defendant argued that the "[p]laintiff's amendment d[id] not meet the requirements of Rule 15(c) because her amendment add[ed] a defendant, rather than change[d] the defendant named in the original complaint."  *Id.* at 429.  The *Chumney* court opined that Eleventh Circuit's precedent in *Powers v. Graff*, 148 F.3d 1223 (11th Cir. 1998), did not support that argument.  196 F.R.D. at 429.  The court stated that "under *Powers*, the relevant issue . . . is not whether the amendment seeks to 'add' or 'change' a defendant, but instead whether the amendment corrects a 'mistake' about the identity of the defendant."  *Id.*[6]  The *Chumney* court concluded that the plaintiff's amendment related back because the plaintiff did not know the defendant's involvement in the manufacture of a defective product until after the running of the statute of limitations.

The parties have not submitted, and the court is unaware of, any case from the Eleventh Circuit directly addressing the interpretation of Rule 15(c)(1)(C) offered by Mr. Chambless and his firm.  It is significant that *Powers* did not confront the issue of whether a "change in party" encompasses an addition of a

---

[6] In *Powers*, the Eleventh Circuit affirmed a district court's determination that an amendment against newly added defendants did not relate back because "the newly added defendants were known to the plaintiff before the running of the statute of limitations and . . . should not necessarily have known that, absent a mistake by the plaintiff, they would have been sued."  148 F.3d at 1226.

14

defendant as opposed to the substitution of a defendant.  Rather, *Powers* addressed a separate but related issue – whether a plaintiff knew about his prospective defendant's identity prior to the running of the statute of limitations.  The district court in *Chumney* inferred, from *Powers*'s silence, that the wrong defendant/new defendant distinction was irrelevant to the Eleventh Circuit.  But an argument similar to Mr. Chambless's was neither accepted nor rejected by the court in *Powers*.  Hence, the court finds *Chumney* and its interpretation of *Powers* to be unpersuasive.

Based on the plain language of Rule 15 and its allowance for an amendment which "changes the party" where there has been "a mistake concerning the proper party's identity," and in the absence of Eleventh Circuit precedent to the contrary, the court concludes that the relation-back doctrine does not apply in instances where a plaintiff attempts to join entirely new defendants in addition to existing defendants.  Even if the court is incorrect on this point, Mr. Chambless and his firm still prevail on another argument.

### b.    A "Mistake" Regarding the "Proper Party's Identity"

Mr. Chambless and his firm also assert that Ms. Stewart made no "mistake" about their identities.  They contend that Ms. Stewart cannot claim that she lacked awareness of their alleged liability because the law is clear that an attorney engaged in debt collection litigation on behalf of a creditor may be held liable

under the FDPCA and because Ms. Stewart has admitted to knowing that Mr. Chambless was Bureaus Investment Portfolio No. 1, LLC's legal representative. (Doc. # 191, at 30–31, 37–38 (citing *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) and Ms. Stewart's deposition testimony).)  Mr. Chambless and his firm aver that "general mistakes of law, mistakes of fact, and mistakes as to the existence of causes of action are not sufficient grounds" to support relation back.  (Doc. # 191, at 37.)  They thus assert that there was no "mistake," but instead that Ms. Stewart made a "deliberate decision" not to sue Mr. Chambless from the outset.  (Doc. # 191, at 31 (citing *Powers*, 148 F.3d at 1227).)

In response, Ms. Stewart argues that, while she always knew of Defendants' role as the attorney and law firm in the debt collection case, she "misunderstood the role [they] played in deciding to wrongfully identify the collection-plaintiff as a corporation licensed to do business in Alabama" until she deposed Mr. Sangalang in February 2014.  (Doc. # 204, at 16–17.)

Ms. Stewart's excuse is unacceptable according to Eleventh Circuit precedent.  The Circuit reasoned in *Powers* that "[n]othing in the Rule or in the [advisory committee] [n]otes indicates that [relation back] applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged."  148 F.3d at 1227 (quoting *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997)).  *Powers*, therefore, squarely

confronts Ms. Stewart's late claims against Mr. Chambless and his firm.  *See also*

*Nobles v. Rural Cmty. Ins. Servs.*, 303 F. Supp. 2d 1279, 1287 (M.D. Ala. 2004)

(Thompson, J.) (proposing that the plaintiff's purported "mistake" under Rule

15(c) was "a mistake in legal judgment, not a mistake in the naming of the party,"

and thus concluding that there could be no relation back).

