IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIE J. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CV-1019-WKW |
| | ) | [WO, PUBLISH] |
| BUREAUS INVESTMENT | ) | |
| GROUP, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are three motions to dismiss brought pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. They include a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a 12(b)(2) motion to dismiss for lack of personal jurisdiction, and a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

The complex nature of these motions necessitates some unpacking. Two groups of Bureaus Defendants filed briefs in support of the 12(b)(1) motion. (Doc. # 188.) The first group, hereinafter "the Claimless Defendants,"[1] consists of

---

[1] The parties adopted this moniker in their briefing. (Doc. # 189.) The Claimless Defendants group can further be divided into two subgroups. The "Claimless Portfolio Defendants" includes Bureaus Investment Group Portfolio No. 2, LLC, Bureaus Investment Group Portfolio No. 3, LLC, Bureaus Investment Group Portfolio No. 4, LLC, Bureaus Investment Group Portfolio No. 5, LLC, Bureaus Investment Group Portfolio No. 6, LLC, Bureaus Investment Group Portfolio No. 7, LLC, Bureaus Investment Group Portfolio No. 8,

Bureaus Investment Group, LLC, Bureaus Investment Group Portfolio No. 2, LLC, Bureaus Investment Group Portfolio No. 3, LLC, Bureaus Investment Group Portfolio No. 4, LLC, Bureaus Investment Group Portfolio No. 5, LLC, Bureaus Investment Group Portfolio No. 6, LLC, Bureaus Investment Group Portfolio No. 7, LLC, Bureaus Investment Group Portfolio No. 8, LLC, Bureaus Investment Group Portfolio No. 10, LLC, and Bureaus Investment Group Portfolio No. 11, LLC. (*See* Doc. # 189.) The second group, hereinafter "the Individual Defendants," consists of Aristotle Sangalang, the Estate of Burton A. Slotky, and Michael Slotky. (*See* Doc. # 190.) Mr. Sangalang (*see* Doc. # 197) and the Estate of Burton A. Slotky (*see* Doc. # 198) filed briefs in support of the 12(b)(2) motion (Doc. # 192). Finally, Bureaus Investment Group Portfolio No. 1, LLC (*see* Doc. # 193), the Claimless Defendants (*see* Doc. # 194), The Bureaus, Inc. (*see* Doc. # 195), Mr. Michael Slotky (*see* Doc. # 196), Mr. Sangalang (*see* Doc. # 197), and the Estate of Burton A. Slotky (*see* Doc. # 198) filed briefs in support of the 12(b)(6) motion (Doc. # 192).

Plaintiff Allie J. Stewart submitted a consolidated opposition to the motions. (Doc. # 210.) Defendants submitted reply briefs corresponding to their original briefs. (Docs. # 219, 220, 221, 222, 223, 224, 225, and 226.) Upon consideration

---

LLC, Bureaus Investment Group Portfolio No. 10, LLC, and Bureaus Investment Group Portfolio No. 11, LLC. The other subgroup consists of only Bureaus Investment Group, LLC. Because the arguments regarding dismissal apply differently to these two subgroups, they will be addressed separately. *See* Appendix A.

of the briefing, evidence, and relevant law, the 12(b)(1) motion is due to be granted in part and denied in part.  The 12(b)(6) motion is due to be granted in part and denied in part.  Because the 12(b)(1) motions dispose of the issues raised in the 12(b)(2) motions, the 12(b)(2) motions need not be decided.

## I.  JURISIDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 15 U.S.C. § 1692k(d).  Venue is uncontested.  Mr. Sangalang and the Estate of Burton A. Slotky contest personal jurisdiction.  As to the other parties, personal jurisdiction is uncontested.

## II.  STANDARDS OF REVIEW

### A.  <u>Rule 12(b)(1)</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  Defendants may attack subject-matter jurisdiction facially or factually.  The Claimless Defendants raise a facial attack.  (Doc. # 189, at 11.)  The Individual Defendants raise a factual attack.  (Doc. # 190, at 10.)

### 1.  *Facial Attack*

On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and

employs standards similar to the standard governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). Hence, the court examines the pleading and decides whether the plaintiff has alleged jurisdictional facts that are facially plausible. *See infra* Part II.C (Standard of Review for Rule 12(b)(6)).

### 2.  *Factual Attack*

A factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted). The court does not presume that the plaintiff's allegations are true, and the court may "weigh the evidence and satisfy itself" as to its jurisdiction, even when there are disputed material facts. *Id.*

"[W]hen the defendant's [factual] attack also implicates an element of the [plaintiff's] cause of action," however, the court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* "When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard" in response to a factual attack on subject matter jurisdiction. *Id.* at 1530. In accordance with the summary judgment standard, the court may not order dismissal unless the

moving party can show that there is no genuine dispute as to any material jurisdictional fact.

**B.**   **Rule 12(b)(6)**

A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion when the complaint shows on its face that the limitations period has run. *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

Otherwise, when evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III.  BACKGROUND

**A.**   **Facts**

Bureaus Investment Group Portfolio No. 1, LLC brought a debt recovery action against Ms. Stewart in Macon County Circuit Court on May 22, 2008.  In

that initial suit, Bureaus Investment Group Portfolio No. 1, LLC erroneously identified itself as "Bureaus Investment Group #1, LLC." (Doc. # 173, at 21.) The complaint also erred in representing Bureaus Investment Group #1, LLC as "a corporation licensed to do business in Alabama." (Doc. # 173, at 22.) The Macon County Circuit Court entered a consent judgment against Ms. Stewart on November 19, 2008, and Ms. Stewart began making payments to Chambless, Math & Carr, P.C., the law firm representing "Bureaus Investment Group #1, LLC." Ms. Stewart later learned, however, that Bureaus Investment Group #1, LLC was neither licensed nor registered in Alabama.[2]   She therefore requested that the consent judgment be vacated, allowing her to reanimate her defense.  In February 2010, over the plaintiff's objection, the Macon County Circuit Court granted Ms. Stewart's Rule 60(b) motion and vacated the consent judgment.  Before the court granted that relief, Ms. Stewart made eight payments to Chambless, Math & Carr.[3]

The true legal owner of Ms. Stewart's debt is an entity named Bureaus Investment Group Portfolio No. 1, LLC.  Bureaus Investment Group Portfolio No. 1, LLC, and other similarly named entities (*e.g.*, No. 2, No. 3, *etc.*, hereinafter

---

[2] Bureaus Defendants are quick to point out Ms. Stewart's representation in a previous briefing that "[a]ny decision to falsely state that the collection-plaintiff was 'a corporation licensed to do business in Alabama' . . . was made by [Attorney Mark] Chambless." (*See* Doc. # 147, at 9.)

[3] The record does not reveal the total amount Ms. Stewart paid in these eight installments. The initial representation regarding the payments can be found in the record from the state court collection action. (Doc. #1-1, at 26.)

the "Portfolio Defendants") are Illinois limited liability companies whose sole member is Bureaus Investment Group, LLC.   Bureaus Investment Group, LLC is also an Illinois limited liability company of which Mr. Michael Slotky, the late Mr. Burton Slotky, and a non-party are members.   The Portfolio Defendants and Bureaus Investment Group, LLC have no employees and are allegedly run by a corporation with employees, The Bureaus, Inc.  (Doc. # 173, at 7, 11, 13.)  The Bureaus, Inc. is or was owned or operated by three individuals named as Defendants in this action:  Mr. Michael Slotky; Mr. Burton A. Slotky; and Mr. Aristotle Sangalang (or "the Individual Defendants").[4]  The Portfolio Defendants, Bureaus Investment Group, LLC, and The Bureaus, Inc. will be referred to collectively as "the Bureaus entities."  *See* Appendix A.

The Bureaus, Inc. is the alleged "master servicer" of debts owned by the Portfolio Defendants.  (Doc. # 173, at 7, 14.)  Bureaus Investment Group, LLC and the Portfolio Defendants are "merely 'special purpose vehicles' that exist[ ] only . . . to receive and/or secure debt at the direction of The Bureaus, Inc."  (Doc. #

---

[4] Mr. Burton A. Slotky died November 5, 2014.  (Doc. # 218 (Suggestion of Death).)  His Estate has been substituted as a party, and the court attributes all of Mr. Burton Slotky's arguments to his Estate.  Mr. Burton A. Slotky owned 50% of The Bureaus, Inc. and 20% of Bureaus Investment Group, LLC.  (Doc. # 173, at 5.)  Mr. Michael Slotky owns the other 50% of The Bureaus, Inc. and 40% of Bureaus Investment Group, LLC.  (Doc. # 173, at 5.)  A non-party owns the remaining 40% of Bureaus Investment Group, LLC.  Mr. Sangalang is past vice president and current president of The Bureaus, Inc.  (Doc. # 173, at 5.)  Mr. Sangalang was vice president in 2008 when Ms. Stewart commenced the original action.

173, at 9.)[5]   The Portfolio Defendants have, through The Bureaus, Inc. and the Individual Defendants, "initiated and maintained collection lawsuits throughout Alabama against Alabama consumers . . . without first registering as [ ] foreign limited [liability] corporation[s] with the Secretary of State" and have filed suits "using false names and false designations."  (Doc. # 173, at 15-16.)

Ms. Stewart complains that the Bureaus entities violated the Fair Debt Collection Practices Act ("FDCPA") and state law by bringing collection suits in Alabama's state courts while fraudulently misrepresenting both their legal status as corporations and their licenses to do business in Alabama.  She sues on her own behalf and on behalf of other similarly situated consumers.

## B.   **Procedural History**

### 1.   *Origin of the Suit*

The instant case arises from a counterclaim Ms. Stewart filed in the underlying debt collection action in state court on March 9, 2010.  (Doc. # 1-3.) After the state court dismissed the original claims against Ms. Stewart, it realigned the parties.  Bureaus Investment Group #1, LLC, a nonexistent entity later properly identified as Bureaus Investment Group Portfolio No. 1, LLC, then removed this

---

[5] The Bureaus Defendants are in the business of buying "charged-off consumer debt (*i.e.*, consumer debts that were in default at the time they were purchased.)."  (Doc. # 210, at 16 (citing M. Slotky Dep. 13:9–14:12).)  Defendants contend that the reason for maintaining the various Portfolio Defendant entities "is to ensure that their assets (*i.e.*, their accounts) are kept separate" – a requirement of the "lenders and investors who finance the [debt] purchases."  (Doc. # 190, at 7.)

case to federal court in December 2010.   (Doc. # 1.)   In response to several motions to dismiss, and after acquiring more facts, Ms. Stewart sought and was granted leave to amend her complaint three times.

### 2.      *Third Amended Complaint*

In the governing Third Amended Complaint (Doc. # 173), Ms. Stewart sues the Portfolio Defendants, Bureaus Investment Group, LLC, The Bureaus, Inc., Michael Slotky, the Estate of Burton A. Slotky, and Aristotle Sangalang for violations of the FDCPA (Count II); "Wanton and/or Intentional Conduct" (Count III); Money Had and Received (Count IV); and Negligent, Reckless and/or Wanton Training, Monitoring and/or Supervision (Count V).   Ms. Stewart asserts that Michael Slotky, Aristotle Sangalang, and the Bureaus, Inc. can be held liable as promoters on behalf of legally non-existent Bureaus entities (Counts VI and VII). She claims that Michael Slotky and Aristotle Sangalang can be held liable as "Central Figures," and that the Bureaus, Inc. is vicariously liable for their conduct (Counts VIII and IX).

Ms. Stewart further contends that the corporate veil may be pierced, and personal liability may be imposed on the Individual Defendants, because the Bureaus entities are or were the alter egos of Michael Slotky, Burton Slotky, and Aristotle Sangalang (Count X) (Doc. # 173, at 57-58).   She claims that The Bureaus, Inc. and the Individual Defendants "exercise complete control and

domination of the finances, policy[,] and business practices of the Bureaus Investment Group, LLC, Portfolio Defendants, and/or The Bureaus, Inc. to the extent that [those Bureaus entities] have no separate will, mind[,] or existence of their own." (Doc. # 173, at 58.)  She supports her alter ego theory by alleging that: (1) the Slotkys jointly own 100% of The Bureaus, Inc. and 60% of Bureaus Investment Group, LLC; (2) The Bureaus, Inc. is the only capitalized Bureaus entity; (3) Bureaus Investment Group, LLC and the Portfolio Defendants only have capital that is "funneled" to them from and at the direction of The Bureaus, Inc; (4) only the Bureaus, Inc. has (or ever has had) any employees; and (5) The Bureaus, Inc. makes all of the day-to-day business decisions for Bureaus Investment Group, LLC and the Portfolio Defendants, including the purchase and collection of debt.

### 3.   *Previous Opinions and Orders Relevant to the Instant Motions*

In the court's September 26, 2013 opinion and order, Defendant John Hedges was dismissed pursuant to Federal Rule of Civil Procedure 4(m) for Ms. Stewart's failure to timely serve him with process.  (Doc. # 125.)  Ms. Stewart did not seek the court's leave to join him in the Third Amended Complaint.

