IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALLIE J. STEWART, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:10-CV-1019-WKW |
| ) | [WO] |
| MARK CHAMBLESS, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion for Attorney Fees and Costs Under 28 U.S.C. § 1927 (Doc. # 245), which was filed by Aristotle Sangalang ("Sanglang") and the Estate of Burton A. Slotky ("Slotky")[1] and has been fully briefed. (Docs. # 246, 249, and 250.) Upon careful consideration, the motion will be denied.

**I. JURISDICTION AND VENUE**

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.*, and 28 U.S.C. § 1927. Sangalang and Slotky contested personal jurisdiction in a previous motion to dismiss (Doc. # 192), but the claims against them were dismissed for lack of standing (Doc. # 244). The parties do not contest venue.

---

[1] Plaintiff also named Michael Slotky, the son of the late Burton Slotky, as a defendant. For the sake of simplicity, and because Michael Slotky did not participate in the motion for fees and costs, The Estate of Burton A. Slotky can be referred to simply as "Slotky" in this memorandum opinion and order.

## II.  STANDARD OF REVIEW

District courts have both inherent and statutory authority to sanction attorney misconduct.  Under 28 U.S.C. § 1927, where counsel engages in misconduct that multiplies the proceedings, the court may sanction the attorney by requiring that he personally satisfy the excess costs, attorneys' fees, and expenses flowing from his actions.  To impose this sanction, the court must find (1) that counsel engaged in "unreasonable and vexatious conduct," (2) that this conduct multiplied the proceedings, and (3) that the amount of the sanction bears a financial nexus to the cost associated with the excess proceedings.  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

Attorney conduct rises to the level of unreasonable and vexatious only where it is so egregious that it constitutes "bad faith" conduct.  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  Whether counsel acted in bad faith turns not on his subjective intentions, but rather on the objective reasonableness of the conduct.  *Id.*  Though reckless pursuit of a frivolous claim may be sufficient to support sanctions under § 1927, an attorney's mere negligence is not.  *Id.* at 1242 (citing *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)).  Sanctions are appropriate under § 1927 only where counsel's egregious, bad faith conduct evidences willful or reckless abuse of judicial process.  *Id.*

### III. BACKGROUND

This litigation has a storied past. The circumstances giving rise to it have been recounted *ad nauseam* in previous opinions and orders (*see, e.g.,* Doc. # 244, at 5–13), but the background relevant to this § 1927 motion for fees and costs must be briefly discussed.

The controversy originated as a debt collection action. After Bureaus Investment Group Portfolio No. 1, LLC filed suit against Plaintiff Allie J. Stewart ("Stewart") in state court,[2] Stewart, by and through her attorney Charles Lorant ("Lorant"), filed counterclaims. She alleged that Bureaus Investment Group Portfolio No. 1, LLC misrepresented its name and legal status to coerce her into paying the debt. She sought recovery under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and under various state law theories of liability.

Bureaus Investment Group Portfolio No. 1, LLC eventually removed the action to federal court. There was no question that Stewart owed an outstanding debt, but she maintained that the Bureaus entities went about collecting their debts in an unlawful manner. Stewart brought the action on behalf of herself and other

---

[2] The entity that brought the state court collection action initially, and erroneously, identified itself as Bureaus Investment Group # 1, LLC. It is now clear that Bureaus Investment Group Portfolio No. 1, LLC is the true name of that entity. This entity is part of a larger network of entities under the umbrella of The Bureas, Inc. and Bureaus Investment Group, LLC. (*See* Org. Chart, Doc. # 244, App. A.) The entities making up this network will be referred to collectively as the "Bureaus entities."

similarly situated debtors, though the class was never certified. Over time, she began adding other Bureaus entities and individuals as defendants. Sangalang is a former vice-president and current president of the The Bureaus, Inc., the "master servicer" under whose umbrella Bureaus Investment Group Portfolio No. 1, LLC operated. Slotky was a part-owner of both the Bureaus, Inc. and Bureaus Investment Group, LLC, another umbrella entity with sole ownership of Bureaus Investment Group Portfolio No. 1, LLC. (*See* Org. Chart, Doc. # 244, App. A.)