Ms. Stewart also turns (again) to *Krupski*, where the Supreme Court said that

"it would be error to conflate knowledge of a party's existence with the absence of

mistake."  560 U.S. at 548.  The Court offered the following example:

> A plaintiff may know that a prospective defendant – call him party A
> – exists, while erroneously believing him to have the status of party B.
> Similarly, a plaintiff may know generally what party A does while
> misunderstanding the roles that party A and party B played in the
> "conduct, transaction, or occurrence" giving rise to her claim.  If the
> plaintiff sues party B instead of party A under these circumstances,
> she has made a "mistake concerning the proper party's identity"
> notwithstanding her knowledge of the existence of both parties.

*Id.* at 549.  The Court explained further:

> [A] plaintiff might know that the prospective defendant exists but
> nonetheless harbor a misunderstanding about his status or role in the
> events giving rise to the claim at issue, and she may mistakenly
> choose to sue a different defendant based on that misimpression.  That
> kind of deliberate but mistaken choice does not foreclose a finding
> that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id.*  Ms. Stewart claims that *Krupski*'s "hypothetical is directly on point" with her

situation.  (Doc. # 204, at 16.)  She admits that she knew of Mr. Chambless and his

firm and their involvement in the debt collection suit prior to pleading the Third

Amended Complaint, but she says she did not know that they were culpable parties until she conducted discovery in 2014.

However, Ms. Stewart cannot read herself into the *Krupski* hypothetical, which corresponded to the facts of that case – not the facts in this case.  There, the plaintiff mistakenly sued one business entity (Costa Cruise Lines) instead of another (Costa Crociere S. p. A.).  560 U.S. at 543.  Here, Ms. Stewart has not mistakenly sued the Bureaus Defendants "*instead of*" Mr. Chambless and his firm, and she has not "mistakenly cho[sen] to sue *a different defendant* (*i.e.*, the Bureaus Defendants) based on [a] misimpression" of the facts.  She has always known of Mr. Chambless and his firm but not of their alleged responsibility for wrongdoing under the FDCPA.  Under *Powers*, Ms. Stewart's explanation does not justify relation back because her "proposed amendment [i]s not due to the kind of mistaken identity addressed by Rule 15(c)."  148 F.3d at 1228.  *See also Krupski*, 560 U.S. at 549 ("[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.").

### c.   Conclusion on Relation Back

In sum, the court concludes that the motion to dismiss the FDCPA claims against Mr. Chambless and his firm are due to be granted because the circumstances do not meet Rule 15(c)'s requirement that there be a "change" of

party or a "mistake concerning the proper party's identity." For these reasons, it is unnecessary to reach the parties' additional disputes as to whether Mr. Chambless and his firm received adequate notice, within 120 days of the filing of the original counterclaim (the first operative complaint), that the action would have been brought against them but for Ms. Stewart's purported mistake, or whether permitting relation back would unduly prejudice Mr. Chambless and the firm in defending on the merits. Likewise, the court need not consider Mr. Chambless and the firm's alternative argument that the March 2010 counterclaim was not filed within one year of any conduct by Mr. Chambless that offends the FDCPA. (*See* Doc. # 191, at 41.) Ms. Stewart's FDCPA claims against Mr. Chambless and his firm do not relate back to the date of the original pleading, as required by Rule 15(c)(1)(C), and are therefore barred by the FDCPA's one-year statute of limitations.

## B.   <u>Wanton and/or Intentional Conduct (Count III)</u>

### 1.   *Failure to State a Claim*

Mr. Chambless and his firm contend that there is no cognizable Alabama tort for wanton or intentional conduct on the basis of the facts alleged against them in the Third Amended Complaint (*i.e.*, Defendants' filing of documents in state court which misrepresented the Bureaus Defendants' names, corporate status, and license to conduct business in Alabama). This court has recently determined in a

similar FDCPA-based action that there is no Alabama state-law cause of action for willful or wanton misconduct related to the filing and maintenance of a debt collection suit based on insufficient evidence. *See Prince v. LVNV Funding, LLC*, No. 2:13-CV-462-WKW, 2014 WL 3361912, at *7 (M.D. Ala. July 9, 2014) *opinion withdrawn and vacated*, 2014 WL 7506753 (M.D. Ala. July 21, 2014).[7]

The court arrived at its determination in *Prince* because the Alabama Supreme Court has expressly held that "a claim of negligent or wanton prosecution of a civil action is not a cognizable tort claim in this state." *Ex parte Miller, Hamilton, Snider & Odom, LLC*, 942 So. 2d 334, 336 n.1 (Ala. 2006) (citing *Ex parte State Farm Mut. Auto. Ins. Co.*, 924 So. 2d 706, 711 (Ala. 2005)); *see also Ex parte Tuscaloosa Cnty.*, 770 So. 2d 602, 605 (Ala. 2000) (*Cutts v. Am. United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987) ("The policy disfavoring malicious prosecution claims . . . also disfavors bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms, especially general allegations of negligence, willfulness, or wantonness.")).