In two prior opinions and orders, the court denied motions by certain Bureaus entities to dismiss claims against them on the basis of Ms. Stewart's lack of Article III standing.  (*See* Docs. # 102, 157.)  These motions relied on the theory that, because Ms. Stewart dealt solely with Bureaus Investment Group Portfolio

No. 1, LLC, she lacks standing to sue other entities.  (*See* Doc. # 140 (Motion to Dismiss Certain Defendants Under Rule 12(h)(3) for Lack of Subject Matter Jurisdiction).)  In its November 5, 2012 order, the court found that "it [was] not clear . . . which Defendants actually had contact with Ms. Stewart."  (Doc. # 102. at 3.)

In its June 2, 2014 opinion and order, the court found that Ms. Stewart's class allegations enabled her to sue all existent Bureaus Portfolio entities because of (1) the concerted scheme by the Bureaus entities and their owners to unlawfully sue numerous debtors in Alabama state courts and (2) the juridical relationship between Bureaus Investment Group Portfolio No. 1, LLC and all other Portfolio Defendants (*i.e.*, through Bureaus Investment Group, LLC as their common single member-owner and through Bureaus, Inc. as the master servicer of debts they owned).  (Doc. # 157, at 23–25.)  The court applied this "juridical link" doctrine *sua sponte*.[6]

---

[6] The juridical link doctrine derives from *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973), where the United States Court of Appeals for the Ninth Circuit explained:

[A] plaintiff who has no cause of action against the defendant cannot "fairly and adequately protect the interests" of those who do have such causes of action.  This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect.  *Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury.  Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.*

Additionally, in its June 2, 2014 opinion and order, the court stated:

> Based on the allegations in the proposed Third Amended Complaint, Plaintiff has standing to sue Michael Slotky, irrespective of the success of a future motion for class certification and regardless of his deposition testimony denying responsibility for the debt collection activity of the business entities he owns and allegedly controls.

(Doc. # 157, at 25.)  Hence, the court denied Mr. Michael Slotky's previous motion to be dismissed as a defendant.

The Portfolio Defendants, Bureaus Investment Group, LLC, and Mr. Michael Slotky filed a motion to certify the court's opinion and order for interlocutory review, but the motion was denied without prejudice in light of Defendants' opportunity to raise their objections anew in the instant motions to dismiss the Third Amended Complaint pursuant to Rule 12(b)(1).  (*See* Doc.

---

489 F.2d 461, 466 (9th Cir. 1973) (emphasis added).  These exceptional situations represent what has become known as the juridical link doctrine.  *6803 Boulevard E., LLC v. DIRECTV, LLC*, 17 F. Supp. 3d 427, 430 (D.N.J. 2014).  The Eleventh Circuit has acknowledged the existence of the juridical link doctrine, but it has never definitively accepted or rejected it.  There is controversy as to whether the doctrine conflicts with the requirement that a class representative have Article III standing as to every defendant.

> Decisions adopting the juridical link doctrine in *La Mar*'s wake have generally dealt with the Article III standing issue in one of two ways – or ignored it altogether.  First, a number of decisions have merged the issue with the Rule 23 analysis, concluding that a plaintiff entitled under the juridical link doctrine to represent a class against non-injurious defendants has Article III standing to sue the non-injurious defendants.  Other decisions have maintained the distinction between class certification and Article III standing, but have held that a court should decide class certification first and treat the class as a whole as the relevant entity for Article III purposes.

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 63 (2d Cir. 2012).

# 232.)  The propriety of the juridical link doctrine as a justification for the joinder of certain Bureaus defendants is the primary issue in the instant Rule 12(b)(1) motion to dismiss.

## IV.  DISCUSSION

Before the court are numerous motions to dismiss brought pursuant to Rule 12, which will be discussed in the following order: the Claimless Defendants' 12(b)(1) motion (Part IV.A); the Individual Defendants' 12(b)(1) motion (Part IV.B); Bureaus Investment Group Portfolio No. 1, LLC's 12(b)(6) motion (Part IV.C); Bureaus Investment Group, LLC's 12(b)(6) motion (Part IV.D); and The Bureaus, Inc.'s 12(b)(6) motion (Part IV.E).

## A.  <u>Claimless Defendants' 12(b)(1) Motion</u>

In their 12(b)(1) motion to dismiss, the Claimless Defendants argue that the court lacks subject-matter jurisdiction to decide the claims against them.  More specifically, they contend that Ms. Stewart lacks standing to sue.  Article III, Section 2 of the Constitution empowers federal courts to hear only "cases" or "controversies."  U.S. Const. Art. III § 2.  The concept of standing emerged from this case or controversy requirement.  In order to establish that she has standing to bring this action against the Claimless Defendants, Ms. Stewart must show (1) that she suffered an actual injury, (2) that the conduct of the Claimless Defendants caused her injury, and (3) that a favorable decision on her claim will redress her

injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The motion to dismiss is due to be granted in part and denied in part.

### 1.   *Claimless Portfolio Defendants*

The motion is due to be granted with respect to the Bureaus Investment Group Portfolio No. 2, LLC, Bureaus Investment Group Portfolio No. 3, LLC, Bureaus Investment Group Portfolio No. 4, LLC, Bureaus Investment Group Portfolio No. 5, LLC, Bureaus Investment Group Portfolio No. 6, LLC, Bureaus Investment Group Portfolio No. 7, LLC, Bureaus Investment Group Portfolio No. 8, LLC, Bureaus Investment Group Portfolio No. 10, LLC, and Bureaus Investment Group Portfolio No. 11, LLC (hereinafter the "Claimless Portfolio Defendants").  First, Ms. Stewart fails to allege facts sufficient to support the causation element of the standing inquiry.  Second, the juridical link doctrine is inapposite with respect to the threshold issue of standing as to these defendants.

### a.   **Ms. Stewart Fails to Sufficiently Plead Causation**

With respect to the Claimless Portfolio Defendants, Ms. Stewart fails to allege sufficient facts to support her standing to sue.  Ms. Stewart does not allege that the Claimless Portfolio Defendants had any involvement in the debt collection suit that gave rise to this litigation.  As the Claimless Defendants note, Ms. Stewart has not made any allegation indicating that the Claimless Portfolio Defendants are liable for her injuries.  (Doc. # 189, at 13.)  Since Ms. Stewart fails to allege that

any of the Claimless Portfolio Defendants had contact with her (*See* Doc. # 189, at 6), she fails to sufficiently allege the element of causation to support her standing to sue.

### b.    The Juridical Link Doctrine is Inapposite

In an attempt to rectify her failure to adequately plead the requisite causation, Ms. Stewart urges the court to find that she has standing by operation of the juridical link doctrine.  As discussed in note 6, *supra*, the juridical link doctrine derives from *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973).  In the class action context, a putative class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A class representative encounters a *La Mar* problem where she does not have an individual cause of action against all of the named defendants.  489 F.2d at 466.  In such a case, the class representative does not meet the adequate representation prerequisite embodied in Rule 23(a)(4).  *Id.*  The juridical link doctrine recognizes an exception to this rule where the named defendants are "related in a manner that suggests a single resolution of the dispute would be expeditious."  *Id.*  In relation to Ms. Stewart's claims against the Claimless Portfolio Defendants, the juridical link doctrine is inapposite.

Though a sufficient juridical relationship among defendants may suffice to overcome issues of adequate representation for purposes of class certification, such

a relationship has no bearing on the issue of Article III standing. Under the Rules Enabling Act, a Federal Rule of Civil Procedure cannot enlarge a substantive right. 28 U.S.C. § 2072(b). A plaintiff's invocation of Rule 23, therefore, cannot augment the jurisdiction of a federal court where the plaintiff otherwise cannot establish her standing to sue. *See Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973) ("A plaintiff may not use the procedural device of a class action to bootstrap himself into the standing he lacks under the express terms of substantive law."); *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) ("[S]tanding cannot be acquired through the back door of a class action."). The juridical link doctrine recognized in *La Mar* should be confined to analysis of issues arising under Rule 23. *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 171 (D. Mass. 2003).[7]

The cases on which Ms. Stewart relies for support are unavailing. She refers to *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158 (D. Md. 2008), a case in which the court permitted the plaintiffs in a class action to include class members insured by two plans with whom the plaintiffs had no "contract, communication, or

---

[7] The Claimless Defendants refer to other decisions reaching the same conclusions as those reached in *Eaton Vance*. These include *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 66 (2d Cir. 2012) (holding that Article III prohibited the plaintiff's joinder of defendants that did not cause the plaintiff's injury); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 119 n.19 (D. Mass. 2006) (finding that the juridical link doctrine should only be applied when evaluating certification under Rule 23); *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *6-*7 (N.D. Cal. Oct. 24, 2006) (finding that the juridical link doctrine has no application at the pleading stage).

interaction." *Id.* at 166.   The *Wu* decision did not arise, however, from a defendant's motion to dismiss for lack of standing.   Rather, it was a ruling on a motion to modify the class definition.   The court found that the plaintiffs could "represent a class of individuals that are members of different plans when it is alleged that the plans are administered by the same defendant and the wrongful conduct or policy applies uniformly to all of those plans." *Id.* at 167. Significantly, the plaintiffs did not name as defendants the insurance plans with which they lacked a relationship.

Ms. Stewart also relies on *Cassese v. Wash. Mut., Inc.*, 262 F.R.D. 179 (E.D.N.Y. 2009).   In that case, the plaintiffs asserted claims not only against Washington Mutual Bank, the entity that financed their mortgages, but also against Washington Mutual, Inc., the parent company, and other related entities.   The *Cassese* court rejected the plaintiffs' argument that they had standing to sue the related entities by operation of the juridical link doctrine.   But it did find that plaintiffs could join Washington Mutual, Inc. as a defendant in the class action because of its "direct control" over Washington Mutual Bank.   *Id.* at 184–85. *Caseese* is unremarkable in that it offers Ms. Stewart no support on the issue of whether she has standing to sue the Claimless Portfolio Defendants.   None of those entities is alleged to be a corporate parent of Bureaus Investment Group Portfolio No. 1, LLC.

The court is not bound by its interlocutory order applying the juridical link doctrine, *Stewart v. Bureaus Inv. Grp. No. 1, LLC*, 24 F. Supp. 3d 1142 (M.D. Ala. 2014) (Doc. # 157), and, upon full briefing on the doctrine, that order is vacated to the extent that it allows, by virtue of class allegations, the joinder of defendants with whom the plaintiff alleged no dealings. *See United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984) ("[A] court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court."). It is also unnecessary to address the Claimless Defendants' alternative motion for dismissal under Rule 12(b)(6) as it pertains to the Claimless Portfolio Defendants. (*See* Doc. # 194 (Brief 4 of 8).)

### 2. *Bureaus Investment Group, LLC*

The 12(b)(1) motion to dismiss is due to be denied, however, with respect to Bureaus Investment Group, LLC. The allegations in the complaint are sufficient to adequately plead Ms. Stewart's standing to sue that entity. Unlike the Claimless Portfolio Defendants, Bureaus Investment Group, LLC can be linked to the conduct that caused Ms. Stewart's alleged injury. In the Third Amended Complaint, Ms. Stewart alleges that Bureaus Investment Group, LLC is the sole member of each of the Portfolio Defendants, including Bureaus Investment Group Portfolio No. 1, LLC. (Doc. # 173, at 3.) She further alleges that Bureaus Investment Group, LLC attempted to collect debts from her through Bureaus

Investment Group Portfolio No. 1, LLC.  (Doc. # 173, at 3.)  More specifically, she alleges that Bureaus Investment Group, LLC funneled capital contributions to Bureaus Investment Group Portfolio No. 1, allowing it to purchase the debt and initiate the collection action that gave rise to the instant controversy.  (Doc. # 173, at 15.)

The Claimless Defendants argue that, with respect to Bureaus Investment Group, LLC, Ms. Stewart merely alleges that it is an instrumentality of the other defendants.  (Doc. # 189, at 8.)  They further contend that "no allegation is made that Bureaus Investment Group, LLC took any action or caused Ms. Stewart any injury."  (Doc. # 189, at 8.)  The above-referenced allegations from belie this assertion.  They at least, for the purposes of this facial attack, allow the inference of a fairly traceable connection between Ms. Stewart's injury and the conduct of Bureaus Investment Group, LLC.  Even indirect causation is sufficient to establish standing.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).  Relief under the civil damages provision of the FDCPA would redress Ms. Stewart's injuries.  Ms. Stewart has alleged a sufficient factual basis to support the elements of causation and redressability with respect to Bureaus Investment Group, LLC.

**3.** *Summary*

All claims against the Claimless Portfolio Defendants are due to be dismissed.  This includes Counts II, III, IV, and V as they relate to the Claimless

Portfolio Defendants.   Since Ms. Stewart does have standing to sue Bureaus Investment Group, LLC, the 12(b)(6) motion as to claims against it will be addressed.

**B.**   <u>**Individual Defendants' 12(b)(1) Motion**</u>

In support of their Rule 12(b)(1) motion to dismiss all claims against them, the Individual Defendants argue that Ms. Stewart does not adequately plead a sufficient causal nexus between their conduct and her injuries to satisfy the requirements for Article III standing.   The motion is due to be granted.   First, the jurisdictional issues raised in this motion are not inextricably intertwined with the merits of the FDCPA claims.   Second, Ms. Stewart fails to allege facts sufficient to establish that the Individual Defendants personally caused the representations at issue.   Third, Ms. Stewart fails to allege sufficient facts to support the alter ego theory of liability.