Over the course of this protracted litigation, Stewart amended her complaint three times. She proposed the third iteration in response to a motion to dismiss (Doc. # 140). In addition to adding new claims and theories of liability, Stewart's proposed third amended complaint joined Sangalang and Slotky as defendants, alleging they were personally responsible for the alleged misrepresentations giving rise to FDCPA liability. Stewart was not allowed to file the third amended complaint in the form in which she initially proposed it. She was, however, granted leave to file a third amended complaint, but with the caveat that the new pleading would only be allowed if she redrafted it in accordance with certain suggested revisions. In its June 2, 2014 Memorandum Opinion and Order (Doc. # 157), the court addressed the portions of the proposed amended complaint that were subject to revision, making specific findings relevant to the joinder of Sangalang and Slotky.

The Memorandum Opinion and Order first noted that Stewart could "plead and proceed under a theory that the officers, directors, shareholders, managers, or members" of the Bureaus entities were liable for the wrongful acts of the entities. (Doc. # 157, at 19.)  It further noted that Bureaus Investment Group Portfolio No. 1, LLC had no employees, indicating that it might be under the complete control of Sangalang and Slotky.  (Doc. # 157, at 24.)

The court determined that adding Sangalang and Slotky would be neither futile nor prejudicial.  In finding that Stewart could join Sangalang and Slotky as defendants, the Memorandum Opinion and Order noted that an individual defendant like Sangalang or Slotky might be liable for the alleged misconduct of the various Bureaus entities.  It noted, for example, that it was "plausible that responsibility ultimately rests with the officers, directors, shareholders, managers, or members" of The Bureaus, Inc. or Bureaus Investment Group, LLC.  (Doc. # 157, at 41.)  The Memorandum Opinion and Order directed that the third amended complaint should be drafted to include factual allegations relating to the allegedly fraudulent actions of Sangalang and Slotky.  (Doc. # 157, at 46–47.)

In response to these findings, Stewart, by and through Lorant, filed the now-operative Third Amended Complaint.  (Doc. # 173.)  The new pleading named Slotky and Sangalang as defendants, alleging that they were liable individually for any actions taken on behalf of the Bureaus entities.  Sangalang and Slotky then

5

moved to dismiss the third amended complaint on several grounds. (Docs. # 190 and 192.) In its November 24, 2015 Memorandum Opinion and Order, the court found that Stewart's claims against Sangalang and Slotky were due to be dismissed, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of standing.[3] (Doc. # 244, at 22–31.) Sangalang and Slotky then filed this Motion for Attorneys' Fees and Costs Under 28 U.S.C. § 1927. (Doc. # 245.) In their brief in support of the motion (Doc. # 246), Sangalang and Slotky argue that Lorant's conduct was unreasonable and vexatious, resulting in multiplication of the proceedings. Lorant filed a response (Doc. # 249), and Sangalang and Slotky filed a reply (Doc. # 250).

## IV. DISCUSSION

In their motion for fees and costs, Sangalang and Slotky contend that Lorant took actions amounting to bad faith, resulting in unreasonable multiplication of the proceedings. Pursuant to § 1927, they seek to recover attorneys' fees and costs attributable to their efforts to have the claims against them dismissed. A thorough review of the record reveals that Lorant's conduct does not warrant sanctions under

---

[3] In their 12(b)(1) motion to dismiss, Sangalang and Slotky launched a factual attack on the court's subject-matter jurisdiction. Specifically, they argued that Stewart did not have standing to sue them, submitting declaration testimony establishing that they did not make the alleged misrepresentations at issue in Stewart's claims. Stewart failed to produce evidence rebutting this testimony, and her factual allegations were insufficient to support the application of the alter ego theory. (*See* Doc. # 244, at 24–25.) The claims against Sangalang and Slotky were dismissed on this basis.

6

the statute.  As they relate particularly to Sanglang's and Slotky's involvement in this case, Lorant's actions do not amount to bad faith conduct.  *See Amlong*, 500 F.3d at 1239.