Ms. Stewart protests that Defendants have recast her claim as one for malicious prosecution. (They have not.) She further disputes that Alabama does not recognize her claim for wanton and/or intentional conduct but asserts that wantonness is a recognized tort in Alabama. (Doc. # 204, at 23–24.) Ms. Stewart

---

[7] The *Prince* opinion was withdrawn pursuant to the request and agreement of the parties to dismiss that case on their own terms.

contends that she sues not simply for Defendants' filing and maintenance of collection lawsuits, but rather, for Defendants' "conscious and deliberate filing of court documents" containing false information.  (Doc. # 204, at 25.)   Stated differently, Ms. Stewart says she sues not because Defendants simply filed a lawsuit against her but because they made knowing misrepresentations when filing the lawsuit.

### 2.   *Statute of Limitations*

Even if Ms. Stewart has pleaded a cognizable state-law claim for wanton or intentional conduct, Mr. Chambless and his firm note that she still faces a two-year statute of limitations.  (Doc. # 191, at 44 (citing Ala. Code § 6-2-38(*l*) and *Ex parte Capstone Bldg. Corp.*, 96 So. 3d 77, 90–91 (Ala. 2012)).)   Ms. Stewart does not dispute the statute of limitations but responds by adopting and incorporating her relation back argument made in reference to the FDCPA statute of limitations. (Doc. # 204, at 25–26.)   Mr. Chambless and his firm reassert their argument that Rule 15(c) does not allow relation back because Ms. Stewart did not make any mistake concerning the proper party's identity.  (Doc. # 191, at 46.)[8]

---

[8] By incorporating their relation-back arguments, the parties ask for the application of federal law to this state-law claim.  Rule 15(c)(1) provides that the court should allow an amendment to relate back when "relation back is permitted by the law that provides the statute of limitations applicable to the action."  Fed. R. Civ. P. 15(c)(1).  In *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 963 (11th Cir. 2001) (en banc), the court held that "Rule 15(c)(1) allows federal courts *sitting in diversity* to apply relation-back rules of state law where, as here, state law provides the statute of limitations for the action." (emphasis added).  Here, the court is not sitting in diversity but is exercising supplemental jurisdiction over Ms. Stewart's state-law claims pursuant to 28

### 3.    *Conclusion*

Upon consideration of the parties' arguments, the court finds that each of the arguments in favor of dismissal of Count III avails.  Even if Ms. Stewart has stated a claim under Alabama law for "wanton and/or intentional conduct" – and it is doubtful that such a claim can be brought on the facts alleged in the Third Amended Complaint – Ms. Stewart's claim would not relate back because there has been no "change" of party or a "mistake concerning the proper party's identity" as that language is used in Rule 15(c).

### C.    <u>Money Had and Received (Count IV)</u>

Regarding this Count, Mr. Chambless and the firm contend that Ms. Stewart eventually must prove that they are holding money improperly paid to them because of some mistake or fraud.  They argue that Ms. Stewart's pleading offers only "a bare accusation" that they hold her money and that it fails to provide facts to support a claim, such as an allegation as to "any particular amount of money"

---

U.S.C. § 1367(a).  One district court in this circuit has rejected the notion that Rule 15(c) and *Saxton* call for the application of Alabama's relation back doctrine to state-law claims before the court under § 1367(a).   *See, e.g., Estate of Rowell v. Walker Baptist Med. Ctr.*, 290 F.R.D. 549, 558 (N.D. Ala. 2013) (Smith, J.).  Another district court has concluded that Alabama law should apply to federal-question cases in which state law provides the applicable statute of limitations. *See Mann v. Darden*, 630 F. Supp. 2d 1305, 1311 (M.D. Ala. 2009) (Thompson, J.).  The Eleventh Circuit appears to have never decided whether its holding in *Saxton* extends to supplemental state-law claims, such as Ms. Stewart's.  Even if Alabama law on relation back applies, the language in Alabama's version of Rule 15 is comparable to the federal rule.  *See* Ala. R. Civ. P. 15(c)(3)(B) ("An amendment of a pleading relates back . . . when . . . the amendment . . . changes the party or the naming of the party . . . and . . . the party to be brought in by amendment . . . knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]. . . .").