**1.**   ***The Jurisdictional Issues Are Not Inextricably Intertwined with the Merits of the Case***

The Individual Defendants style this 12(b)(1) motion as a factual attack.   In such an attack, the moving party "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings."   *Lawrence*, 919 F.2d at 1529.   But where the factual attack also implicates an element of the plaintiff's cause of action, the court should apply a Rule 56 summary judgment standard in response to the

motion. *Id* at 1530. This sort of review is only appropriate where the jurisdictional basis is "inextricably intertwined with the merits." *Id.* A challenge is inextricably intertwined with the merits when "[t]he pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the . . . claim." *Id.* at 1529. Because the standing issue raised in this 12(b)(1) motion is not inextricably intertwined with the merits, the Rule 56 standard does not apply.

Article III standing, which forms the basis for the instant 12(b)(1) motion, is a threshold inquiry. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). To proceed with this action against the Individual Defendants, Ms. Stewart must show at the outset that she has suffered an actual injury, that her injury is fairly traceable to the conduct of the Individual Defendants, and that a favorable ruling will redress her injury. *See id.* at 103. In support of their motion, the Individual Defendants contend that Ms. Stewart cannot satisfy the causation prong of the standing analysis. The Rule 56 standard only applies, therefore, if the issue of causation for standing purposes is inextricably intertwined with the merits of the Ms. Stewart's claims.

According to Ms. Stewart, who relies on *Gonzalez v. United States*, 284 F.3d 281 (1st Cir. 2002), the jurisdictional issue of causation is intertwined with the merits of the case because the claims arise under the FDCPA, a federal statute. (Doc. # 210, at 32.) This argument rests on a mischaracterization of the holding in

*Gonzalez*.  In that case, the First Circuit did hold that "a jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims of the case."  *Gonzalez*, 284 F.3d at 287.  The true import of that statement, however, is not as Ms. Stewart would have it.  The fact that a claim invokes federal question jurisdiction does not, without more, indicate that the jurisdictional question is inextricably intertwined with the merits of the case.  In *Gonzalez*, the First Circuit went on to explain that "while [a federal statute] provides the basis for the cause of action here, it is clear that the facts relevant to the determination of subject matter jurisdiction do not go directly to the merits of the plaintiff's claim."  *Id.*  The *Gonzalez* court then held that a jurisdictional challenge based on the statute of limitations was not inextricably intertwined with the merits of the claim.  *Id.*

Much like the statute of limitations issue in *Gonzalez*, the standing issue raised in this motion does not go directly to the merits of Ms. Stewart's claims.  The scenario at bar implicates two distinct questions of causation.  To make out an FDCPA claim, Ms. Stewart must show that the representations at issue caused her an injury such that she is entitled to damages under 15 U.S.C. § 1692k.  To satisfy the standing requirements, however, Ms. Stewart must show that the Individual Defendants themselves caused the representations to be made.  An answer to the former question does not provide an answer to the latter.  As a result, there is no

singular inquiry.  That is, a resolution of the issue of causation for purposes of standing will not "resolve both the question of subject matter jurisdiction and a necessary element of the . . . claim."  *See Lawrence*, 919 F.3d at 1529.  The Rule 56 standard does not apply to this motion, and the remaining arguments raised in this factual 12(b)(1) attack will be addressed.

##### 2. *Ms. Stewart Fails to Show that the Individual Defendants Caused the Representations at Issue*

At the heart of the Individual Defendants' motion is their contention that they did not in fact cause the representations at issue in this litigation.  For the sake of clarity, it bears repeating that those representations are as follows:  (1) that the owner of the debt was named Bureaus Investment Group #1, LLC, and (2) that this entity was licensed to do business in the state of Alabama.  The Individual Defendants identify the parties truly responsible for the representations and offer evidence establishing that they did not cause the representations to be made.  Since Ms. Stewart offers no evidence to rebut these contentions, she fails to establish causation by virtue of the Individual Defendants' personal actions.

First, the Individual Defendants identify the parties responsible for the representations that gave rise to this suit.  They attribute these representations to Mark Chambless and John Hedges.  Mr. Chambless, the attorney representing the Bureaus entity in the debt collection suit, allegedly provided an erroneous name for

the entity and misrepresented its licensed status.[8]   Mr. Hedges, a former legal manager for The Bureaus, Inc., swore to the "Authorization and Verification" form, which initiated the debt collection action against Ms. Stewart.  (Doc. # 190, at 9-10 (citing Doc. # 147, at 9, Doc. # 190-1, at 11).)

Second, the Individual Defendants offer evidence establishing that they had no involvement in making the representations at issue.  Mr. Burton Slotky assumed only a "limited" advisory role in the operations of The Bureaus, Inc.  (Decl. of Burton Slotky, at ¶ 5 (Doc. # 190-1).)   He further declared that he had no involvement in the lawsuit or other debt collection activities regarding Ms. Stewart's debt.  (Decl. of Burton Slotky, at ¶¶ 7-10 (Doc. # 190-1).)  Mr. Michael Slotky was an officer of The Bureaus, Inc., but he declared that he had no involvement in the debt collection action.  (Decl. of Michael Slotky, at ¶¶ 2-8 (Doc. # 190-1).)  Mr. Sanglang was also an officer of The Bureaus, Inc., but he similarly avers that he played no role in the debt collection action.  (Decl. of Aristotle Sangalang, at ¶¶ 2-10 (Doc. # 190-1).)

Finally, Ms. Stewart offers no evidence to rebut these declarations.  Though she refers generally to depositions, verified pleadings, and court documents, she points to no specific evidence supporting her position.  Instead of coming forth

---

[8] In a previous briefing concerning the addition of Mark Chambless and his law firm as defendants, Ms. Stewart herself represented that "[a]ny decision to falsely state that the collection-plaintiff was 'a corporation licensed to do business in Alabama' . . . was made by Chambless. . . ."  (Doc. # 147, at 9.)

with the requisite rebuttal evidence to defend this factual attack, Ms. Stewart makes arguments about the nature of her standing burden. Though she is correct that indirect causation is sufficient to establish standing,[9] her recitation of the law is insufficient to rebut the evidence put forth by the Individual Defendants. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."). Accordingly, Ms. Stewart fails to establish that the Individual Defendants, by their personal actions, caused the representations to be made.

### 3.     *Ms. Stewart Fails to Allege Sufficient Facts Supporting an Alter Ego Theory of Liability*

Because Ms. Stewart fails to establish standing based on the personal conduct of the Individual Defendants, her only hope in surviving this 12(b)(1) motion is the alter ego theory. That theory is part of the broader doctrine of piercing the corporate veil,[10] a remedial doctrine that allows litigants to impose personal liability where the corporate form would otherwise deny it. *See* 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations §

---

[9] *See Resnick*, 693 F.3d at 1324.

[10] The doctrine of piercing the corporate veil applies with equal force to impose liability on the owners of limited liability companies. *See Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 406–07 (Ala. 2013) (applying the veil piercing doctrine to determine whether a limited liability company was the alter ego of its owners).

41 (2015).  Under the alter ego theory, a court will pierce the corporate veil where an individual and the corporation are so unified that the corporation retains no separate identity.  *Id.* at § 41.10.   To establish the propriety of piercing the corporate veil by virtue of the alter ego theory, the proponent must show (1) that the dominant party exercises complete control of the corporation, (2) that the dominant party misused that control, and (3) that the misuse of control caused the harm complained of.  *Messick v. Moring*, 514 So. 2d 892, 894–95 (Ala. 1987). While fraud or other illegal conduct is sufficient to constitute misuse, it is by no means a *sine qua non* of the alter ego inquiry.  *Id.*  The court may presume misuse of control where necessary to prevent injustice.  *Id.*

As indicated by the relevance of the justice principle, the authority to pierce the corporate veil derives from the court's equitable discretion.  *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 929 (Ala. 2012).   The doctrine is also remedial in nature, providing no independent cause of action.   *Ex parte Thorn*, 788 So. 2d 140, 145 (Ala. 2000).  Therefore, the alter ego theory allows a claimant to impose liability on an individual where the cause of action would otherwise only reach the corporation.  *See id.*  In the context of this 12(b)(1) standing challenge, the theory defies tidy application.   As discussed in the findings above, Ms. Stewart has standing to sue Bureaus Investment Group, LLC.  And the parties do not dispute that Ms. Stewart has standing to sue The Bureaus, Inc. and Bureaus Investment

Group Portfolio No. 1, LLC.  If these entities are in fact the mere instrumentalities of one or more of the Individual Defendants, then Ms. Stewart has standing to sue the individuals pulling the corporate strings.  That is, since piercing the corporate veil allows a court to disregard the corporate personality, standing to sue can be ascribed to the Individual Defendants through standing to sue the certain Bureaus Entities.

Inartful briefing on the subject obfuscates the relevant veils due to be pierced.[11]  For the sake of clarity, a little unpacking is necessary.  As to both Slotkys, Ms. Stewart seeks to pierce the corporate veils of both Bureaus Investment Group, LLC and The Bureaus, Inc.  As for Mr. Sangalang, the only relevant veil to be pierced is that of The Bureaus, Inc.  The application of the alter

---

[11] For instance, Ms. Stewart argues that "the corporate veil between Bureaus Investment Group Portfolio No. 1, LLC *and all other Defendants* should be pierced."  (Doc. # 210, at 55 (emphasis added).)  Ms. Stewart pleaded that the Portfolio Defendants and Bureaus Investment Group, LLC are alter egos of The Bureaus, Inc.  (Doc. # 173, at 58.)  The Individual Defendants dispute how veil piercing could occur when The Bureaus, Inc. is not a parent company of Bureaus Investment Group, LLC or any of the Portfolio Defendants.  (Doc. # 220, at 21 n.6.)  They further explain that "[t]he only inter-entity veil even potentially relevant. . . is the veil between Bureaus Investment Group Portfolio No. 1, LLC[,] and its sole member Bureaus Investment Group, LLC.  But Ms. Stewart did not allege that the two are alter egos."  (Doc. # 220, at 21 n.6.)

In her arguments regarding the control and domination elements of an alter ego claim, Ms. Stewart discusses at length the factors to be assessed when a claimant attacks the corporate veil between a parent company and its subsidiary.  (Doc. # 210, at 43–45 (citing *Duff v. S. Ry. Co.*, 496 So. 2d 760 (Ala. 1986)).)  Because the veil piercing argument at issue involves individual defendants rather than a parent corporation, this lengthy discussion is misplaced.  What is relevant to this challenge is the alleged control or domination the Individual Defendants exercise over the relevant entities.  Whether The Bureaus, Inc. exercised control over Bureaus Investment Group, LLC or Bureaus Investment Group No. 1, LLC does not dispose of the question whether the Individual Defendants exercised control over each of those entities.

ego theory must and will be applied to each Individual Defendant.  Importantly, as it applies to issues of the alter ego theory, the Individual Defendants characterize their challenge as merely facial.  (Doc. # 220, at 16.)  The inquiry is thus whether Ms. Stewart made sufficient allegations in the Third Amended Complaint to support the application of the doctrine.

With respect to Mr. Burton Slotky, the motion to dismiss is due to be granted.  Beyond numerous conclusory allegations, Ms. Stewart pleads few facts suggesting that Mr. Burton Slotky exercised complete control over The Bureaus, Inc. or Bureaus Investment Group, LLC.  The Third Amended Complaint alleges that he was a part owner of both entities.  (Doc. # 173, at 58.)  It further alleges that he served in an advisory capacity for the Bureaus, Inc.  (Doc. # 173, at 49.)  Ownership and advisory management alone are insufficient to constitute complete control and domination such that The Bureaus, Inc. or Bureaus Investment Group, LLC "had no separate mind, will, or existence of its own."  *See First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334-35 (Ala. 1991).  Since Ms. Stewart's pleading fails to include facts sufficient to support the control element of her alter ego claim with respect to Mr. Burton Slotky, it is unnecessary to discuss the remaining elements.

The motion is also due to be granted as to Mr. Michael Slotky.  As with Mr. Burton Slotky, Ms. Stewart alleges that Michael is a part owner of The Bureaus,

Inc. and Bureaus Investment Group, LLC.  (Doc. # 173, at 58.)  She also alleges that Michael served as President and CEO of The Bureaus, Inc.  (Doc. # 173, at 16.)  But beyond these facts, Ms. Stewart makes no allegations indicating the sort of extraordinary control necessary to pierce the corporate veil.  *See Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1273 (Ala. 2001) (setting out the "extraordinary circumstances" under which a court should disregard the separate corporate personality).  Without allegations suggesting domination, Michael's ownership alone is insufficient to pierce the corporate veil.  *Messick*, 514 So. 2d at 895 ("The mere fact that a party owns a majority or all of the corporation's stock does not, of itself, destroy the corporate identity.").  While it is true that Michael had some control over corporate activities by virtue of his role as President and CEO, the pleadings make it clear that he was not the only individual taking part in the business of the Bureaus Entities.  Mr. Sangalang also took part as a Vice President and President of The Bureaus, Inc.  (Doc. # 173, at 16.)  Taking the Third Amended Complaint as a whole, Ms. Stewart's pleading is insufficient to plausibly allege the control element of an alter ego claim.  Since the pleadings are insufficient to plausibly allege complete control and domination, there is no need to address the remaining elements.

As it applies to Mr. Sangalang, the motion is similarly due to be granted. Ms. Stewart alleges that Mr. Sangalang was a former Vice President and is the

current President of The Bureaus, Inc.  (Doc. # 173, at 16.)  Ms. Stewart does not

allege that Mr. Sangalang holds any ownership interest in the corporation.  Though

it is unclear whether ownership is required to pierce the corporate veil under

Alabama law,[12] there is authority suggesting that a mere manager cannot be in an

alter ego relationship with the corporation.  *See, e.g., Bollore S.A. v. Imp.*

*Warehouse, Inc.*, 448 F.3d 317, 236 (5th Cir. 2006).  Without deciding the

significance of ownership in the alter ego calculus, it is clear that the bare

allegations in the Third Amended Complaint are insufficient to even suggest

complete control or domination on the part of Mr. Sangalang.  As with the

allegations made with respect to the Slotkys, the allegations regarding Mr.

Sangalang do not indicate the extraordinary level of control necessary for the

application of the alter ego theory.  Since Ms. Stewart fails to plausibly allege the

control element, the remaining elements need not be addressed.

In addition, the liability of the Individual Defendants under the doctrine of

piercing the corporate veil depends upon the liability of the entities of which they

are a part.  For the reasons that will follow in the 12(b)(6) analyses, Ms. Stewart's

---

[12] In *Heisz*, the Alabama Supreme Court considered whether ownership is a necessary element of a claim for piercing the corporate veil. 93 So. 3d at 930.  Instead of deciding the ownership issue, however, the court disposed of the alter ego theory based on the alternative element of misuse.  According to the Individual Defendants, the *Heisz* court "indicated that [the Alabama Supreme Court] had never pierced a veil to hold a non-owner personally liable for a company's debts."  (Doc. # 220, at 19 n.8 (citing *Heisz*, 93 So. 3d at 930 n.7).)  The *Heisz* court made no such indication, but Mr. Sangalang's ownership *vel non* ultimately is not dispositive of this motion.

pleading is insufficient to state a claim with respect to Bureaus Investment Group Portfolio No.1, LLC, Bureaus Investment Group, LLC, and The Bureaus, Inc.  If Ms. Stewart's claims are due to be dismissed as to those defendants, then her arguments in favor of piercing the corporate veil are unavailing.

### 4.    *Summary*

Ms. Stewart lacks standing to sue the Individual Defendants.  Accordingly, her 12(b)(1) motion to dismiss is granted as to both Slotkys and Mr. Sangalang. The claims against some or all of them, as they appear in Counts II, III, IV, V, VI, VIII, and X, are dismissed.  In light of this finding, it is unnecessary to reach the Individual Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction. There is also no need to decide the Individual Defendants' 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

### C.    <u>Bureaus Investment Group Portfolio No. 1, LLC's Rule 12(b)(6) Motion</u>

In this 12(b)(6) motion, Bureaus Investment Group Portfolio No. 1, LLC seeks dismissal of all claims raised against it.  The claims can be generally categorized as those arising under the FDCPA and those arising under state law.

### 1.    *Claims Arising Under the FDCPA*

The Third Amended Complaint asserts several claims arising under the FDCPA.  Since Bureaus Investment Group Portfolio No. 1, LLC is a debt collector covered by the statute, the substance of each claim must be considered.

### a.   Bureaus Investment Group Portfolio No. 1, LLC Is a "Debt Collector" Under the FDCPA

Congress enacted the FDCPA with the purpose of eliminating "abusive debt collection practices." 15 U.S.C. § 1692(e). Importantly, the scope of the statute is limited in that it only reaches actions taken by "debt collectors." *Id.* The threshold inquiry in any FDCPA analysis, therefore, is whether the defendant qualifies as a debt collector within the meaning of the statute. *See Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 582 (11th Cir. 2012). Under the statutory definition, a debt collector is any person who (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). For the two reasons explicated below, Ms. Stewart sufficiently alleges facts indicating that Bureaus Investment Group Portfolio No. 1, LLC is a debt collector under the FDCPA.

First, Ms. Stewart's allegations are sufficient to allow the reasonable inference that Bureaus Investment Group Portfolio No. 1, LLC is engaged in a business for which the principal purpose is the collection of debts. In the Third Amended Complaint, Ms. Stewart alleges that Bureaus Investment Group Portfolio No. 1, LLC exists as a special purpose vehicle with the purpose of collecting debt.

(Doc. # 173, at 14.)   She further alleges, more specifically, that all Portfolio Defendants routinely purchase or receive ownership of debts like Ms. Stewart's. (Doc. # 173, at 14-15.)   Finally, she alleges that Bureaus Investment Group Portfolio No. 1, after taking ownership of Ms. Stewart's debt, filed the underlying lawsuit to collect the debt.   (Doc. # 173, at 21.)   The reasonable inference to be drawn from these allegations is that Bureaus Investment Group Portfolio No. 1, LLC exists for the purpose of acquiring and collecting debts.   Accordingly, Ms. Stewart plausibly alleges that Bureaus Investment Group Portfolio No. 1, LLC is "debt collector" subject to the various provisions of the FDCPA.

Second, the allegations are sufficient to allow the reasonable inference that Bureaus Investment Group Portfolio No. 1, LLC is not shielded from liability by virtue of its purported status as a creditor under the FDCPA.[13]   It is true that Bureaus Investment Group Portfolio No. 1, LLC owned Ms. Stewart's debt when it filed the underlying collection action, but this fact alone does not determine whether the statute reaches its conduct.   The FDCPA allows for two scenarios under which the owner of a debt is still subject to the provisions of the statute.   *See*

---

[13] Subject to the exceptions discussed here, the FDCPA does not cover the actions of creditors.   *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors[.]").   Though an entity's status as a creditor establishes that it is not a debt collector for purposes of FDCPA liability, the inverse is not true.   That is, a non-creditor is only a debt collector if it meets the statutory definition set out in § 1692a(6).   *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015).

*Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) (explaining that the person to whom a debt is owed falls within the general definition of creditor, but further interpreting the exceptions under which the person to whom a debt is owed does not constitute a "creditor").

The statutory definition of creditor does not include an entity that "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of debt for another." 15 U.S.C. § 1692a(4). Ms. Stewart alleges that the Portfolio Defendants take ownership of debt through the operations of The Bureaus, Inc. (Doc. # 173, at 14–15.) Sometimes the Portfolio Defendants purchase the debts with funds advanced by The Bureaus, Inc. or Bureaus Investment Group, LLC. (Doc. # 173, at 14–15.) Otherwise, they take ownership by direct transfer from one of those entities. (Doc. # 173, at 14–15.) Ms. Stewart clearly alleges that the Portfolio Defendants act "at the direction and for the benefit of The Bureaus, Inc." (Doc. # 173, at 16.) These allegations allow the reasonable inference that Bureaus Investment Group Portfolio No. 1, LLC took ownership of Ms. Stewart's delinquent account for the purpose of allowing The Bureaus, Inc. and/or Bureaus Investment Group, LLC to collect the proceeds of that account.

The owner of a debt is also not immune from liability as a creditor where it "uses any name other than its own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Here, Ms.

Stewart clearly alleges that Bureaus Investment Group Portfolio No. 1, LLC filed suit under the name "Bureaus Investment Group #1, LLC."  (Doc. # 173, at 21.)  The parties make various arguments regarding the extent to which Ms. Stewart or any other consumer might be misled by such a misstatement.  Because it is clear that the assignee exception applies, the issue need not be decided.

Because Ms. Stewart plausibly alleges that Bureaus Investment Group Portfolio No. 1, LLC is in fact a debt collector within the meaning of the FDCPA, the substance of her claims will be considered.  Count II of the Third Amended Complaint asserts claims pursuant to 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692j.

### b.      Harassment or Abuse Under § 1692d

The allegations in the Third Amended Complaint are insufficient to state a claim for harassment or abuse under § 1692d.   Under that provision, a debt collector is prohibited from engaging in conduct that will harass, oppress, or abuse a debtor.   The statute enumerates examples of conduct constituting a violation, including (1) threats of violence, (2) use of obscene language, (3) publication of debtor lists, (4) advertising the sale of a debt to coerce payment, (5) repeated phone calls, and (6) anonymous phone calls.   15 U.S.C. § 1692d.   Bureaus Investment Group Portfolio No. 1, LLC's filing of the collection lawsuit is the only conduct that might be actionable under this provision.   But merely filing a collection action is not the sort of conduct that rises to the level of harassment, oppression, or abuse.

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). As it relates to a claim of harassment or abuse under § 1692d, Bureaus Investment Group Portfolio No. 1, LLC's motion to dismiss is due to be granted.

### c.   False or Misleading Representations Under § 1692e

As they apply to a claim for false or misleading representations under § 1692e, the allegations in the Third Amended Complaint are also insufficient to survive this motion to dismiss. The general purpose of § 1692e is to ensure the veracity of debt collectors' communications. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). Without limiting the general application of the provision, § 1692e provides a list of conduct that constitutes a violation. The Third Amended Complaint alleges violations under §§ 1692e(1), 1692e(2)(A), 1692e(9), 1692e(10), and 1692e(14). The appropriate legal standard will first be explained. Ms. Stewart's claims under each provision of § 1692e will then be discussed in turn.

### i.   Appropriate Legal Standard

To establish that a communication runs afoul of § 1692e, a claimant must show that the communication would be misleading to the "least sophisticated consumer." *LeBlanc*, 601 F.3d at 1193–94. The Eleventh Circuit adopted this approach from cases interpreting the Federal Trade Commission Act. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985). Under the least

sophisticated consumer standard, courts should determine whether the false representation would mislead the consumer possessing a "rudimentary amount of information about the world." *LeBlanc*, 601 F.3d at 1194.[14]

The parties dispute the relevance of materiality to the § 1692e inquiry. Upon examination of the language of the least sophisticated consumer standard generally, it appears that technical falsehoods are insufficient to give rise to liability under § 1692e.  Many circuit courts agree with this general reading, holding that only material misrepresentations are relevant under FDCPA.  *See, e.g., Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) ("A debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material."). Additionally, several lower courts within the Eleventh Circuit apply a materiality limitation to their analysis of § 1692e claims.  *See, e.g., Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1332 (S.D. Ala. 2013); *In re MicMillen*, 440 B.R. 907, 913 (Bankr. N.D. Ga. 2010); *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-cv-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014).  If only materially misleading statements give rise to liability under this provision, then

---

[14] Some deficiencies in the doctrine are discussed in note 21, *infra*.

Ms. Stewart must properly allege that the misstatements at issue would actually deceive the least sophisticated consumer.

A review of Eleventh Circuit jurisprudence, however, calls into question whether courts within the circuit properly may consider materiality under § 1692e. In *Bourff v. Rubin Lublin, LLC*, the Eleventh Circuit clearly repudiated the materiality approach.   674 F.3d 1238, 1241 (11th Cir. 2012).   Focusing on the disjunctive wording of the statute, the *Bourff* court held that any false representation constitutes a violation of the FDCPA, "even where no misleading or deception is claimed."   *Id.*   A closer read of *Jeter* also reveals that the Eleventh Circuit initially did not intend for the least sophisticated consumer approach to apply to all provisions of § 1692e.   In that case, the court held that the newly adopted least sophisticated consumer standard did not apply to a claim under § 1692e(5).[15]   *Jeter*, 760 F.2d at 1176.   Since the Subsection 5 inquiry only concerns whether the debt collector intended to take the threatened action, the court reasoned, consumer sophistication is of no moment.   Taken together, these decisions suggest that the materiality question inherent in the application of the least sophisticated consumer standard does not enjoy uniform application.

---

[15] The Ninth Circuit sharply criticized this limited application of the least sophisticated consumer standard.   *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1226-27 (9th Cir. 1988).   The Eleventh Circuit itself later retreated from its original course, explicitly applying the least sophisticated consumer approach to a claim arising under § 1692e(5).   *LeBlanc*, 601 F.3d at 1195.

Even so, to apply the *Bourff* approach to all alleged violations would be to distort the intended scope of the statute. Following the least sophisticated consumer standard, the Eleventh Circuit has noted that it must preserve a "quotient of reasonableness" when addressing alleged FDCPA violations. *LeBlanc*, 601 F.3d at 1194 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)). To preserve the reasonableness of the FDCPA's application, courts should, in most cases, only impose liability where the misrepresentations at issue actually affect the consumer's behavior.

The *Bourff* approach can be limited to the context from which it arose. The debt collection practice at issue in that case was the misidentification of the creditor in an initial communication letter. *Bourff*, 674 F.3d at 1241. Where § 1692g(a)(2) imposed an affirmative duty to identify the creditor in that initial communication, the court found that even an immaterial false representation as to creditor identity constituted a violation of the FDCPA. *Id.* Other circuit courts have dispensed with the materiality requirement, but only where the act imposes some independent affirmative duty to make disclosures in conjunction with debt collection activities. *See, e.g., Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (holding that materiality of the misrepresentation was irrelevant only where the FDCPA prohibits the exact omission at issue). Materiality may thus be ignored, and the *Bourff* approach therefore should apply,

*only* where the conduct at issue involves a failure to disclose required information. Outside of this context, materiality should still guide the ultimate determination.

Since the Third Amended Complaint does not allege failure to make required disclosures, Ms. Stewart must allege sufficient facts suggesting that the misrepresentations at issue were material. That is, if the pleading does not allege sufficient facts to allow the inference that the misrepresentation would actually mislead a least sophisticated consumer, the claim is due to be dismissed.

### ii.    § 1692e(1)

First, Ms. Stewart alleges a violation under §1692e(1). A debt collector violates that provision where it falsely represents that it is "vouched for, bonded by, or affiliated with the United States or any State." 15 U.S.C. § 1692e(1). Ms. Stewart contends that Bureaus Investment Group Portfolio No. 1, LLC violated this provision by filing the collection lawsuit while claiming that it was licensed to do business in the state of Alabama. (Doc. # 173, at 37.) But licensure to do business in the state is not commensurate with "affiliation" with the state government. *See Sullivan v. Credit Control Servs., Inc.*, 745 F. Supp. 2d 2, 8 (D. Mass. 2010) (dismissing debtor's claims where debt collector's use of the word "Government" in its name was insufficient to suggest that the communication came from the United States government and where other elements of the name clearly indicated that the communication came from a private entity); *DeSantis v.*

*Roz-Ber, Inc.*, 51 F. Supp. 2d 244, 247 (E.D.N.Y. 1999) (finding that a debt collector's use of the name "New Jersey Credit Collection Agency" would not constitute a violation of § 1692e(1) because there was no possibility that the least sophisticated debtor would be misled into thinking that the debt collector was affiliated with the State of New Jersey).  Even if a debt collector is not in fact licensed to do business in the state, a representation suggesting otherwise would not mislead the least sophisticated consumer into thinking that the debt collector is somehow in partnership with the state.  *See Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1258 (7th Cir. 1994) (finding a violation of § 1692e(1) based on other misrepresentations, but noting that "the unsophisticated consumer is likely to understand that being licensed by the State does not mean being vouched for by the state"); *Smith v. Transworld Sys*., *Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992) (affirming the district court's finding that the defendant's representation that it was a licensed debt collector did not violate § 1692e(1), reasoning that "[t]he least sophisticated consumer would not have been misled by . . . the statement concerning its licensing status . . ."); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 389 (E.D.N.Y. 2011) (finding that a debt collector's representation that it was a licensed banking corporation, though false, was not sufficient to mislead the least sophisticated consumer into thinking that the debt collector was

acting on behalf of the United States).[16]  As the court noted in *Lane*, even a false representation as to the location of a debt collector's place of licensing would not suggest to the least sophisticated consumer that the debt collector is acting on behalf of the government.  767 F. Supp. 2d at 389.  With respect to § 1692e(1), Ms. Stewart's claims are due to be dismissed.

### iii.    § 1692e(2)(A)

Second, Ms. Stewart alleges a violation of § 1692e(2)(A).  That subsection proscribes false representations regarding the "character, amount, or legal status" of the debt.  15 U.S.C. § 1692e(2)(A).  Ms. Stewart alleges that Bureaus Investment Group Portfolio No. 1, LLC violated this provision (1) by using a false name, (2) by filing suit in the state of Alabama when it was not licensed to do business there, and (3) by representing that it was licensed to do business in Alabama when in fact it was not.  (Doc. # 173, at 37.)  Bureaus Investment Group

---

[16]  Perhaps these holdings trivialize the imprimatur of legitimacy that such misrepresentations lend to the debt collector's communication.  They ignore the effect that this imprimatur has on the least sophisticated consumer.  Where a consumer sees a badge of state affiliation in connection with a collection communication, he may be induced to pay a debt that he otherwise would have challenged. It is, of course, the least sophisticated consumer who is most likely to rely, to his detriment, on this imprimatur of legitimacy.  For a more robust discussion of the infirmities of the least sophisticated consumer standard, see note 21, *infra*.

Ultimately, these decisions stand for the proposition that a tenuous suggestion as to affiliation with the government is insufficient to give rise to FDCPA liability.  It is only where the misrepresentation is a more egregious attempt at deception, giving the consumer the false impression that the communication actually emanated from an official government entity, that the debt collector can be held accountable under the FDCPA.  In Ms. Stewart's case, the misrepresentation that Bureaus Investment Group Portfolio No. 1, LLC was licensed to do business in the state is not sufficiently deceptive to be actionable under § 1692e(1).

Portfolio No. 1, LLC contends that these representations cannot be fairly described as pertaining to the "character, amount, or legal status" of the debt.

Ms. Stewart argues that the use of a false name is actionable under §1692e(2)(A). It is conceivable that the use of a false name would constitute a misstatement of the "legal status" of the debt. Ownership of a right to payment is arguably relevant to "legal status." Even so, the alleged nominal misrepresentation at issue was not likely to mislead even a least sophisticated consumer. *See Starosta v. MBNA Am. Bank, N.A.*, 244 F. App'x 939, 942 (11th Cir. 2007) (affirming dismissal of a § 1692e claim where the complaint failed to allege that an error in the debt collector's name misled the claimant); *McLain v. Gordon*, No. C09-5362BHS, 2010 WL 3340528, at *7 (W.D. Wash. Aug. 24, 2010) (finding that the creditor's use of the wrong name in a complaint was immaterial, and thus not actionable under § 1692e). The Third Amended Complaint is devoid of allegations suggesting that the false name actually misled Ms. Stewart. The use of the name "Bureaus Investment Group # 1, LLC" in place of the name "Bureaus Investment Group Portfolio No. 1, LLC" is not likely to cause the least sophisticated consumer to change her behavior or cause her to pay a debt that she otherwise would have challenged. And Ms. Stewart does not allege that she would have behaved differently had the complaint made use of the correct name.

Accordingly, the misidentification of the owner of the debt is immaterial, and thus is not actionable under § 1692e(2)(A).

Ms. Stewart next contends that, by filing suit in the state court without the proper license to do business there, Bureaus Investment Group Portfolio No. 1, LLC violated § 1692e(2)(A).[17]  Ms. Stewart advances the argument that a foreign entity may not file suit in the state of Alabama without first registering to do business within the state.  It follows, according to Ms. Stewart, that to file a collection suit without first registering to do business in the state is to falsely represent the legal status of the debt.  In this respect, she argues that the filing of a collection action on an uncollectible debt is an implicit misrepresentation.  *See Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1489 (M.D. Ala. 1987) ("By threatening to sue [the debtor], [the creditor] implicitly represented that it could recover in a lawsuit, when in fact it cannot properly do so."). She maintains that initiating legal action prior to licensure is analogous to filing a time-barred claim.[18] For the reasons that follow, the analogy is too thin to warrant the finding she seeks.

---

[17]  Throughout the Third Amended Complaint, Ms. Stewart refers to the entity's misrepresentation that it was "licensed" to do business in the state.  Under the relevant Alabama statute, an entity transacting business in the state is required to "register" with the state prior to filing suit in an Alabama court.  Ala. Code § 10A-1-7.21.  For purposes of resolving this motion to dismiss, the court will use the concepts of licensure and registration interchangeably.

[18]  It is well settled that filing a time-barred claim to collect on a debt constitutes a false representation of the "legal status" of the debt.  *See Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014) ("Federal circuit and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court

Under Alabama Law, a foreign entity transacting business in the state must be registered in the state before "maintain[ing] any action, suit, or proceeding in any court of this state." Ala. Code § 10A-1-7.21.[19] Ms. Stewart is correct, as a general matter, that the door-closing statute bars some foreign entities from filing suit in Alabama's tribunals. Her interpretation is deficient in that it misunderstands the statute's scope. A foreign entity is only prohibited from bringing an action in the state if it is not registered but nevertheless is "transacting business" in the state. See Assocs. Capital Servs. Corp. v. Loftin's Transfer & Storage Co., 554 F.2d 188, 189 (5th Cir. 1977) (holding that, since a foreign entity was not doing business in the state, it was not required to register prior to filing suit in the state).[20] While one door closes to an unregistered entity already transacting business in the state, another door remains ajar for entities not (or not yet) transacting business within the state.

---

to recover that debt violates §§ 1692e and 1692f."). But the debt at issue in this case is not time-barred.

[19] At the time Bureaus Investment Group Portfolio No. 1, LLC filed the underlying suit, separate provisions of the Alabama code dealt respectively with actions of foreign corporations and actions of foreign limited liability companies. Under the former § 10-12-52, foreign limited liability companies transacting business in the state were not allowed to maintain any suit in an Alabama court before registration. The language of the statute, applying the door-closing provision only to entities transacting business in the state, tracks that of the currently operative provision. The analysis is thus unchanged based on the intervening revisions to the statutory scheme.

[20] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209.

To show that Bureaus Investment Group Portfolio No. 1, LLC lacked authority to bring the underlying action, Ms. Stewart must sufficiently allege that the entity was transacting business in the state. She does allege that Bureaus Investment Group Portfolio No. 1, LLC filed the collection action, but that sort of conduct does not rise to the level of transacting business. *Royal Ins. Co., Ltd. v. All States Theatres*, 6 So. 2d 494, 497 (Ala. 1942) ("[E]ngaging in litigation within the state before qualification under the law does not constitute doing business within the State."). The Third Amended Complaint contains no other allegations suggesting that Bureaus Investment Group Portfolio No. 1, LLC was transacting business in the state when it filed the collection action. As an entity not transacting business in the state, Bureaus Investment Group Portfolio No. 1, LLC was legally authorized to file suit in an Alabama court. Accordingly, the pleadings allege insufficient facts to allow the inference that Bureaus Investment Group Portfolio No. 1, LLC falsely represented the legal status of the debt. With respect to claims arising under § 1692e(2)(A), the motion to dismiss is due to be granted.

Ms. Stewart also argues that Bureaus Investment Group Portfolio No. 1, LLC ran afoul of § 1692e(2)(A) by representing that it was licensed to do business in the state, when in fact it was not. This is a thornier issue. It is well established that, so long as the entity is not doing business in the state, being licensed has no bearing on its right to file suit there. Bureaus Investment Group Portfolio No. 1,

LLC was entitled to sue Ms. Stewart with or without licensure because it was not doing business in Alabama at the time. It made a false representation by stating that it was so licensed, but that misrepresentation was not material. As an entity not conducting business in Alabama, its licensure was of no moment. Viewing this issue through the lens of the least sophisticated consumer standard, and dutifully applying the materiality limitation, the licensure misrepresentation is not actionable under § 1692e(2)(A). Ms. Stewart does not allege that the misrepresentation affected her behavior or misled her in any way. And under these facts, licensure is not material to the legal status of the debt.[21]  Accordingly, Ms. Stewart fails to state a claim under § 1692e(2)(A).

---

[21] In this context, the infirmities of the least sophisticated consumer standard are laid bare. Courts view FDCPA claims through this lens of naïveté in order to protect those debtors most vulnerable to abuse. But the least sophisticated consumer, presumably unschooled in the finer points of the law of business associations, would not appreciate the import of an entity's licensure with the state. Where a false representation regarding license to do business in the state might be uncovered by the most sophisticated consumer, one would not expect such a falsehood to affect the behavior of his least sophisticated counterpart. The uninitiated consumer, having no grasp what "licensed by the state" means, relies on the substance of the representation. It is precisely because the consumer is unsophisticated that the debt collector escapes liability for these misrepresentations. Yet the sophisticated debt collector, with its sophisticated attorney, is unaccountable for this sophisticated misrepresentation. The lie gives at least an imprimatur of legitimacy to an unsuspecting debtor.

Suppose the state court complaint had alleged the truth: "Entity is not licensed to do business in Alabama and this is not its true and correct name." These true representations may well have caused concern in the mind of the least sophisticated consumer. Ms. Stewart admits that the lies did not affect her behavior, but perhaps the test should be whether the truth would affect consumer conduct. This is a fanciful test, but it exposes the ironic use of the least sophisticated consumer standard. In light of the overarching purpose with which Congress enacted the FDCPA, and when applied to this particular set of facts, the standard seems to demand a perverse result. That is, it seems to protect the most sophisticated consumer rather than the least.

iv.    § 1692e(9)

Third, Ms. Stewart alleges a violation of § 1692e(9).  That provision makes it unlawful for a debt collector to use any written communication that "simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State."  15 U.S.C. § 1692e(9).  Courts generally limit this provision to instances in which the debt collector "overtly impersonates a government agency" or "attempts to hide its identity by using a false alias."  *Sullivan v. Credit Control Servs., Inc.*, 745 F. Supp. 2d 2, 10 (D. Mass. 2010).  Ms. Stewart alleges that Bureaus Investment Group Portfolio No. 1, LLC made such a false representation when it held itself out as licensed to conduct business in the state of Alabama.  (Doc. # 173, at 37.)  Stating that the entity is licensed to do business is not the sort of conduct contemplated by the provision.  It does not tend to mislead the least sophisticated consumer into believing that the Bureaus Investment Group Portfolio No. 1, LLC's complaint bore the imprimatur of the Alabama government.  *See Gammon*, 27 F.3d at 1258.  Ms. Stewart fails to state a claim under § 1692e(9).

---

Courts must navigate this confusion by kedging toward reasonableness, which is the anchor that ultimately secures any FDCPA inquiry.  *LeBlanc*, 601 F.3d at 1194.  It is reasonable to conclude, especially considering Ms. Stewart's testimony that the licensure representation did not affect her behavior in this case (Doc. # 191-2, at 16), that Bureaus Investment Group Portfolio No. 1, LLC's behavior in this respect is not actionable under § 1692e.

v.       § 1692e(10)

Fourth, Ms. Stewart alleges a violation of § 1692e(10).  This provision proscribes generally the use of any "false representation or deceptive means" in debt collection activities.  15 U.S.C. § 1692e(10).  In determining whether a debt collector has violated this provision, courts must evaluate whether the least sophisticated consumer would be misled by the representations at issue.  *Jeter*, 760 F.2d at 1177.  The sorts of misrepresentations giving rise to § 1692e(10) liability are those that would lead a debtor to pay a debt that he otherwise would have challenged.  *Sullivan*, 745 F. Supp. 2d at 11.

The Third Amended Complaint's conclusory allegations are unhelpful in determining which false representations misled Ms. Stewart to pay where she otherwise would have challenged the collection effort.  Taking the pleading as a whole, as is appropriate in consideration of a motion to dismiss, liability appears to be premised on the notion that Bureaus Investment Group Portfolio No. 1, LLC misstated its name and that it represented it was licensed to do business in Alabama when it was not.  As for the misstatement of the entity's name, it is unclear how this constitutes a misrepresentation that would mislead even the least sophisticated consumer.  The pleadings do not indicate that Ms. Stewart would have acted differently had Bureaus Investment Group Portfolio No. 1, LLC

correctly identified itself and its legal status in strictest terms.[22]  *See Starosta*, 244 F. App'x at 942 (affirming dismissal of a § 1692e(10) claim where the complaint failed to allege that an error in the debt collector's name misled the claimant).  And it is difficult to see how this misstatement of the entity's name would mislead any other unsophisticated creditor into paying the debt it owed.

With respect to the misstatement regarding the entity's license to do business in the state, Ms. Stewart fails to state a plausible claim.  As established in the foregoing analysis, whether Bureaus Investment Group Portfolio No. 1, LLC was licensed to do business in the state has no bearing on its right to file this collection action.  *See* Part IV.C.1.c.ii, *supra*.  Ms. Stewart relies on the reasoning of *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987), to establish the

---

[22] In her response to the motion, Ms. Stewart attempts to allege new facts supporting these § 1692e claims.  Referring to her deposition testimony (Doc. # 191-1), she argues that the misrepresentation regarding Bureaus Investment Group Portfolio No. 1, LLC's license to do business led her to believe that this entity was entitled to "come after her" to collect the debt (Doc. # 210, at 54.), an argument that implicates the issues raised in note 21, *supra*.

When reviewing a motion to dismiss, courts are generally limited to the four corners of the complaint.  *DeSouza v. Fed. Home Mortg. Corp.*, 572 F. App'x 719, 721 (11th Cir. 2014).  The court may consider documents outside of the complaint, but only if the plaintiff refers to those documents in the complaint and the documents are central to the claims.  *Id.*  Courts deciding a 12(b)(6) motion to dismiss may also consider items appearing in the record of the case.  *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438 (11th Cir. 1996).  Even had the Third Amended Complaint made reference to these statements from Ms. Stewart's deposition testimony, a closer review of that testimony would have revealed her directly contradictory statement that she did not rely in any way on the statement that Bureaus Investment Group Portfolio No. 1, LLC was licensed to do business in the state.  (Doc. # 191-2, at 16.)  Ultimately, this attempt to remedy the pleading's deficiencies is unavailing.  *See Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004) ("It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss.").

plausibility of her claims.  But the facts of that case are distinguishable from the scenario at bar.  In *Kimber*, it was clear that the debt collector had no right to recover the unpaid sums based on the expiration of the time limitations period. 668 F. Supp. at 1487.  The registration statute does not prevent Bureaus Investment Group Portfolio No. 1, LLC from filing suit in the way that a statute of limitations would.  Thus, the representation that it was licensed to do business in the state, though false, was not material.  Accordingly, the Third Amended Complaint offers no basis from which to infer that this statement was misleading in violation of § 1692e(10).

<div align="center">vi.   § 1692e(14)</div>

Fifth, and finally, Ms. Stewart alleges a violation of § 1692e(14).  Under that provision, a debt collector may not use any name other than its true name when engaged in debt collection activities.  15 U.S.C. § 1692e(14).  Again, the relevant inquiry with respect to § 1692e(14) is whether the alleged misrepresentations would mislead the least sophisticated consumer.  Crucially, the Third Amended Complaint is devoid of allegations that the misstated name in any way misled Ms. Stewart.  Without these allegations, there is no basis upon which to conclude that Ms. Stewart is entitled to relief.  *See Starosta*, 244 F. App'x at 942.  Therefore, Ms. Stewart's claims are due to be dismissed to the make claims under § 1692e(14).

### d.  Unfair Practices Under § 1692f

Ms. Stewart's allegations are also insufficient to state a claim for relief under § 1692f.   Under that provision, a debt collector may not use "unfair or unconscionable means" to collect a debt.  15 U.S.C. § 1692f.  As with § 1692e, this provision enumerates specific examples of conduct constituting a violation.   To plausibly allege a violation of § 1692f, a claimant need not allege violations of any of these eight specific subsections.  *Taylor v. Heath W. Williams, LLC*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007).   But if the complaint does not indicate specific violations under the eight subsections, it must make additional allegations. Those additional allegations must be sufficient to lend themselves to the inference that the conduct at issue was unfair or unconscionable.  *Id.*  If the complaint fails to specifically allege how the debt collector's conduct is unfair or unconscionable under the circumstances, it fails to state a claim upon which relief can be granted. *See id.*

Here, Ms. Stewart makes the familiarly conclusive allegation that Bureaus Investment Group Portfolio No. 1, LLC's conduct violates § 1692f.  (Doc. # 173, at 38.)  She is correct to note that her previous allegations are incorporated by reference and thus should be considered with respect to her § 1692f claim.  Her previous allegations, however, do not resuscitate her deficient pleading.  The complaint fails to allege any conduct that runs afoul of the specific examples

provided in § 1692f(1)-(8).   This deficiency alone is not fatal, but the pleading further fails to allege how the conduct at issue works any unfairness or is unconscionable under these circumstances.   Under the pleading standards announced in *Twombly* and *Iqbal*, the bare allegation here is insufficient to survive this motion to dismiss.  *See Taylor*, 510 F. Supp. 2d at 1217.

### e.   Furnishing Certain Deceptive Forms Under § 1692j

The final FDCPA provision under consideration is § 1692j, which makes it unlawful to "furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of . . . such debt . . . when in fact such person is not so participating."  15 U.S.C. § 1692j(a).  This subsection is intended to prohibit "flat-rating," a practice in which a third party sends a dunning letter portraying itself as a debt collector, when in fact the third party is uninvolved in the collection effort.  *See Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002).  The third party merely lends its name to the collection effort, presumably for the name's intimidating value.  *Id.*  Bureaus Investment Group Portfolio No. 1, LLC, as the owner of the debt, is not a third party uninvolved in the debt collection process.  To the extent Ms. Stewart claims Bureaus Investment Group Portfolio No. 1, LLC is liable under § 1692j, the motion to dismiss is due to be granted.

In light of the purpose with which Congress enacted the FDCPA, the misrepresentations Ms. Stewart identifies do not give rise to liability. *See* 15 U.S.C. § 1692. The misrepresentations regarding name and licensure to do business in the state, under prevailing law, simply are not the sort of conduct that would have "prevented the least sophisticated consumer from responding to or disputing the action." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012). Because Ms. Stewart failed to allege sufficient facts supporting her FDCPA claims against Bureaus Investment Group Portfolio No. 1, LLC, they are due to be dismissed.

### 2. *Claims Arising Under State Law*

In addition to her FDCPA claims, Ms. Stewart raises several state law theories of liability. Specifically, as her claims relate to Bureaus Investment Group Portfolio No. 1, LLC, Ms. Stewart alleges liability for Wanton and/or Intentional Conduct (Count III), Assumpsit/Account (Money Had and Received) (Count IV), and Negligent, Reckless and/or Wanton Training, Monitoring and/or Supervision (Count V).

### a. **Wanton and/or Intentional Conduct**

As an initial matter, there is ample authority suggesting that wantonness constitutes an independent cause of action under Alabama law. *See Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991) (discussing the evidentiary rules that apply when a

party "alleges wanton conduct as a cause of action"); *Rommell v. Automobile Racing Club of Am., Inc.*, 964 F.2d 1090, 1096 (11th Cir. 1992) (addressing the circumstances under which a defendant may be found "liable for wantonness" under Alabama law); *K.M. v. Ala. Dep't of Youth Servs.*, 360 F. Supp. 2d 1253, 1265 (M.D. Ala. 2005) (considering whether claimant submitted sufficient evidence to establish a "prima facie case of wantonness" under Alabama law).

Unfortunately for Ms. Stewart, however, Alabama law does not recognize liability for wanton or intentional conduct under these particular circumstances. The conduct upon which Ms. Stewart bases her claim, at least with respect to Bureaus Investment Group Portfolio No. 1, LLC, is its prosecution of the underlying civil collection action. When the prosecution of such a civil action is the conduct at issue, the claimant cannot prevail on a general claim for wanton or intentional conduct. *Ex parte Miller, Hamilton, Snider & Odom, LLC*, 942 So. 2d 334, 336 n.1 (Ala. 2006) ("[A] claim of negligent or wanton prosecution of a civil action is not a cognizable tort in this state.") (quoting *Ex parte State Farm Mut. Auto. Ins. Co.*, 924 So. 2d 706, 711 (Ala. 2005)); *see also Ex parte Tuscaloosa Cnty.*, 770 So. 2d 602, 605 (Ala. 2000) (holding that a plaintiff who cannot succeed on a malicious prosecution claim cannot succeed on "general allegations of negligence, willfulness, or wantonness"). Accordingly, Ms. Stewart's claims for wanton and/or intentional conduct are due to be dismissed.

### b.    Assumpsit/Account (Money Had and Received)

In the claim styled Assumpsit/Account (Money Had and Received), Ms. Stewart alleges that Bureaus Investment Group Portfolio No. 1, LLC is in possession of money that, in equity and good conscience, it ought not hold. Though the Third Amended Complaint makes no mention of the payments at issue, the record in this case reveals that Ms. Stewart made eight payments pursuant to a consent judgment before the state court granted a motion to vacate.  (Doc. 1-1, at 26.)   The claim, which sounds in unjust enrichment, alleges that Bureaus Investment Group Portfolio No. 1, LLC wrongfully took these payments.

To prevail at this stage, Ms. Stewart must adequately allege that Bureaus Investment Group Portfolio No. 1, LLC holds these payment monies and that the payment was improper because of fraud or mistake.  *Foshee v. Gen. Tel. Co. of Se.*, 322 So. 2d 715, 717 (Ala. 1975).  To the extent Ms. Stewart claims that Bureaus Investment Group Portfolio No. 1, LLC is not entitled to these payments because it was not licensed to do business in the state when it filed suit, this argument is wrong.  For the reasons already explained, Bureaus Investment Group Portfolio No. 1, LLC did not lack legal authority to file the underlying collection suit.  *See* Part IV.C.1.c.ii, *supra*.  And as for the allegation that Bureaus Investment Group Portfolio No. 1, LLC misrepresented its name when filing suit, this fact alone would not suffice to establish the fraud or mistake necessary to make out a claim

56

for unjust enrichment.  There is no dispute that Ms. Stewart owed the underlying debt.  In the absence of allegations suggesting that the payments at issue resulted from fraud, mistake, or other inequitable conduct, Ms. Stewart's claims for Assumpsit/Account (Money Had and Received) are due to be dismissed.

### c.      Negligent, Reckless and/or Wanton Training, Monitoring and/or Supervision

The final claim Ms. Stewart raises against Bureaus Investment Group Portfolio No. 1, LLC is for Negligent, Reckless and/or Wanton Training, Monitoring and/or Supervision.  To sufficiently allege this claim, Ms. Stewart must at least plausibly establish the existence of a master-servant relationship in which Bureaus Investment Group Portfolio No. 1, LLC acted as master.  *See Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1214-15 (Ala. 2008) (setting out the standards under which a master will be liable for negligent training and supervision of a servant).  In the Third Amended Complaint, Ms. Stewart alleges that Bureaus Investment Group Portfolio No. 1, LLC has no employees.  (Doc. # 173, at 14.)  The pleading makes no allegation that Bureaus Investment Group Portfolio No. 1, LLC oversaw the operations of any other entity in a master-servant fashion.  Because Ms. Stewart fails to allege facts sufficient to establish this threshold showing, her claim is due to be dismissed.

### 3.    *Summary*

Bureaus Investment Group Portfolio No. 1, LLC's motion to dismiss is due to be granted in full.  Ms. Stewart fails to sufficiently plead her claims arising under the FDCPA and state law.  Accordingly, Counts II, III, IV, and V are dismissed as they relate to Bureaus Investment Group Portfolio No. 1, LLC.

### D.    <u>Bureaus Investment Group, LLC's 12(b)(6) Motion</u>

Bureaus Investment Group, LLC also filed a 12(b)(6) motion seeking dismissal of all claims against it.[23]  As with Bureaus Investment Group Portfolio No. 1, LLC, the Third Amended Complaint raises FDCPA and state law claims against Bureaus Investment Group, LLC.  According to Ms. Stewart, Bureaus Investment Group, LLC is the sole member of each of the Portfolio Defendants. (Doc. # 173, at 12-13.)  She further alleges that Bureaus Investment Group, LLC has no employees and only takes action at the direction of The Bureaus, Inc. or its owners and officers.  (Doc. # 173, at 13.)  The sole purpose for which Bureaus Investment Group, LLC exists, according to the pleadings, is to receive capital contributions and funnel those contributions to the Portfolio Defendants.  (Doc. # 173, at 13.)

---

[23] The motion also seeks dismissal of all claims against the Claimless Portfolio Defendants.  Since Ms. Stewart does not have standing to sue the Claimless Portfolio Defendants for the reasons stated in Part IV.A.1, *supra*, this 12(b)(6) motion need not be addressed in relation to those defendants.

Based on these allegations, it is clear that Bureaus Investment Group, LLC's connection to the underlying collection lawsuit is more tenuous than that of Bureaus Investment Group Portfolio No. 1, LLC.  If Bureaus Investment Group, LLC played any role in the collection lawsuit, it was only through the actions of Bureaus Investment Group Portfolio No. 1.  Ms. Stewart makes no allegations of conduct on behalf of Bureaus Investment Group, LLC beyond the conduct attributed to Bureaus Investment Group Portfolio No. 1, LLC.  For the reasons set forth in Part IV.D., *supra*, the Third Amended Complaint fails to state a claim as to Bureaus Investment Group Portfolio No. 1, LLC.

If Ms. Stewart's allegations are insufficient to state a claim as to Bureaus Investment Group Portfolio No. 1, LLC, it follows *a fortiori* that the complaint fails to state a claim against Bureaus Investment Group, LLC.  The allegations in the Third Amended Complaint are insufficient to raise even an inference that Bureaus Investment Group, LLC is liable under the FDCPA or state law theories. For the reasons set forth in Part IV.D, *supra*, the motion to dismiss is due to be granted as to Bureaus Investment Group, LLC.  Accordingly, as they relate to Bureaus Investment Group, LLC, Counts II, III, IV, and V will be dismissed.

## E.    The Bureaus, Inc.'s Rule 12(b)(6) Motion

The final motion under consideration is The Bureaus, Inc.'s 12(b)(6) motion to dismiss.  The claims Ms. Stewart raises against The Bureaus, Inc. can be

generally categorized as claims arising under the FDCPA, claims arising under state law, and other theories of liability. They will be addressed in that order.

### 1.   *Claims Arising Under the FDCPA*

In Count II of the Third Amended Complaint, Ms. Stewart alleges that The Bureaus, Inc. is liable under several provisions of the FDCPA. Since The Bureaus, Inc. does not dispute Ms. Stewart's allegation that it is a "debt collector" within the meaning of the statute (Doc. # 173, at 4), the merits of each claim will be considered.

For the sake of clarity, it is worth noting the role that The Bureaus, Inc. played in the collection action at issue. Ms. Stewart alleges that The Bureaus, Inc. generally acted as a "master servicer" for Bureaus Investment Group, LLC and the Portfolio Defendants. (Doc. # 173, at 7.) In that capacity, The Bureaus, Inc. performed various debt collection functions, including overseeing licensing and regulatory requirements, facilitating the purchase of debt, and running the daily operations of the other Bureaus Defendants. (Doc. # 173, at 7-8.) With respect to the controversy surrounding Ms. Stewart's debt, The Bureaus, Inc. participated from afar. Though there is no allegation that it directly participated in the collection lawsuit, The Bureaus, Inc. did correspond with Ms. Stewart regarding the outstanding debt. On November 28, 2008, The Bureaus, Inc. sent a letter to Ms. Stewart notifying her of the balance on her account. (Doc. # 173, at 22.) That

letter listed Bureaus Investment Group Portfolio No. 1, LLC, the true legal owner of the debt, as the "client."  (Doc. # 195-2.)

Also of note is the makeup of The Bureaus, Inc.'s ownership and personnel. Ms. Stewart alleges that Mr. Michael Slotky and Mr. Burton Slotky each owned a 50% interest in the corporation.  (Doc. # 173, at 16.)  Mr. Michael Slotky was once the President and now serves as CEO of The Bureaus, Inc.  (Doc. # 173, at 16.) Mr. Sangalang is the past Vice President and current President of the corporation. (Doc. # 173, at 16.)  Mr. Hedges, no longer a party to this action, at one time served as the legal manager for the corporation.  (*See* Part IV.B.2, *supra*.)

In her pleading, Ms. Stewart alleges liability pursuant to 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692j.  The Bureaus, Inc. contends that the Third Amended Complaint fails to sufficiently allege conduct that constitutes a violation of any FDCPA provision.[24]  To the extent the alleged misrepresentations made in connection with the state court collection action can be attributed to The Bureaus, Inc., they do not give rise to FDCPA liability for the reasons set forth above.  Part

---

[24] Ms. Stewart's Response (Doc. # 210) gives short shrift to this crucial point.  In a solitary paragraph, Ms. Stewart addresses The Bureaus, Inc.'s contentions by arguing that the conduct of the corporation's attorneys can be imputed to the corporation.  (Doc. # 210, at 52 (citing *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D. Ala. 1987)).)  Even if the conduct of its attorneys can be so imputed, such a relationship alone is insufficient to warrant denial of this motion.  As found in Part IV.C, *supra*, the conduct in which Bureaus Investment Group Portfolio No. 1, LLC engaged when it filed the collection lawsuit, presumably through the same attorney, does not rise to the level of actionable behavior under the FDCPA or Alabama law.  Ms. Stewart alleges no other conduct on behalf of the corporation's attorneys that might give rise to civil liability.

IV.C, *supra*.  Thus, the only allegations under consideration in this final 12(b)(6) motion are those concerning the collection letter.  (*See* Doc. # 173, at 22; Doc. # 195-2.)

### a.    Harassment or Abuse Under § 1692d

Ms. Stewart's allegations are insufficient to state a claim under § 1692d.  To properly plead a claim under that provision, Ms. Stewart must allege conduct that constitutes harassment or abuse.  15 U.S.C. § 1692d.  The language of the letter that The Bureaus, Inc. sent to Ms. Stewart is neither harassing nor abusive.  As alleged in the Third Amended Complaint, the letter merely "indicat[ed] that Stewart had a balance of $14,923.21 remaining on the account" and "listed Bureaus Investment Group Portfolio No. 1, LLC as the 'client.'"  (Doc. # 173, at 22.)  Nothing in the letter can be fairly construed as having the tendency to "harass, oppress, or abuse" Ms. Stewart.  *See* 15 U.S.C. § 1692d.  Accordingly, Ms. Stewart's § 1692d claim is due to be dismissed as to The Bureaus, Inc.

### b.    False or Misleading Representations Under § 1692e

As to the claims premised on § 1692e, the Third Amended Complaint fails to state a claim against The Bureaus, Inc.  That provision generally prohibits all "false, deceptive, or misleading" representations, but it also enumerates specific conduct that constitutes a violation.  15 U.S.C. § 1692e.  To sufficiently plead actionable conduct under this provision, a claimant must plausibly allege that the

conduct at issue would be misleading to the least sophisticated consumer.  Ms. Stewart alleges violations under §§ 1692e(1), 1692e(2)(A), 1692e(9), 1692e(10), and 1692e(14).

i.      § 1692e(1)

Ms. Stewart fails to sufficiently allege facts supporting a violation under § 1692e(1).  That subsection prohibits the false representation "that the debt collector is vouched for, bonded by, or affiliated with the United States or any state."  15 U.S.C. § 1692e(1).  Aside from the conclusory allegation that The Bureaus, Inc. violated § 1692e(1), the Third Amended Complaint alleges no facts supporting this claim.  Ms. Stewart alleges nothing more than that The Bureaus, Inc. sent a collection letter, which included the balance owed and identified Bureaus Investment Group Portfolio No. 1, LLC as its client.  (Doc. # 173, at 22.)  Since the pleading fails to allege facts even suggesting that the letter implied affiliation with any government, this motion is due to be granted as to claims under § 1692e(1).

ii.      § 1692e(2)(A)

The Third Amended Complaint also fails to state a claim under § 1692e(2)(A).  That subsection prohibits false representations as to the "character, amount, or legal status" of the debt.  15 U.S.C. § 1692e(2)(A).  Ms. Stewart does not allege that the collection letter contained any material misstatement as to the

character, amount, or legal status of the debt.  The claims against The Bureaus, Inc. arising under § 1692e(2)(A) are therefore due to be dismissed.

> iii.   § 1692e(9)

In addition, Ms. Stewart's allegations are insufficient to support a claim under § 1692e(9).  To adequately plead a violation under that subsection, Ms. Stewart must allege that The Bureaus, Inc. used a written communication that "simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any state, or which creates a false impression as to its source, authorization, or approval."  15 U.S.C. § 1692e(9).  The Third Amended Complaint is devoid of allegations suggesting that the collection letter improperly represented government authorization.  This claim is due to be dismissed.

> iv.   § 1692e(10)

Ms. Stewart similarly fails to allege facts sufficient to sustain a claim under § 1692e(10).  This subsection generally proscribes the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  Count II does plead a violation of this section on the part of The Bureaus, Inc., but only in a conclusory fashion.  The allegations concerning the letter do not suggest that the letter was in any way deceptive or that it contained false representations.  They

also do not support an inference that its contents would be misleading to the least sophisticated consumer.  For these reasons, Ms. Stewart fails to state a claim under § 1692e(10).

v.    § 1692e(14)

Finally, the Third Amended Complaint fails to state a claim under § 1692e(14).   This subsection prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).  In short, the pleading contains no such allegations with respect to the collection letter.  There is no suggestion that The Bureaus, Inc. misrepresented its own name.  Ms. Stewart affirmatively alleges that the letter correctly identified Bureaus Investment Group Portfolio No. 1, LLC as the client.  The motion to dismiss is due to be granted as to the § 1692e(14) claim.

### c.    Unfair Practices Under § 1692f

The Third Amended Complaint also fails to sufficiently allege facts supporting a claim under § 1692f.  That provision bars the use of "unfair or unconscionable means" to collect a debt.  15 U.S.C. § 1692f.  Ms. Stewart does not allege that The Bureaus, Inc.'s dispatch of this letter in any way runs afoul of the eight subsections of this provision.  Further, she does not allege that The Bureaus, Inc.'s behavior in this respect was otherwise unfair or unconscionable.  Since the

Third Amended Complaint fails to allege enumerated conduct under the § 1692f subsections and does not further allege how the conduct related to the letter was unfair or unconscionable, this claim is due to be dismissed as against The Bureaus, Inc. *See Taylor*, 510 F. Supp. 2d at 1217.

### d.    Furnishing Deceptive Forms Under § 1692j

As for the § 1692j claims, the Third Amended Complaint also fails to state adequately a claim against The Bureaus, Inc.  That provision imposes liability where a defendant engages in flat-rating. *See* 15 U.S.C. § 1692j; *Nielsen*, 307 F.3d at 639.   It is well established in the record that The Bureaus, Inc. sent Ms. Stewart a collection letter.  What is not established, taking the allegations as true, is that the collection letter The Bureaus, Inc. sent somehow created the "false belief in [Ms. Stewart] that a person other than the creditor of [Ms. Stewart] [was] participating in the collection of or in an attempt to collect a debt [Ms. Stewart] allegedly owe[d] such creditor, when in fact such person [was] not so participating."   15 U.S.C § 1692j(a).

According to the Third Amended Complaint, the collection letter accurately listed Bureaus Investment Group Portfolio No. 1, LLC as the "client."  (Doc. # 173, at 22.)   As the true legal owner of the debt, Bureaus Investment Group Portfolio No. 1, LLC was participating in the collection of Ms. Stewart's debt.  The only way this letter might conceivably evidence a violation under § 1692j is if The

Bureaus, Inc. only furnished its name to the letter when it in fact was not participating in the collection effort. The Third Amended Complaint contains no allegation that The Bureaus, Inc. lent its name to the collection letter for some deceptive purpose. Rather, the pleadings contemplate The Bureaus, Inc.'s involvement in the collection effort as "master servicer" and "debt collector" in connection with all Portfolio Defendants. (Doc. # 173, at 7.) Giving Ms. Stewart every benefit to which she is entitled on a motion to dismiss, her complaint is nonetheless inadequate to a state a § 1692j claim against The Bureaus, Inc. Accordingly, this 12(b)(6) motion is due to be granted as to that provision.

### 2. *Claims Arising Under State Law*

In addition to asserting claims under the FDCPA, the Third Amended Complaint advances several state law theories of liability against The Bureaus, Inc. Specifically, Ms. Stewart alleges that The Bureaus, Inc. is liable for Wanton and/or Intentional Conduct, Assumpsit/Account (Money Had and Received), and Negligent, Reckless, and/or Wanton Training, Monitoring and/or Supervision.

The Bureaus, Inc. argues in this 12(b)(6) motion that Ms. Stewart fails to state claims for relief under these provisions. To the extent the alleged misrepresentations made in connection with the state court collection action can be attributed to The Bureaus, Inc., they do not give rise to state law liability for the reasons set forth above. Part IV.C, *supra*. Thus, the only allegations under

consideration in this final 12(b)(6) motion are those concerning the collection letter.  (*See* Doc. # 173, at 22; Doc. # 195-2.)  For the reasons below, the motion is due to be granted with respect to all state law claims.

### a.    Wanton and/or Intentional Conduct

In Count III of the Third Amended Complaint, Ms. Stewart alleges that The Bureaus, Inc. is liable for wanton or intentional conduct.  Again, and contrary to the argument advanced by The Bureaus, Inc., Alabama law does recognize a cause of action for wantonness.  *See* Part IV.C.2.a, *supra*.  Other than conduct relating to the collection lawsuit, which does not give rise to liability for the reasons set forth in Part IV.C, *supra*, the only conduct allegedly giving rise to liability for wantonness or intentional conduct is The Bureaus, Inc.'s dispatch of collection letters.  According to the allegations, these collection letters contained false or misleading information and failed to identify the true owner of the debt.  (*See* Doc. # 173, at 39.)

In simple terms, wantonness is a concept of "actionable culpability." *Rommel*, 964 F.2d at 1097 (quoting *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 146 (Ala. 1987)).  Implicit in this notion of culpability is that, in order to make out a claim for wantonness, a plaintiff must allege the wrongfulness of the relevant act.  *See* 2 *Ala. Pattern Jury Instr. Civ.* 29.01 (3d ed. 2014) (noting that the instruction for willful or wanton conduct

assumes that the defendant owed a legal duty to the plaintiff, but that whether the defendant owed a legal duty to the plaintiff "is a matter of law to be decided by the trial judge").  *Cf. Lynn Strickland*, 510 So. 2d at 145 (holding that liability for wantonness requires a showing that the defendant "consciously and intentionally did some wrongful act or omitted some known duty") (quoting *Smith v. Roland*, 10 So. 2d 367, 369 (Ala. 1942)).  The same is true of a claim for willful or intentional conduct, though claims for willfulness involve a different state of mind.[25]   1 Michael Roberts & Gregory Cusimano, *Alabama Tort Law* § 3.01 (5th ed. 2010).

For Ms. Stewart to properly plead her claim for wanton or willful conduct, she must allege more than the state of mind with which The Bureaus, Inc. took action.  The pleading must allege sufficient facts to give rise to the inference that the conduct in which the corporation engaged was wrongful.  *See Lynn Strickland*, 510 So. 2d at 145.  The Third Amended Complaint is deficient in this respect.  It is clear that The Bureaus, Inc. sent a collection letter, but the dispatch alone of such a letter does not give rise to liability in tort.  As established in the foregoing analyses, the institution of the collection action against Ms. Stewart was not wrongful under the FDCPA or state law.  Nor was the dispatch of the letter wrongful under the FDCPA or any other theory Ms. Stewart has raised.  The Third

---

[25] Wantonness and willfulness are not entirely interchangeable concepts under Alabama law.  But since the disposition of this motion, as it relates to Count III, turns on Ms. Stewart's failure to plead wrongful conduct, wantonness and willfulness will be addressed together.

Amended Complaint takes the position that The Bureaus, Inc. correctly identified itself and the legal owner of the debt in the letter itself.   (Doc. # 173, at 22.) Without sufficient allegations suggesting that The Bureaus, Inc. breached some duty by sending the collection letter, the pleading fails to state a claim upon which relief can be granted.  To the extent the Third Amended Complaint seeks to state a claim for wanton or intentional conduct against The Bureaus, Inc., it is due to be dismissed.

### b.    Assumpsit/Account (Money Had and Received)

With respect to her claim for Assumpsit/Account, Ms. Stewart alleges that The Bureaus, Inc. collected money from her to which it was not entitled.  For that reason, she alleges, The Bureaus, Inc. should be ordered to return that money.  To the extent this claim is premised on the eight payments Ms. Stewart made in satisfaction of the original state court judgment, her claim is due to be dismissed. *See* Part IV.C.2.b, *supra*.  Beyond the allegations relating to those payments, Ms. Stewart offers no other basis upon which this claim may properly be laid.  There is no dispute that Ms. Stewart owed the underlying debt, and the record fails to allege any specific facts suggesting that The Bureaus, Inc. is in possession of money that, in equity and good conscience, it should not hold.  *See Foshee*, 322 So. 2d at 717. Accordingly, The Bureaus, Inc.'s motion will be granted as to Count IV.

c.    **Negligent, Reckless and/or Wanton Training, Monitoring and/or Supervision**

In Count V of the Third Amended Complaint, Ms. Stewart alleges that The Bureaus, Inc. is liable for negligent or wanton supervision of its agents, officers, and/or employees.  As the basis for this claim, Ms. Stewart alleges that The Bureaus, Inc.'s failure to supervise resulted in her suffering the underlying state court collection action.  She further alleges that The Bureaus, Inc. should have known of the incompetence of its employees, officers, or agents, and that the lack of supervision caused her damages.

To plead adequately a claim for negligent or wanton supervision, Ms. Stewart first must allege sufficient facts suggesting that the agents, officers, or employees of The Bureaus, Inc. engaged in tortious conduct.  *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 721 (11th Cir. 2011); *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003).  Here, Ms. Stewart's allegations are insufficient to suggest that any employee, agent, or officer of The Bureaus, Inc. engaged in tortious conduct under Alabama law.[26]    As established in the

---

[26] Ms. Stewart's Response to the Motion to Dismiss makes mention of the need for discovery with respect to this claim.  (Doc. # 210, at 88.)  But the Response only argues that discovery is necessary to ascertain whether The Bureaus, Inc. knew or should have known of the alleged incompetence of its employees, officers, or agents.  What the corporation knew about its officers or employees is irrelevant where Ms. Stewart does not sufficiently allege, as a threshold matter, that any of the corporation's officers, employees, or agents engaged in tortious conduct

foregoing, no actions taken in relation to the underlying collection lawsuit give rise to liability in tort.  The misrepresentations made in the filing of the suit do not give rise to liability.  The action of sending a collection notice does not give rise to liability.  Ms. Stewart does not allege any further conduct on the part of The Bureaus, Inc.'s employees, officers, or agents that could be fairly described as tortious.  Since the Third Amended Complaint fails to sufficiently allege tortious conduct on the part of the corporation's employees, officers, or agents, The Bureaus, Inc. cannot be liable for negligent or wanton supervision.  *See Jackson v. Countrywide Home Loans, Inc.*, 2:11-cv-327, 2012 WL 777180, at *8 (M.D. Ala. Mar. 7, 2012) ("Plaintiff's negligent or wanton hiring claim is due to be dismissed because the Court has dismissed all of Plaintiff's other tort claims.").  Accordingly, the motion is due to be granted with respect to Count V.

### 3.    *Other Theories of Liability*

In Count VII of the Third Amended Complaint, Ms. Stewart relies on various theories to allege The Bureaus, Inc.'s liability for "Acts on Behalf of Unincorporated Bureaus."  These theories include pre-incorporation liability, pre-formation liability, promoter liability, and agency liability.  In Count IX, Ms. Stewart includes a claim against The Bureaus, Inc. for vicarious liability.  For the

---

for which The Bureaus, Inc. might be liable by operation of the negligent or wanton supervision theory.

reasons that follow, none of these theories is availing.  The motion is due to be granted, and Counts VII and IX are due to be dismissed.

With respect to the claims alleged in Counts VII and IX, each theory of liability is derivative in nature.  Ms. Stewart alleges that, because the Bureaus, Inc. acted on behalf of the other Defendants, it must answer for the transgressions of those other Defendants.  Ms. Stewart's recitation of the law of derivative liability is facially sound.  Her pleading founders, however, on its failure to account for the underlying liability upon which these counts are premised.  Since Ms. Stewart states no plausible claim to which the derivative liability may attach, her claims are fatally deficient.  Each theory will be discussed in detail.

### a.    Pre-Incorporation Liability

To establish pre-incorporation liability under Alabama law, a plaintiff must show (1) that the defendant acted as or on behalf of a corporation, (2) that the defendant knew there was no corporation formed under state law, and, crucially, (3) that the defendant incurred liability in the process.  Ala. Code § 10A-2-2.04. According to the Third Amended Complaint, The Bureaus, Inc. acted on behalf of non-existing corporations where it authorized collection action on behalf of the Legally Non-Existent Bureaus.  (Doc. # 173, at 47.)   These allegations are sufficient to satisfy the first and second necessary elements of a pre-incorporation claim.  They do not establish, however, that The Bureaus, Inc. incurred any

liability while purporting to act on behalf of these non-existent entities.   As established in the foregoing analyses, the misrepresentations at issue in the underlying collection action are insufficient to give rise to liability under federal and state law.  This claim is due to be dismissed.

### b.   Pre-Formation Liability

To establish pre-formation liability under Alabama law, a plaintiff must show (1) that the defendant acted as a limited liability company, (2) that the defendant had no authority to act as a limited liability company, and (3) that the defendant incurred debts or liabilities in the process.  Ala. Code § 10A-5-2.05.   To the extent that The Bureaus, Inc. purportedly acted on behalf of a non-existent limited liability company, the Third Amended Complaint fails to sufficiently allege any liability incurred by and through those actions.  Since there is no underlying liability through which The Bureaus, Inc. can be reached, this claim is due to be dismissed.

### c.   Promoter Liability

Under the theory of promoter liability, agents purporting to act on behalf of a nonexistent entity can be liable for any obligations incurred on behalf of the nonexistent entity.  *See* Ala. Corp. L. § 3.42 (4th ed.).  This theory assumes that the promoters themselves incurred some liability that, if not for its existential failure, would be attributable to the non-existent entity.  Ms. Stewart argues that The

Bureaus, Inc. acted through non-existent entities to collect debts, and as a result it is liable as a promoter. Again, the allegations are insufficient to establish the underlying liability upon which this theory depends. Even assuming without deciding that The Bureaus, Inc. acted as a promoter, the Third Amended Complaint is insufficient to establish that the actions it took gave rise to any civil liability. This claim is due to be dismissed.

### d.   Agency Liability

As a matter of contract and agency law, an agent who contracts in the name of a non-existent principal is personally liable on the contract. *See* 3. Am. Jur. 2d Agency § 277; 12 Williston on Contracts § 35:39 (4th ed.). According to Ms. Stewart, The Bureaus, Inc. is liable under this theory because it entered into consent agreements on behalf of non-existent entities. The allegations do not sufficiently plead, however, that entering such consent agreements was in violation of law. This claim is due to be dismissed.

### e.   Vicarious liability

Finally, The Third Amended Complaint alleges that The Bureaus, Inc. is vicariously liable for the actions of Mr. Michael Slotky and Mr. Sangalang. To proceed under this theory, Ms. Stewart must properly plead some liability with respect to those individuals. In this respect, she has failed. For the reasons stated

in Part IV.B, *supra*, Ms. Stewart fails to state a viable claim against any Individual Defendant.  Accordingly, Count IX is due to be dismissed.

### 4.   *Summary*

For the reasons state above, The Bureaus, Inc.'s 12(b)(6) motion is due to be granted in full.  Counts II, III, IV, V, VII, and IX are due to be dismissed as to The Bureaus, Inc.

## V.  CONCLUSION

Based on the foregoing analysis, it is ORDERED that:

(1)  The Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1) (Doc. # 188) is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as to Bureaus Investment Group Portfolio No. 2, LLC, Bureaus Investment Group Portfolio No. 3, LLC, Bureaus Investment Group Portfolio No. 4, LLC, Bureaus Investment Group Portfolio No. 5, LLC, Bureaus Investment Group Portfolio No. 6, LLC, Bureaus Investment Group Portfolio No. 7, LLC, Bureaus Investment Group Portfolio No. 8, LLC, Bureaus Investment Group Portfolio No. 10, LLC, Bureaus Investment Group Portfolio No. 11, LLC, the Estate of Burton A. Slotky, Michael Slotky, and Aristotle Sangalang and all claims against them are DISMISSED with prejudice.  The Motion  is DENIED as to Bureaus Investment Group, LLC.

(2)   The Motion to Dismiss for Failure to State a Claim (Doc. # 192) is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as to Bureaus Investment Group Portfolio No. 1, LLC, Bureaus Investment Group, LLC, and The Bureaus, Inc., and all claims against them are DISMISSED with prejudice.  The Motion is DENIED as moot with respect to Bureaus Investment Group Portfolio No. 2, LLC, Bureaus Investment Group Portfolio No. 3, LLC, Bureaus Investment Group Portfolio No. 4, LLC, Bureaus Investment Group Portfolio No. 5, LLC, Bureaus Investment Group Portfolio No. 6, LLC, Bureaus Investment Group Portfolio No. 7, LLC, Bureaus Investment Group Portfolio No. 8, LLC, Bureaus Investment Group Portfolio No. 10, LLC, Bureaus Investment Group Portfolio No. 11, LLC, the Estate of Burton A. Slotky, Michael Slotky, and Aristotle Sangalang.

(3)  The Motion to Dismiss for Lack of Jurisdiction (Doc. # 192) is DENIED as moot.

DONE this 24th day of November, 2015.

_____
       /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

# Appendix A

Bureaus Investment Group Portfolio No. 1, LLC
Bureaus Investment Group Portfolio No. 2, LLC
Bureaus Investment Group Portfolio No. 3, LLC
Bureaus Investment Group Portfolio No. 4, LLC
The Bureaus, Inc.
(M. Slotky: 50%, B. Slotky: 50%)
Bureaus Investment Group, LLC
(M. Slotky: 40%, B. Slotky: 20%, Non-party: 40%)
Bureaus Investment Group Portfolio No. 5, LLC
Bureaus Investment Group Portfolio No. 6, LLC
Bureaus Investment Group Portfolio No. 7, LLC
Bureaus Investment Group Portfolio No. 8, LLC
Bureaus Investment Group Portfolio No. 10, LLC
Bureaus Investment Group Portfolio No. 11, LLC