Sangalang and Slotky identified a number of actions that, in their view, unreasonably multiplied the proceedings.  They first contend that Lorant represented them as central figures in the debt collection activities of the Bureaus entities when he knew that they played only minor roles in Stewart's debt collection lawsuit.  Sangalang and Slotky further represent that Lorant brought class claims on Stewart's behalf without her knowledge and failed to notify her of Defendants' offer of judgment.  They argue that Lorant knew that it was John Hedges, Legal Manager of The Bureaus, Inc., and not Sangalang and Slotky, who authorized the debt collection suit against Stewart.  They finally note that, in response to the motions to dismiss, Lorant failed to adduce evidence rebutting the declaration testimony of Sangalang and Slotky.  Taking these various claims together, the essential question is whether Lorant acted unreasonably by proceeding with his claims against Sangalang and Slotky without sufficient legal or factual basis.

Under the circumstances, Lorant had reason to believe that Stewart's individual claims against Sangalang and Slotky were potentially viable.  It is true, as Sangalang and Slotky note, that an attorney unreasonably multiplies the proceedings where he continues to prosecute claims when it is clear that there is "no claim to be

7

had" against the defendants.  *See Conner v. BCC Fin. Mgmt. Servs., Inc.*, 597 F. Supp. 2d 1299, 1305 (S.D. Fla. 2008).  It was far from clear to Lorant, however, that his claims against Sangalang and Slotky would not survive.  The court found that these individual claims were potentially viable in its June 2, 2014 Memorandum Opinion and Order.  And the evidence available to Lorant could lead a reasonable attorney to believe that he had colorable individual claims.

The June 2, 2014 Memorandum Opinion and Order (Doc. # 157) addressed in full the propriety of joining Sangalang and Slotky.  In several ways, after consideration of Defendants' opposing arguments, it endorsed Lorant's decision to do so.  The Memorandum Opinion and Order noted that it was clear that Stewart could proceed under the theory that the officers and shareholders of the Bureaus entities might be liable by operation of the alter ego theory. (Doc. # 157, at 19.)  It further pointed out that, even though Stewart did not have specific knowledge regarding how Sangalang and Slotky might have been involved in the debt collection suits and the alleged wrongdoing, she still had reason to believe they might be liable for the relevant misrepresentations. (Doc. # 157, at 41.)  It concluded that adding claims against Sangalang and Slotky would be neither futile nor prejudicial, and that proposed allegations regarding their liability were at least plausible. (Doc. # 157, at 46–47.)

It cannot be said, in view of these previous findings, that Lorant acted unreasonably or vexatiously in adding claims against Sangalang and Slotky in the Third Amended Complaint.  The decision allowing Lorant to file the Third Amended Complaint would lead any reasonable attorney to think that doing so was not only permissible, but that doing so was in his client's best interests.  If these findings made anything clear, it was not that there was "no claim to be had" against Sangalang and Slotky.  *Conner*, 597 F. Supp. 2d at 1305.  On the contrary, the Memorandum Opinion and Order indicated that these claims might succeed.

Even absent the court's concurrence that it would be appropriate to join Sangalang and Slotky, a reasonable attorney in Lorant's position still could have continued with these claims in good faith based on the evidence available to him. Whether or not Lorant knew that John Hedges signed the document authorizing the initial suit against Stewart,[4] he did have information fairly suggesting that Sangalang and Slotky were involved, in their capacities as officer and owner, respectively, in the debt collection operations of the Bureaus entities.  The evidence available to

---

[4] The document in question is a "Verification and Authorization Form," which can be found in the record as an attachment to the brief in support of Sangalang's 12(b)(2) and 12(b)(6) motions to dismiss. (Doc. # 197-1, at 5.)  According to Sangalang and Slotky, this document establishes that Lorant was aware that it was John Hedges, and not them, who authorized the debt collection suit against Stewart.  The parties disagree about who introduced this document to the litigation and the time at which Lorant became aware of it.  Whether Lorant was aware of this document or failed to disclose it is not dispositive of this motion for fees.  The court's statements regarding Stewart's leave to file a Third Amended Complaint and the other evidence available to Lorant show that his conduct was not taken in bad faith.

9

Lorant showed that Slotky had at least an advisory role in the daily operations of the Bureaus entities, and that Sangalang had been directly involved in the initiation of other Bureaus entities debt collection suits.  In light of this information, it cannot be said that Lorant had a clear indication that his claims against Sangalang and Slotky would fail.  *See Conner*, 597 F. Supp. 2d 1305.  He had at least a plausible basis for believing that discovery would reveal the information necessary to establish his standing to sue them individually, and he proceeded under that reasonable notion.

When the time came for Lorant to respond to the motions to dismiss, which raised a factual attack challenging the court's subject-matter jurisdiction, he failed to produce adequate evidence rebutting the declaration testimony of Sangalang and Slotky.  He also failed to adequately allege a factual basis for piercing the corporate veil.  (Doc. # 244.)  But that the claims against Sangalang and Slotky eventually failed to withstand these motions does not evidence egregious conduct amounting to bad faith.  *See Amlong*, 500 F.3d at 1239.  As Lorant noted in his briefing on the instant motion, at the worst, his shortcomings in responding to the motions to dismiss amount to mere negligence.  Even if it was clear that Lorant was negligent in responding to the motion to dismiss—and it is not—negligent conduct is insufficient to support sanctions under § 1927.  *See Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1242 (S.D. Fla. 2008); *see also Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1360 (S.D.N.Y. 1982) ("Inartful pleading and

ignorance of legal requirements do not amount to the intentional abuse of judicial process that is the target of protective awards for attorneys' fees.").

The fact that Lorant proceeded with claims against Sangalang and Slotky in an FDCPA class action does not render his conduct unreasonable. Sangalang and Slotky, relying on *White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000), argue that the joinder of individual defendants in this type of action amounts to abusive conduct warranting sanctions. The circumstances giving rise to *White*, however, are materially distinguishable from those at bar.

Raising the issue of sanctions *sua sponte*, the Seventh Circuit noted in *White* that the joinder of individual defendants in FDCPA class actions "illustrates the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims." *Id.* at 1019. Sangalang and Slotky failed to note, however, that the plaintiffs' attorney in *White* joined the individual shareholder defendants without even attempting to argue that there was a basis for piercing the corporate veil. As the Seventh Circuit recognized before commenting on the abuse of the class action device, the FDCPA "is not aimed at the shareholders of debt collectors operating in the corporate form *unless some basis is shown for piercing the corporate veil, which was not attempted here*." *Id.* (emphasis added).

When Lorant drafted the Third Amended Complaint to include FDCPA claims against Sangalang and Slotky, he did allege a basis for piercing the corporate

11

veil. Unlike the plaintiffs' attorney in *White*, Lorant explicitly argued that individual owners and officers of the Bureaus entities could be held liable by operation of the alter ego theory. (*See* Doc. # 173, at 57–63.) To the extent Sangalang and Slotky contend that Lorant abused the class action device by including FDCPA claims against them, their arguments are without merit.

By naming Sangalang and Slotky as defendants and responding to their motions to dismiss, Lorant did not unreasonably multiply the proceedings. Sangalang and Slotky argue that the facts at bar are similar to those in *Conner*, in which the court imposed sanctions on an attorney who failed to dismiss certain defendants after it was clear that there was no viable claim against them. 597 F. Supp. 2d at 1305. In finding that the attorney unreasonably multiplied the proceedings, however, the *Conner* court noted that the attorney asked for multiple extensions of time to respond to motions, then failed to respond to the motions at all. *Id.* at 1306.

As discussed above, it was far from clear to Lorant, at the time he filed the Third Amended Complaint, that Stewart's claims against Sangalang and Slotky would be dismissed for lack of standing. And the circumstances here are distinguishable from those in *Conner* in that Lorant did not seek multiple extensions before inexplicably failing to respond to Defendants' motions. *See id.* The issues raised in the motions to dismiss were varied and thorny, but Lorant and his associates

managed to craft thorough and well-reasoned responses.  Stewart did not ultimately prevail on her claims, but this outcome does not counsel in favor of attorney sanctions.

If anything multiplied the proceedings in this case, it was the convoluted organizational structure under which the Bureaus entities operate.  Under this multi-entity scheme of debt acquisition and collection, not even the legal manager for the Bureaus entities could accurately identify the proper party plaintiff in Stewart's debt collection action.  It was not Lorant who filed suit against Stewart under an erroneous name.  Nor did Lorant acquire a consent judgment on behalf of a non-existent entity.  These primary actions, which gave shape to the litigation as it currently exists, are attributable to the Bureaus entities and the tangled web they weave.[5]

Sangalang and Slotky make much of the potential economic evil that might flow from frivolous FDCPA lawsuits, especially with respect to the inverse relationship that exists between the costs of debt collection and the availability of affordable consumer credit. (Doc. # 246, at 14–15.)  If the Bureaus entities are truly concerned about the availability of consumer credit and the dissipating buying power of the everyman, they ought to check their own corporate records and verify the names of their own legal entities before filing their next collection action.  The

---

[5] *See* SIR WALTER SCOTT, MARMION:  A TALE OF FLODDEN FIELD canto VI, XVII (1808) ("Oh, what a tangled web we weave, when first we practise to deceive!").

disingenuous nature of Sangalang's and Slotky's argument on this particular point cannot be overstated. Whether or not Stewart sufficiently pleaded her claims in the Third Amended Complaint, Lorant will not be held responsible for the roles that corporate architecture and careless debt collection practices played in the multiplication of these proceedings.

Nor did Lorant unreasonably multiply the proceedings merely by naming Sangalang and Slotky as defendants. Sangalang and Slotky cite *ATA Info. Servs., Inc. v. J.C.I., Inc.*, No. 89 C 9615, 1992 WL 122799 (N.D. Ill. May 26, 1992), for the proposition that simply initiating an action amounts to unreasonable multiplication of the proceedings. Leaving aside for the moment that this is an unpublished case from a district court within the Seventh Circuit, a full reading of that decision reveals the limitations of its findings. The *ATA* court found that the addition of a party only amounts to unreasonable multiplication of the proceedings where it is clear that the addition of the party was in error.

In *ATA*, it was apparent to all parties that the plaintiff had added a defendant who was not even employed by or otherwise associated with the defendant entity at the time of the events giving rise to the litigation. *Id.* at *2. Though the plaintiff's attorney received reliable information confirming that there was no basis for naming this individual defendant, he filed an amended complaint that included claims against the improper defendant. *Id.* The plaintiff amended the complaint a second

time, again refusing to drop its claims against the individual defendant. *Id.* By refusing to dismiss this defendant despite clear knowledge that the claims against him were baseless, the attorney unreasonably multiplied the proceedings. *Id.* at *4.

It was not clear to Lorant at the time he filed the complaint that Sangalang and Slotky were uninvolved in the collection of debts on behalf of the Bureaus entities. As far as Lorant knew, both Sangalang and Slotky were employed by or held an ownership interest in the Bureaus entities at the time that Bureaus Investment Group Portfolio No. 1, LLC initiated the debt collection action against Stewart. The entity that should have brought a debt collection action against Stewart, like its sister LLCs, had no employees, indicating that the individual owners and officers might be personally liable. The conduct at issue in this case is a far cry from the egregious missteps found to have constituted unreasonable multiplication in *ATA*. *See id.*

Because Lorant's conduct did not unreasonably or vexatiously multiply the proceedings within the meaning of the statute, Sangalang and Slotky are not entitled to relief under § 1927. The issue of the appropriate amount of fees and costs thus need not be addressed.

## V.  CONCLUSION

It is ORDERED that the Motion for Attorney Fees and Costs under 28 U.S.C. § 1927 (Doc. # 245) is DENIED. It is further ORDERED that Plaintiff's Request for Briefing Schedule (Doc. # 247) is DENIED as moot.

DONE this 30th day of June, 2016.

                                       /s/ W. Keith Watkins
                             CHIEF UNITED STATES DISTRICT JUDGE