owed to Ms. Stewart, or a "time frame in which [Mr.] Chambless received a sum from her," or a certain instance when she made a payment to him or the firm that she did not owe.  (Doc. # 191, at 48.)  Without specifics, they contend that the pleading states only a formulaic recitation of the elements of a cause of action, which is inadequate to satisfy the *Iqbal* and *Twombly* pleading standard.[9] [10]

Ms. Stewart says her allegations supporting Count IV are sufficiently plausible, and she points out Mr. Chambless's representation to the Macon County Circuit Court, which is part of this case record, that she made eight payments to "Bureaus Investment Group #1, LLC," following the entry of the now vacated consent judgment in favor of that legally non-existent entity.  (*See* Doc. # 1-1, at 26.)  Ms. Stewart claims that whoever holds those funds is not entitled to them because the judgment that obligated her payment was void.  (Doc. # 204, at 26.)

Mr. Chambless and his firm reply that the allegations in Ms. Stewart's pleading are nevertheless sparse and at "a minimum, a more definite statement must be required."  (Doc. # 216, at 29.)

---

[9] There is no statute of limitations defense asserted in the motion with respect to this claim, apparently because the claim was timely.  *See Johnson v. Life Ins. Co. of Ala.*, 581 So. 2d 438, 443 (Ala. 1991) (holding that an action for money had and received is governed by a six-year statute of limitations).

[10] Mr. Chambless and his firm argue in the alternative that even if the claim was properly pleaded, Ms. Stewart would be unable to prevail on the claims because she testified in a deposition that her decision to make payments on the debt was not based on any reliance upon Bureaus Investment Group Portfolio No. 1, LLC's lawful, licensed ability to sue her to collect the debt from her.  (Doc. # 191, at 50 n.20.)  This argument exceeds the scope of a motion to dismiss under Rule 12(b)(6).

"The cause of action for money had and received 'is based upon the theory that one person shall not be unjustly enriched at the expense of the other, and is equitable in nature.  That is to say, the action lies wherever one has received and holds money which in good conscience belongs to another.'"  *Azalea City Motels, Inc. v. First Ala. Bank of Mobile*, 551 So. 2d 967, 978 (Ala. 1989) (quoting *Christie v. Durden*, 88 So. 667, 668 (Ala. 1921)).  It has yet to be decided which of several Defendants holds the money that may belong to Ms. Stewart, but the allegations are plausible that Mr. Chambless and his firm are obligated in equity to return any funds they may hold to Ms. Stewart.  The motion to dismiss Count IV is due to be denied.  Further, after four iterations of the complaint, the court is loathe to order another, and Ms. Stewart will not be required to amend to offer Mr. Chambless and the firm a more definite statement.

**D.**   **Negligent, Reckless, or Wanton Training and/or Supervision (Count V)**

The firm argues that any claim against it for negligent training or supervision of Mr. Chambless is time-barred, and further, is due to be dismissed because it is derivative of Ms. Stewart's time-barred FDCPA claim and the claim for wanton and/or intentional conduct.[11]   "A party alleging negligent or wanton supervision  and  hiring  must  . . .  prove  the  underlying  wrongful  conduct  of

---

[11]  Although the motion to dismiss does not expressly say so, the statute of limitations defense to Count V is clear in the reply brief.  Further, it is clear that Count V is subject to a two-year statute of limitations.  *See Brown v. First Fed. Bank*, 95 So. 3d 803, 813 (Ala. Civ. App. 2012).

employees." *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003). The firm argues that "[w]ithout [Counts I and II], there can be no cause of action against [the firm] for the negligent supervision of [Mr. Chambless]."  (Doc. # 191, at 51.)   The firm does not explain why the claim for money had and received (Count IV) would not constitute wrongful underlying conduct to support Count V. Nevertheless, because there can be no dispute that Count V is barred by a two-year statute of limitations, Count V is due to be dismissed along with Counts I and III.

## V.  CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that Defendants Mark Chambless and Chambless Math & Carr, P.C.'s motion to dismiss (Doc. # 191) is GRANTED IN PART AND DENIED IN PART.   The motion is GRANTED as to Counts I, III, and V, which are DISMISSED with prejudice.  The motion is DENIED with respect to Count IV.

DONE this 1st day of July, 2015.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE